# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| ST. LUCIE COUNTY FIRE DISTRICT FIREFIGHTERS' PENSION TRUST FUND and FIRE AND POLICE RETIREE HEALTH CARE FUND, SAN ANTONIO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JOSEPH H. BRYANT, JAMES W. FARNSWORTH, JOHN P. WILKIRSON, PETER R. CONEWAY, HENRY CORNELL, JACK E. GOLDEN, N. JOHN LANCASTER, JON A. MARSHALL, KENNETH W. MOORE, J. HARDY MURCHISON, MICHAEL G. FRANCE, KENNETH A. PONTARELLI, SCOTT L. LEBOVITZ, MYLES W. SCOGGINS, D. JEFF VAN STEENBERGEN, MARTIN H. YOUNG, JR., KATHRYN BAILEY HUTCHISON, WILLIAM P. UTT, COBALT INTERNATIONAL ENERGY INC., GOLDMAN SACHS GROUP, INC., RIVERSTONE HOLDINGS LLC, THE CARLYLE GROUP, FIRST RESERVE CORPORATION, KERN PARTNERS LTD., GS CAPITAL PARTNERS V FUND, L.P., GS CAPITAL PARTNERS V OFFSHORE FUND, L.P., GS CAPITAL PARTNERS V INSTITUTIONAL, L.P., GS CAPITAL PARTNERS V GMBH & CO. KG, GS CAPITAL PARTNERS VI FUND, L.P., GS CAPITAL PARTNERS VI OFFSHORE FUND, L.P., GS CAPITAL PARTNERS VI PARALLEL, L.P., GS CAPITAL PARTNERS VI GMBH & CO. KG, CARLYLE/RIVERSTONE GLOBAL ENERGY AND POWER FUND III, L.P., C/R ENERGY III COBALT PARTNERSHIP, L.P., RIVERSTONE ENERGY COINVESTMENT III, L.P., CARLYLE ENERGY COINVESTMENT III, L.P., C/R COBALT INVESTMENT PARTNERSHIP, L.P., C/R ENERGY | Civ. A. No. 14-3428<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>JURY TRIAL DEMANDED</u> |

COINVESTMENT II, L.P., FIRST RESERVE
FUND XI, L.P., FR XI ONSHORE AIV, L.P.,
KERN COBALT CO-INVEST PARTNERS AP
LP, GOLDMAN, SACHS & CO., MORGAN
STANLEY & CO. LLC, CREDIT SUISSE
SECURITIES (USA) LLC, CITIGROUP
GLOBAL MARKETS INC., J.P. MORGAN
SECURITIES LLC, TUDOR, PICKERING,
HOLT & CO. SECURITIES, INC., DEUTSCHE
BANK SECURITIES INC., RBC CAPITAL
MARKETS, LLC, UBS SECURITIES LLC,
HOWARD WEIL INCORPORATED, STIFEL,
NICOLAUS & COMPANY, INCORPORATED,
CAPITAL ONE SOUTHCOAST, INC., AND
LAZARD CAPITAL MARKETS LLC,

                        Defendants.

Plaintiffs St. Lucie County Fire District Firefighters' Pension Trust Fund ("St. Lucie FF")

and Fire and Police Retiree Health Care Fund, San Antonio ("San Antonio Health") (collectively,

"Plaintiffs"), by and through their counsel, allege the following upon information and belief,

except as to those allegations concerning Plaintiffs, which are alleged upon personal knowledge.

Plaintiffs' information and belief is based upon, among other things, counsel's investigation, which

includes review and analysis of: (i.) regulatory filings made by Cobalt International Energy, Inc.

("Cobalt" or the "Company") with the U.S. Securities and Exchange Commission ("SEC"); (ii.)

press releases issued by and disseminated by Cobalt; and (iii.) other publicly available information,

including media and analyst reports, concerning Cobalt.

## **INTRODUCTION**

1.      This securities class action is brought on behalf of purchasers of Cobalt's securities

between February 21, 2012 and November 4, 2014, inclusive (the "Class Period"), including

persons who purchased or otherwise acquired: (i.) Cobalt securities on the open market; (ii.)

Cobalt's common stock pursuant and/or traceable to registered public offerings conducted on or

about February 23, 2012, January 16, 2013 and May 8, 2013 (the "Stock Offerings"); and/or (iii.) Cobalt's 2.65% Convertible Senior Notes due 2019, pursuant and/or traceable to the registered public offering conducted on or about December 12, 2012, and/or Cobalt Convertible Senior Notes due 2024, pursuant and/or traceable to the registered public offering conducted on or about May 8, 2014 (the "Bond Offerings"; collectively with the Stock Offerings, the "Offerings") (the "Class").  Plaintiffs and the Class collectively lost billions of dollars because Cobalt misrepresented, and failed to disclose, the corrupted nature of its business in Angola and the true value of the Company's Angolan oil wells.

2.     For years, Cobalt has portrayed itself as an oil exploration company with "world class," "large" and "oil-focused" wells in the Republic of Angola and claimed that the Company gained access to those wells in compliance with the U.S. law outlawing the bribery of foreign officials (the Foreign Corrupt Practices Act or "FCPA").  In truth, Cobalt obtained access to its Angolan wells from the Republic of Angola through apparent bribery and by partnering with shell companies in Angola that were partially owned by high-level Angolan officials, putting the Company at serious risk of enforcement action by the SEC and U.S. Department of Justice ("DOJ") for violations of the FCPA and the federal securities laws.  In addition, Cobalt misrepresented the value of its wells in Angola after the Company learned that they contained very little or no oil.

3.     Instead of disclosing these problems, Cobalt and five investment firms that controlled the Company during the Class Period (Defendants Goldman Sachs Group, Inc., Riverstone Holdings LLC ("Riverstone"), The Carlyle Group ("Carlyle"), First Reserve Corporation ("First Reserve") and KERN Partners Ltd. ("KERN") (the "Investment Firms")) collectively sold billions of dollars of Cobalt securities to investors by causing Cobalt to issue materially false and misleading offering documents to investors (the "Offering Materials," defined

more specifically below).  Those materially false and misleading Offering Materials enabled the Company and its selling shareholders to sell approximately ***$4.355 billion*** of Cobalt common stock in the Stock Offerings, and ***$2.68 billion*** of Cobalt convertible notes in the Bond Offerings.

4.     By way of further background, Cobalt is an oil exploration and production company headquartered in Houston, Texas with operations in the Gulf of Mexico and offshore West Africa. Cobalt was founded in November 2005 with $500 million in financing from Goldman Sachs Group, Inc. and Riverstone.  Between 2006 and the Company's December 15, 2009 initial public offering, the Investment Firms invested more than $1 billion collectively to capitalize the Company.  In February 2010, pursuant to an agreement with the Angolan government, Cobalt gained access to certain oil exploration "blocks" in offshore Angola.[1]  As part of that agreement, the Company partnered with the national oil company of Angola (Sonangol E.P. ("Sonangol")) and two Angolan corporations, Nazaki Oil and Gáz, S.A. ("Nazaki") and Alper Oil, Limitada ("Alper").[2]

5.     As a U.S. firm doing business abroad, Cobalt was required to adhere to the requirements of the FCPA, which prohibit payments to foreign government officials made to assist in obtaining business.  Prohibited acts include payments to a foreign official for the purpose of influencing that official in his or her official capacity.  Examples of FCPA violations include payments to foreign officials through third parties or shell companies.[3]

---

[1] A "block" is an area awarded to an oil drilling and exploration company by the country that controls it.

[2] On December 20, 2011, Cobalt also announced that Sonangol and Cobalt signed a Production Sharing Contract for Block 20 offshore Angola (where Cobalt's Lontra well is located) pursuant to which Cobalt was named the operator of Block 20 with a 40% working interest in the Block.  Other partners in Block 20 include Sonangol Pesquisa e Produção, S.A. (30%), BP Exploration Angola (Kwanza Benguela) Limited (20%) and China Sonangol International Holding Limited (10%)

[3] The FCPA also requires companies whose securities are listed in the United States to meet its accounting provisions.  The accounting provisions of the FCPA require corporations to:  (i.) make and keep books and records that accurately and fairly reflect the transactions of the corporation; and (ii.) devise and maintain an adequate system of internal accounting controls.

6.      On February 21, 2012, Cobalt disclosed that the SEC was investigating the Company for violating the FCPA, with a particular focus on Cobalt's dealings with Angolan officials through its business partners in Angola.  However, in its annual Form 10-K filed with the SEC that day, the Company assured investors that the SEC investigation was baseless, stating that Cobalt "believe[s] that [its] activities in Angola have complied with all laws, including the FCPA." To support Cobalt's claims that its operations in Angola were free of corruption, Cobalt claimed that Nazaki was a legitimate partner in the Company's exploration Blocks 9 and 21 and a "full paying member of the contractor group."  The Company made similar claims throughout the Class Period, repeatedly stressing that Cobalt "strongly refuted any allegations of wrong doing."

7.      In addition to Cobalt's compliance with the FCPA and the federal securities laws, a critical factor for Cobalt's investors was the relative amounts of oil and natural gas in the Company's wells in Angola.  A high composition of natural gas in a well rendered it virtually worthless to Cobalt because Cobalt had no rights to gas discoveries under its agreements with Angola.  Accordingly, in the Company's public statements during the Class Period, Cobalt and its executives claimed that the Company had several "*large, oil-focused high impact wells*," including the Lontra and Loengo wells, discussed below.  Cobalt also specifically described the amount of oil in its Lontra well as "*Greater than billion barrel potential*," not a "*big gas field*," and instead "*an oil field*," and thus "*a significant discovery*."

8.      As a result of the Company's statements to investors, the prices of Cobalt's stock and bonds were artificially inflated during the Class Period.  In reality, during the Class Period, the Company and its senior officers knew or recklessly disregarded, but failed to disclose that, among other things:  (i.) Cobalt had improper business relationships with Angolan government officials that gave the officials pecuniary interests in Nazaki, and, by extension in Cobalt's

operations; (ii.) as the government of Angola ultimately acknowledged, Nazaki was a shell corporation because it lacked "proven competence and financial capacity" to participate as a partner in Cobalt's operations in Angola; (iii.) the government of Angola terminated Alper's partnership interest in Cobalt's Angolan operations in March 2014 (months before Cobalt disclosed this fact to investors); (iv.) Cobalt made millions of dollars in payments to Angola to finance a research center that does not appear to exist; (v.) Cobalt's business dealings in Angola in fact subjected the Company to severe risks of regulatory action and penalties; and (vi.) Cobalt failed to timely disclose the true amounts of oil and natural gas in Cobalt's wells in Angola.

9.      Cobalt could not conceal its serious problems indefinitely.  On December 1, 2013, the Company revealed that its Lontra well in Angola "contains more gas than our pre-drill estimates."  Cobalt had previously claimed Lontra was a "large, oil-focused high impact well" that had "greater than a billion barrel potential." The disclosure that there were large amounts of gas (rather than oil) in the Lontra well caused the price of Cobalt's stock to fall sharply from a close of $22.23 on Friday, November 29 to a close of $17.51 on Tuesday, December 3, 2014, causing significant harm to Plaintiffs and the Class.

10.     On August 5, 2014, Cobalt announced that the SEC had escalated its investigation of the Company for possible violations of the federal securities laws by issuing Cobalt a Wells Notice stating that the SEC was recommending enforcement action against Cobalt.  The Company disclosed that, according to the Wells Notice, the SEC may recommend that it pursue action against the Company, which could include civil money penalties.  Also, on the morning of August 5, 2014, *Bloomberg* reported that an anti-corruption organization had determined that Cobalt had made an apparent bribe to the Angolan government, because Cobalt had paid the Angolan government millions of dollars to support an Angolan research center that Cobalt could not confirm actually

exists.  In response to these disclosures, the price of Cobalt's stock fell sharply, by almost 11%, from $15.97 on August 4 to $14.22 on August 5.  For several weeks after August 5, analysts commented that the prices of Cobalt securities remained depressed by the "overhang" of the SEC investigation.

11.     On August 27, 2014, with the price of Cobalt's securities already depressed by the disclosure of the SEC's heightened investigation, Cobalt announced that the Angolan government had terminated both Nazaki's and Alper's partnership interests in Cobalt's Angolan oil projects and granted those interests to a subsidiary of Sonangol.  This disclosure acknowledged the existence of serious problems with Nazaki's and Alper's business relationships with Cobalt.

12.     On November 4, 2014, Cobalt disclosed that, contrary to the Company's prior claims that the Loengo well was a "large, oil-focused high impact well," the Company's testing of the Loengo well contained neither oil nor gas.  On this news, the price of Cobalt securities fell sharply, with the price of Cobalt's common stock declining from a price of $11.28 on November 3 to $10.07 on November 4.

13.     As a result of Defendants' misconduct, Plaintiffs and the Class collectively incurred massive, multi-billion dollar losses on their investments in Cobalt securities.  Accordingly, Plaintiffs hereby bring claims against Cobalt, certain of the Company's senior executives and Directors, the underwriters of Cobalt's Offerings during the Class Period (the "Underwriters"), and the Investment Firms and their affiliated funds that exercised control over the Company during the Class Period.  Plaintiffs' claims arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, as well as Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act").

## JURISDICTION AND VENUE

14.    Certain of Plaintiffs' claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.  Other of Plaintiffs' claims asserted herein arise under Sections 11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l, and 77o.

15.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v, and pursuant to 28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States.

16.    Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, Section 22(a) of the Securities Act, 15 U.S.C. § 77v, and 28 U.S.C. § 1391(b), (c) and (d).  Cobalt maintains its executive offices in this District and many of the acts and conduct that constitute the violations of law complained of herein, including dissemination to the public of materially false and misleading information, occurred in and/or were issued from this District.  In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

### A.    Plaintiffs

17.    Plaintiff St. Lucie FF is a pension fund headquartered in St. Lucie, Florida for the benefit of current and former firefighters of the St. Lucie County Fire District and their families. As set forth in the attached Certification, St. Lucie FF purchased Cobalt securities registered and issued pursuant to Cobalt's January 4, 2011 and December 30, 2013 Registration Statements and

Cobalt public filings incorporated by reference therein.

18.     Plaintiff San Antonio Health is the plan sponsor for the health plan of retired firefighters and police officers for the City of San Antonio, Texas.  As set forth in the attached Certification, San Antonio Health purchased Cobalt common stock during the Class Period and was injured by Defendants' misconduct, as alleged herein.

**B.     Corporate Defendant**

19.     Defendant Cobalt is a Delaware corporation and an international petroleum exploration and production company that derives substantially all of its revenue from locating and selling oil.  Cobalt maintains its principal executive offices at 920 Memorial City Way, Suite 100, Houston, Texas 77024.  Cobalt's primary shareholders during the Class Period were Defendants Goldman Sachs Group, Inc. and Riverstone (which collectively made an initial investment in Cobalt of at least $500 million), as well as Defendants Carlyle, First Reserve and KERN.  The Company's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "CIE."  As of November 4, 2014, Cobalt had over 412 million shares of common stock outstanding.

**C.     The Executive, Director And Control Person Defendants**

20.     Defendant Joseph H. Bryant ("Bryant") has served as Cobalt's Chairman of the Board and Chief Executive Officer ("CEO"), from November 2005 to the present.  Defendant Bryant signed the Company's materially misstated public filings, including the Cobalt Registration Statements and Prospectuses filed with the SEC on January 4, 2011 and December 30, 2013, and made other materially false and misleading statements to investors, as set forth below.

21.     Defendant James W. Farnsworth ("Farnsworth") has served as Cobalt's Chief Exploration Officer from November 2005 to the present.  Defendant Farnsworth made materially

false and misleading statements to investors, as set forth below.

22.     Defendant John P. Wilkirson ("Wilkirson") has served as Cobalt's Chief Financial Officer and Executive Vice President from June 2010 to the present.  Defendant Wilkirson signed the Company's materially misstated Registration Statements and Prospectuses filed with the SEC on January 4, 2011 and December 30, 2013, as well as other Cobalt public filings that made materially false and misleading statements to investors.

23.     Defendants Bryant, Farnsworth and Wilkirson are collectively referred to herein as the "Executive Defendants."  The Executive Defendants, because of their positions within Cobalt, possessed the power and authority to control the contents of Cobalt's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and investors. Each of the Executive Defendants was provided with copies of the Company's reports alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Executive Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

24.     The following Defendants are named as non-fraud Defendants in this Complaint for their roles as members of the Cobalt Board of Directors, underwriters of the Cobalt securities Offerings, and control persons of Cobalt.  The Directors' and Underwriters' liability is based on their roles as signatories of Cobalt's public filings with the SEC in connection with the Offerings, which contained material misstatements, and as underwriters of the Offerings.

25.     Defendant Peter R. Coneway ("Coneway") was a member of Cobalt's Board of

Directors from October 2009 to January 2014, and signed the Company's materially misstated Registration Statements and Prospectuses filed with the SEC on January 4, 2011 and December 30, 2013.  During the Class Period, Coneway was also a Managing Director of Defendant Riverstone, and before joining Riverstone, was a Managing Director of Defendant Goldman, Sachs & Co. ("Goldman Sachs"), and head of Goldman Sachs' Houston office, which he founded in 1975.

26.    Defendant Henry Cornell ("Cornell") was a member of Cobalt's Board of Directors from November 2005 through April 2011, and signed the Company's materially misstated Registration Statement and Prospectus filed with the SEC on January 4, 2011.

27.    Defendant Jack E. Golden ("Golden") has been a member of Cobalt's Board of Directors from January 2010 to the present, and signed the Company's materially misstated Registration Statements and Prospectuses filed with the SEC on January 4, 2011 and December 30, 2013.

28.    Defendant N. John Lancaster ("Lancaster") was a member of Cobalt's Board of Directors from May 2010 to May 28, 2013, and signed the Company's materially misstated Registration Statement and Prospectus filed with the SEC on January 4, 2011.  During the Class Period, Lancaster was a Managing Director of Defendant Riverstone and is currently a Partner at Riverstone.

29.    Defendant Jon A. Marshall ("Marshall") has been a member of Cobalt's Board of Directors from May 2012 to the present, and signed the Company's materially misstated Registration Statements and Prospectuses filed with the SEC on January 4, 2011 and December 30, 2013.

30.    Defendant Kenneth W. Moore ("Moore") has been a member of Cobalt's Board of

Directors from August 2007 to the present, and signed the Company's materially misstated Registration Statements and Prospectuses filed with the SEC on January 4, 2011 and December 30, 2013. Moore was during the Class Period (and currently is) a Managing Director of Defendant First Reserve where he has worked since 2004.

31.     Defendant J. Hardy Murchison ("Murchison") was a member of Cobalt's Board of Directors from August 2007 through April 2011, and signed the Company's materially misstated Registration Statement and Prospectus filed with the SEC on January 4, 2011. While on the Cobalt Board of Directors, Murchison served as a consultant for Defendant First Reserve. Murchison was also a Managing Director of First Reserve from 2001 through January 2011.

32.     Defendant Michael G. France ("France") was a member of Cobalt's Board of Directors from April 2011 to May 28, 2013, and signed the Company's materially misstated public filings. During the Class Period, France was also a Managing Director of Defendant First Reserve.

33.     Defendant Kenneth A. Pontarelli ("Pontarelli") was a member of Cobalt's Board of Directors from November 2005 to January 28, 2104, and signed the Company's materially misstated Registration Statement and Prospectus filed with the SEC on January 4, 2011. During the Class Period, Pontarelli was also a Managing Director of Defendant Goldman Sachs.

34.     Defendant Scott L. Lebovitz ("Lebovitz") was a member of Cobalt's Board of Directors from April 2011 through May 28, 2013, and signed the Company's materially misstated public filings. During the Class Period, Lebovitz was also a Managing Director of Defendant Goldman Sachs.

35.     Defendant Myles W. Scoggins ("Scoggins") was at relevant times during the Class Period a member of Cobalt's Board of Directors, and signed the Company's materially misstated Registration Statements and Prospectuses filed with the SEC on January 4, 2011 and December

30, 2013.

36.     Defendant D. Jeff van Steenbergen ("van Steenbergen") was a member of Cobalt's Board of Directors from November 2005 to the present, and signed the Company's materially misstated Registration Statements and Prospectuses filed with the SEC on January 4, 2011 and December 30, 2013.  Van Steenbergen is also Co-Founder and Managing Partner of Defendant KERN.  Before co-founding KERN, van Steenbergen was co-head of North American Oil and Gas at Defendant J.P. Morgan.

37.     Defendant Martin H. Young, Jr. ("Young") has been a member of Cobalt's Board of Directors from October 2009 to the present, and signed the Company's materially misstated Registration Statements and Prospectuses filed with the SEC on January 4, 2011 and December 30, 2013.

38.     Defendant William P. Utt ("Utt") has been a member of Cobalt's Board of Directors from March 2013 to the present, and signed the Company's materially misstated Registration Statement and Prospectus filed with the SEC on December 30, 2013.

39.     Defendant Kathryn Bailey Hutchison ("Hutchison") has been a member of Cobalt's Board of Directors from December 2013 to the present, and signed the Company's materially misstated Registration Statement and Prospectus filed with the SEC on December 30, 2013.

40.     Defendants Bryant, Coneway, Cornell, Golden, Lancaster, Marshall, Moore, Murchison, Pontarelli, Scoggins, van Steenbergen, Young, Hutchison, and Utt are collectively referred to herein as the "Director Defendants."

41.     Defendant Goldman Sachs Group, Inc. is a global investment banking, securities and investment management firm that exercised control over Cobalt via its financing of Cobalt and significant stock ownership in the Company, as well as the fact that two of its Managing

Directors – Defendants Pontarelli and Lebovitz – also served on the Cobalt Board of Directors while they were Managing Directors at Goldman Sachs. Affiliates of Defendants Goldman Sachs Group, Inc. and Goldman Sachs are the general partner, managing limited partner or managing partner of limited partnerships that owned at least 62.9 million shares of Cobalt stock (15.33% of the Company) as of March 22, 2012.

42.     Defendant Riverstone is an energy and power-related private investment fund founded in the year 2000 and led by David M. Leuschen (a former Partner and Managing Director at Goldman Sachs and the Founder and Head of the Goldman Sachs Global Energy & Power Group) and Pierre F. Lapeyre Jr. (a former Managing Director of Goldman Sachs). Riverstone exercised control over Cobalt, and owned Cobalt shares through its funds C/R [i.e., Carlyle/Riverstone] Energy GP II, LLC ("GP II") and C/R Energy GP III, LLC ("GP III").[4] Riverstone also exercised control over Cobalt via its financing of Cobalt and significant stock ownership in the Company, as well as the fact that two of its Managing Directors – Defendants Coneway and Lancaster – served on the Cobalt Board of Directors while they were Managing Directors of Riverstone.

43.     Defendant Carlyle is a global alternative asset manager based in Washington, DC. Carlyle exercised control over Cobalt, and owned Cobalt shares through its funds GP II and GP III.[5] Defendants Riverstone and Carlyle acted jointly with respect to their control of Cobalt, including as it pertains to the appointment of Cobalt Board members, such as Defendants Coneway

---

[4] GP II and GP III were managed by a managing board whose members included Riverstone Founders Pierre F. Lapeyre, Jr. and David M. Leuschen, Riverstone Partners Lord Browne of Madingley and Andrew W. Ward, and Riverstone Managing Directors Michael B. Hoffman and Defendant Lancaster, as well as the Carlyle executives listed the below footnote.
[5] GP II and GP III were managed during the Class Period by a managing board whose members included Carlyle Chairman and Co-Founder Daniel A. D'Aniello and Carlyle Managing Director and Board member Edward J. Mathias, as well as the Riverstone executives listed in the footnote above.

and Lancaster, who were both Cobalt Board members while Riverstone Managing Directors. As of March 22, 2012, Carlyle/Riverstone funds owned over 62.9 million shares of Cobalt stock (15.33% of the Company).

44.    Defendant First Reserve is a global energy-related private equity and infrastructure investment firm based in Greenwich, CT. During the Class Period, First Reserve exercised control over Cobalt via its significant stock ownership of the Company through its funds. First Reserve also exercised control over Cobalt by having two of its Managing Directors (Defendants Moore and France), and a First Reserve consultant and former Managing Director (Defendant Murchison) serve on the Cobalt Board of Directors while they were Managing Directors, and a consultant, respectively, at First Reserve. As of March 22, 2012, First Reserve funds owned over 62.3 million shares of Cobalt stock (15.19% of the Company).

45.    Defendant KERN is an energy-related private equity firm based in Calgary, Alberta Canada. KERN exercised control over Cobalt via its significant stock ownership of the Company during the Class Period through its funds, as well as the fact that its Co-Founder and Managing Partner, Defendant van Steenbergen, served on the Cobalt Board of Directors while he was a Managing Partner at KERN. As of March 22, 2012, KERN funds owned over 26.9 million shares of Cobalt stock (6.56% of the Company).

46.    During the Class Period, Defendants Goldman Sachs Group, Inc., Riverstone, Carlyle, First Reserve and KERN controlled Cobalt. As Cobalt acknowledged in its Proxy Statement filed with the SEC on March 22, 2012:

> We are a "controlled company" as that term is defined in Section 303A of the NYSE Listed Company Manual [defining corporate governance standards] because more than 50% of our voting power is held by funds affiliated with First Reserve Corporation, Goldman, Sachs & Co., Riverstone Holdings LLC and The Carlyle Group and KERN Partners Ltd. and certain limited partners in such funds affiliated with KERN Partners Ltd. (collectively, the 'controlling stockholders'), ***acting as a***

14

*group*.

That Proxy Statement also stated that such controlling stockholders "currently own shares of our common stock sufficient to elect all of the members of the Board without the approval of any other stockholder" and that the controlling stockholders also had the specific "right to designate seven members of the Board." At the time, the Cobalt Board was comprised of 12 members.

47.     In the February 23, 2012, January 16, 2013 and May 8, 2013 Stock Offerings, the following Defendants, which are funds affiliated with Goldman Sachs Group, Inc., Goldman Sachs, Riverstone, Carlyle, First Reserve and KERN, collectively sold *125.4 million shares* of their own Cobalt stock to investors worth *$3.3275 billion* at the time pursuant to a materially misstated Registration Statement and corresponding Prospectuses:

   a.    GS Capital Partners V Fund, L.P.; GS Capital Partners V Offshore Fund, L.P.; GS Capital Partners V Institutional, L.P.; GS Capital Partners V GmbH & Co. KG; GS Capital Partners VI Fund, L.P.; GS Capital Partners VI Offshore Fund, L.P.; GS Capital Partners VI Parallel, L.P.; and GS Capital Partners VI GmbH & Co. KG (collectively, the "Goldman Sachs Funds").

   b.    Carlyle/Riverstone Global Energy and Power Fund III, L.P.; C/R Energy III Cobalt Partnership, L.P.; Riverstone Energy Coinvestment III, L.P.; Carlyle Energy Coinvestment III, L.P.; C/R Cobalt Investment Partnership, L.P.; and C/R Energy Coinvestment II, L.P. (collectively, the "Carlyle/Riverstone Funds").[6]

   c.    First Reserve Fund XI, L.P. and FR XI Onshore AIV, L.P. (collectively, the "First Reserve Funds").

   d.    KERN Cobalt Co-Invest Partners AP LP (the "KERN Fund").

48.     Defendants Goldman Sachs Funds, Carlyle/Riverstone Funds, First Reserve Funds, and KERN Fund are collectively referred to herein as the "Selling Fund Defendants."

49.     The Executive Defendants, Director Defendants, Goldman Sachs Group, Inc.,

---

[6] The shares held by each of these entities may be deemed to be beneficially owned by GP II or GP III, discussed above.

Goldman Sachs, Riverstone, Carlyle, First Reserve, KERN and the Selling Fund Defendants are collectively referred to herein as the "Control Person Defendants."

### D.    **The Underwriter Defendants**

50.    Goldman, Sachs & Co. ("Goldman Sachs") is an investment bank headquartered in New York, NY, and is a wholly-owned subsidiary of Defendant Goldman Sachs Group, Inc. Goldman Sachs served as an underwriter of the Cobalt February 23, 2012 Stock Offering (in which its parent, Goldman Sachs Group, Inc. and/or funds affiliated with it sold 10.4 million shares of Cobalt stock), the December 12, 2012 Bond Offering, and the May 8, 2014 Bond Offering.

51.    Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") is a Delaware limited liability company with its principal executive offices in New York, NY.  Morgan Stanley served as an underwriter of the Cobalt February 23, 2012 Stock Offering, the December 12, 2012 Bond Offering, and the January 16, 2013 Stock Offering.

52.    Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") is an investment bank with its headquarters in New York, NY.  Credit Suisse served as an underwriter of the Cobalt February 23, 2012 Stock Offering and May 8, 2014 Bond Offering.

53.    Defendant Citigroup Global Markets Inc. ("CGMI") is the U.S.-based brokerage and securities arm of Citigroup headquartered in New York, NY.  CGMI served as an underwriter of the Cobalt February 23, 2012 Stock Offering, the January 16, 2013 Stock Offering, the May 8, 2013 Stock Offering, and the May 8, 2014 Bond Offering.

54.    Defendant J.P. Morgan Securities LLC ("J.P. Morgan") is a securities brokerage firm based in New York, NY.  J.P. Morgan served as an underwriter of the Cobalt February 23, 2012 Stock Offering.

55.    Defendant Tudor, Pickering, Holt & Co. Securities, Inc. ("Tudor") is an investment

bank headquartered in Houston, Texas.  Tudor served as an underwriter of the Cobalt February 23, 2012 Stock Offering.

56.     Defendant Deutsche Bank Securities Inc. ("Deutsche Bank") is an investment bank based in New York, NY.  Deutsche Bank served as an underwriter of the Cobalt February 23, 2012 Stock Offering.

57.     Defendant RBC Capital Markets, LLC ("RBC") is an investment bank based in Toronto Canada with an office in New York, NY.  RBC served as an underwriter of the Cobalt February 23, 2012 Stock Offering and May 8, 2014 Bond Offering.

58.     Defendant UBS Securities LLC ("UBS") is an investment bank based in Stamford, CT.  UBS served as an underwriter of the Cobalt February 23, 2012 Stock Offering.

59.     Defendant Howard Weil Incorporated ("Howard Weil") is a boutique investment banking firm that provides investment and financial advisory services to the energy sector. Howard Weil is headquartered in New Orleans, Louisiana with an additional office in Houston, Texas.  Howard Weil served as an underwriter of the Cobalt February 23, 2012 Stock Offering.

60.     Defendant Stifel, Nicolaus & Company, Incorporated ("Stifel Nicolaus") is a brokerage and investment banking firm headquartered in St. Louis, Missouri.  Stifel Nicolaus served as an underwriter of the Cobalt February 23, 2012 Stock Offering.

61.     Defendant Capital One Southcoast, Inc. ("Capital One") is a wholly owned non-bank subsidiary of Capital One Financial Corporation and is a full-service investment banking firm that provides corporate finance, equity research, institutional equity sales, and trading sales. Capital One served as an underwriter of the Cobalt February 23, 2012 Stock Offering.

62.     Defendant Lazard Capital Markets LLC ("Lazard") is a brokerage firm with an office in New York, NY.  Lazard served as an underwriter on the May 8, 2014 Bond Offering.

63.     The Defendants named in paragraphs 50-62 are collectively referred to herein as the "Underwriter Defendants."

## **BACKGROUND**

64.     As discussed above, Cobalt was formed in 2005 by Defendants Goldman Sachs Group, Inc. and Riverstone.  Despite Cobalt's very small size, its short operational history, and fierce competition from at least seven other oil exploration companies, Cobalt gained access to massive oil exploration "blocks" off the coast of Angola in February 2010 and entered into exploration agreements with the government of Angola.

65.     Under Cobalt's agreements to drill for oil in Angola, Cobalt and the Angolan government structured Cobalt's partnerships in Angola to allow for Angolan officials to have ownership interests in Cobalt's business partners.  As part of Cobalt's agreement with the Angolan government to explore for oil in Angolan Blocks 9 and 21, Cobalt agreed to partner with the Angolan state oil company (Sonangol) and two Angolan corporations, Nazaki and Alper.  Each entity's share of the partnership in Blocks 9 and 21 is set forth in the graphic below:



66.     Cobalt also explored for oil in Angolan Block 20, which contained the Lontra well. In the agreement for Block 20, Cobalt was partnered with Sonangol, a subsidiary of Sonangol called Sonangol P&P, BP and China Sonangol.

67.     As Cobalt has acknowledged, the five Investment Firms named as Defendants herein – Goldman Sachs, Carlyle, Riverstone, First Reserve and KERN – "controlled" Cobalt during the Class Period.  At the start of the Class Period, these firms collectively held more than 50% of Cobalt's common stock, had the right to appoint seven of Cobalt's 12 directors, had their own Managing Directors serve as Directors on the Cobalt Board of Directors, and in the case of Goldman Sachs, used its investment banking arm as an underwriter in Cobalt Offerings.  Goldman Sachs and the other Defendants were therefore able to control Cobalt's public disclosures and the conduct of the Offerings to ensure they maximized the value received by those Defendants.  Cobalt has also disclosed that underwriters of its offerings have performed "financial advisory and investment banking services" for Cobalt.   These complex arrangements ensured that the Investment Firms derived significant pecuniary benefits through their control of Cobalt.

68.     During the Class Period, while the misconduct described herein was occurring, Cobalt and these five largest Cobalt shareholders (Goldman Sachs, Carlyle, Riverstone, First Reserve and KERN) sold their own Cobalt securities worth ***$3.3275 billion*** through a series of securities offerings, all of which took advantage of very high Class Period prices.  As a result of their massive sales, Goldman Sachs and the other largest investors in Cobalt reduced their ownership of the Company from more than 50% at the beginning of the Class Period to less than 31% by May 2013.  Also by May 2013, Defendants France (a First Reserve Managing Director), Lancaster (a Riverstone Managing Director) and Lebovitz (a Goldman Sachs Managing Director) announced their resignations from the Cobalt Board of Directors.

69.     During the Class Period, the Company also raised over $2.5 billion from investors on sales of convertible bonds through the Bond Offerings.   Significantly, Goldman Sachs served as an underwriter of the Bond Offerings, reaping millions of dollars in fees.

## DEFENDANTS' MATERIAL MISSTATEMENTS AND OMISSIONS
## TO INVESTORS IN VIOLATION OF THE EXCHANGE ACT

70.    On February 21, 2012, Cobalt filed with the SEC its Form 10-K for the year ending December 31, 2011.  In that Form 10-K, Cobalt announced that, months earlier, in November 2011, the SEC had issued a formal order of investigation to Cobalt related to the Company's operations in Angola.  In that same Form 10-K, the Company claimed that Cobalt had "conducted an extensive investigation into these allegations and believe[s] that [its] activities in Angola have complied with all laws, including the FCPA."  Specifically, Cobalt's Form 10-K filed with the SEC on February 21, 2012, contained the following materially false and misleading statements:[7]

> In connection with entering into our RSAs [Risk Services Agreements] for Blocks 9 and 21 offshore Angola, two Angolan-based E&P [exploration and production] companies were assigned as part of the contractor group by the Angolan government.  We had not worked with either of these companies in the past, and, therefore, our familiarity with these companies was limited.  In the fall of 2010, we were made aware of allegations of a connection between senior Angolan government officials and one of these companies, Nazaki Oil and Gáz, S.A. ("Nazaki"), which is a full paying member of the contractor group.  Nazaki has repeatedly denied the allegations in writing.  In March 2011, the SEC commenced an informal inquiry into these allegations.  To avoid non-overlapping information requests, we voluntarily contacted the U.S. Department of Justice ("DOJ") with respect to the SEC's informal request and offered to respond to any requests the DOJ may have.  Since such time, we have been complying with all requests from the SEC and DOJ with respect to their inquiry.  In November 2011, a formal order of investigation was issued by the SEC related to our operations in Angola.  We are fully cooperating with the SEC and DOJ investigations, have conducted an extensive investigation into these allegations and believe that our activities in Angola have complied with all laws, including the FCPA.

71.    Cobalt's Form 10-K filed on February 21, 2012 also included Certifications signed by Defendants Bryant and Wilkirson on February 21, 2012, which each contained the following materially false and misleading statements:

1.    I have reviewed this annual report on Form 10-K of Cobalt International Energy,

---

[7] Cobalt's Form 10-K filed on February 23, 2012 was signed by Defendants Bryant, Wilkirson, Coneway, France, Golden, Lancaster, Lebovitz, Marshall, Moore, Pontarelli, Scoggins, Van Steenbergen, and Young.

Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process,

summarize and report financial information; and

(b)  Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

72.    Cobalt's Form 10-K filed on February 21, 2012 also included a Certification signed by

Defendant Bryant on February 21, 2012, which contained the following materially false and

misleading statements:

In connection with the Annual Report on Form 10-K of Cobalt International Energy, Inc. (the "Company") for the year ended December 31, 2011 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), Joseph H. Bryant, as Chief Executive Officer of the Company, hereby certifies, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that, to his knowledge:

(i)  The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(ii)  The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

73.    Cobalt's Form 10-K filed on February 21, 2012 also included a Certification signed by

Defendant Wilkirson on February 21, 2012, which contained the following materially false and

misleading statements:

In connection with the Annual Report on Form 10-K of Cobalt International Energy, Inc. (the "Company") for the year ended December 31, 2011 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), John P. Wilkirson, as Chief Financial Officer of the Company, hereby certifies, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that, to his knowledge:

(i)  The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(ii)  The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

74.    Two days later, on February 23, 2012, Cobalt and selling shareholders of Cobalt

common stock offered to investors 59.8 million shares of Cobalt stock through the February 23,

2012 Stock Offering at a price of $28.00 per share.[8]   In this Offering, the following selling shareholders sold at least the following amounts of Cobalt common stock:

| | |
|---|---|
| The Carlyle/Riverstone Funds | 10,346,879 |
| The First Reserve Funds | 10,252,967 |
| The Goldman Sachs Group, Inc. | 10,347,593 |
| The KERN Fund | 4,427,599 |
| Joseph H. Bryant | 750,000 |
| James H. Painter | 29,962 |
| Van P. Whitfield | 100,000 |
| Jack E. Golden | 45,000 |

75.     Pursuant to the February 23, 2012 Offering, Cobalt filed the Company's Preliminary Prospectus Supplement Subject to Completion, and accompanying Prospectus, with the SEC on February 21, 2012; and Cobalt's Prospectus Supplement, and accompanying Prospectus, with the SEC on February 24, 2012.  Cobalt's Preliminary Prospectus Supplement Subject to Completion, and accompanying Prospectus, filed with the SEC on February 21, 2012 contained the following materially false and misleading statements about Cobalt and its business in Angola:

We are an independent, oil-focused exploration and production company with a world-class below salt prospect inventory in the deepwater of the U.S. Gulf of Mexico and offshore Angola and Gabon in West Africa.

*   *   *

We have several near term high impact exploratory and appraisal wells to be drilled over the next 12 to 18 months.  Among these are several large, oil-focused high impact wells . . . in the deepwater offshore Angola, including our Bicuar, North Cameia . . ., Lontra and Loengo pre-salt prospects . . . .

*   *   *

---

[8] This amount includes 7,800,000 shares of common stock that Cobalt granted the Underwriters as an over-allotment option.

As of September 30, 2010, we have established a current portfolio of 134 identified, well-defined prospects, comprised of 48 prospects located in the deepwater U.S. Gulf of Mexico and 86 prospects located in offshore West Africa.

76.     Cobalt's Prospectus Supplement, and accompanying Prospectus, filed with the SEC on February 24, 2012, contained the following materially false and misleading statements about Cobalt and its business in Angola:

We are an independent, oil-focused exploration and production company with a world-class below salt prospect inventory in the deepwater of the U.S. Gulf of Mexico and offshore Angola and Gabon in West Africa.

\* \* \*

We have several near term high impact exploratory and appraisal wells to be drilled over the next 12 to 18 months.  Among these are several large, oil-focused high impact wells . . . in the deepwater offshore Angola, including our Bicuar, North Cameia. . ., Lontra and Loengo pre-salt prospects . . . .

\* \* \*

As of September 30, 2010, we have established a current portfolio of 134 identified, well-defined prospects, comprised of 48 prospects located in the deepwater U.S. Gulf of Mexico and 86 prospects located in offshore West Africa.

77.     On April 15, 2012, *The Financial Times* reported that three of Angola's most powerful officials – Manuel Vicente (the former CEO of Sonangol and current Vice President of Angola), Manuel Helder Vieira Dias Junior (head of the Angolan military bureau) and Leopeldino Fragoso do Nascimento (a former head of communications in the Angolan presidency) – held interests in Nazaki, Cobalt's partner in Angolan Blocks 9 and 21.  According to the article, the three officials' ownership of Nazaki "raise[d] questions about compliance with US anti-corruption law, which makes it a crime to pay or offer anything of value to foreign officials to win business."

78.     On April 15, 2012, in another article in *The Financial Times*, Cobalt falsely reassured investors that there was no credible support for *The Financial Times*' claim that Angolan officials had financial interests in Nazaki.  In that article, Cobalt falsely "stressed" that its own

24

investigations had "not found any credible support for [the] central allegation that Angolan government officials, and specifically the officials identified . . . have any ownership in Nazaki."

79.    Along these same lines, on April 16, 2012 Cobalt issued a press release on the *Business Wire* that similarly contained the following materially false and misleading statements:

> Cobalt International Energy, Inc. ("Cobalt") (NYSE: CIE) today, in responding to two articles published by the Financial Times on April 15, 2012, titled "Angola officials held hidden oil stakes" and "Spotlight falls on Cobalt's Angola partner," strongly refuted any allegations of wrong doing and once again stood behind its principles of full compliance with all laws in all jurisdictions in which it operates.

> Prior to publication of these articles, Cobalt went on the record asking for any documentation that the Financial Times could offer which was at odds with its position.  The Financial Times declined Cobalt's repeated requests for supporting documentation.  In fact, in the course of these communications, Cobalt informed the Financial Times of certain egregious, demonstrably false allegations that it provided to Cobalt.

> Cobalt began its investigation into its Angola business relationships in 2007.  Cobalt has based its decisions and actions on the results of these extensive investigations and will continue to maintain rigorous due diligence in all of its worldwide activities.  Cobalt remains confident that it has not violated any US or Angolan Law and will vigorously defend its reputation and legal rights in this matter.

80.    On Cobalt's May 1, 2012 conference call with investors, CEO and Chairman Bryant falsely made the following materially false and misleading statements with respect to Cobalt's operations in Angola:

> Finally I would like to briefly discuss certain media articles in Cobalt's commitment to transparency.  As I'm sure many of you are aware, Cobalt was named in a series of Financial Times articles about potential foreign corrupt practice issues in Angola.  In particular it was alleged that certain Governmental Officials held concealed interest in (induadible) [Nazaki] who is our partner in blocks 9 and 21 in Angola.

> Transparency is a primary focus at Cobalt and frankly we cannot operate without it.  We have spent significant human and financial resources to ensure that the appropriate compliance was undertaken as relates to the contracts and agreements we have in place with our Angola partners.  Our compliance efforts began in 2007.  Long before we began operations in Angola, and long before these articles and allegations surfaced.  From the beginning, our compliance efforts have been led by

two highly respected international law firms. Our Board of Directors routinely discusses compliance matters and hears directly from our law firms. We are confident of this process and that we have done everything we can do.

In addition, we've worked closely with the US Securit[ies] and Exchange Commission and the Department of Justice in responding to their inquiries to be sure that we adhere to the appropriate regulations. Our compliance efforts never end, and we intend to continue our efforts in this same vein. With regard to in a [sic] [Alper and] Nazaki, they were assigned the block 9 and 21 contractor groups by the concessionaire's group Senegal [Sonangol]. In the same fashion for example as BP was assigned to the block 20 contractor group and Nazaki was selected by Senegal [Sonangol] well after Cobalt was assigned these blocks. I wish to clearly state that we did not select Nasaki and they are a full paying member of the contractor group.

81.    On June 14, 2012, Michael Goldberg, a Baker Botts lawyer and an agent of Cobalt, was quoted in a *Financial Times* article as making the following materially false and misleading statements with respect to the U.S. government's investigation of Cobalt: "Based on our investigation into this entire matter, including our most recent findings, we are more convinced than ever that Cobalt has not violated any US or Angolan laws." Also on June 14, 2012, Lynne Hackedorn, a spokeswoman at Cobalt headquarters claimed falsely that, "We're confident we've done nothing wrong . . . We're completely working diligently with them [i.e, the SEC and DOJ]."

82.    On December 12, 2012, Cobalt issued to investors $1.38 billion worth of convertible senior notes due 2019 (including a $180 million over-allotment) pursuant to, among other filings, a Preliminary Prospectus Subject to Completion filed with the SEC on December 11, 2012, and a Prospectus Supplement filed with the SEC on December 13, 2012.

83.    Cobalt's Preliminary Prospectus Supplement Subject to Completion, and accompanying Prospectus, filed with the SEC on December 11, 2012, contained the following materially false and misleading statements about Cobalt and its business in Angola:

We are an independent, oil-focused exploration and production company with an extensive below salt prospect inventory in . . . offshore Angola . . . . All of our prospects are oil-focused.

* * *

We have several near term exploratory and appraisal wells to be drilled over the next 12 to 18 months.  Among these are several large, oil-focused wells . . . in the deepwater offshore Angola, including our Bicuar, Mavinga, Lontra and Loengo pre-salt prospects . . . .

* * *

We are an independent, oil-focused exploration and production company with a world-class below salt prospect inventory in . . . offshore Angola . . . .  As of September 30, 2010, we have established a current portfolio of 134 identified, well-defined prospects, comprised of 48 prospects located in the deepwater U.S. Gulf of Mexico and 86 prospects located in offshore West Africa.

84.    Cobalt's Prospectus Supplement, and accompanying Prospectus, filed with the SEC on December 13, 2012, contained the following materially false and misleading statements about Cobalt and its business in Angola:

We are an independent, oil-focused exploration and production company with an extensive below salt prospect inventory in . . . offshore Angola . . . .  All of our prospects are oil-focused.

* * *

We have several near term exploratory and appraisal wells to be drilled over the next 12 to 18 months.  Among these are several large, oil-focused wells . . . in the deepwater offshore Angola, including our Bicuar, Mavinga, Lontra and Loengo pre-salt prospects.

We are an independent, oil-focused exploration and production company with a world-class below salt prospect inventory in . . . offshore Angola.  As of September 30, 2010, we have established a current portfolio of 134 identified, well-defined prospects, comprised of 48 prospects located in the deepwater U.S. Gulf of Mexico and 86 prospects located in offshore West Africa.

85.    On January 16, 2013, Cobalt selling shareholders offered to investors 46 million shares of Cobalt common stock pursuant to, among other filings, Cobalt's Preliminary Prospectus Supplement Subject to Completion, and accompanying Prospectus, filed with the SEC on January 16, 2013; and Cobalt's Prospectus Supplement, and accompanying Prospectus, filed with the SEC

27

on January 17, 2013.[9]  All shares offered for sale on January 16, 2013 were offered at a price of $25.15.  In this Offering, the following selling shareholders sold the following numbers of Cobalt common stock:

| | |
|---|---|
| The Carlyle/Riverstone Funds | 13,049,550 |
| The First Reserve Funds | 10,000,000 |
| The Goldman Sachs Group, Inc.[10] | 13,050,450 |
| The KERN Fund | 3,900,000 |

86.    Cobalt's Preliminary Prospectus Supplement Subject to Completion, and accompanying Prospectus, filed with the SEC on January 16, 2013, contained the following materially false and misleading statements about Cobalt and its business in Angola:

> We are an independent, oil-focused exploration and production company with an extensive below salt prospect inventory in the deepwater of the U.S. Gulf of Mexico and offshore Angola and Gabon in West Africa.
>
> *    *    *
>
> We have several near term exploratory and appraisal wells to be drilled over the next 12 to 18 months.  Among these are several large, oil-focused wells . . . in the deepwater offshore Angola, including our Bicuar, Mavinga, Lontra and Loengo pre-salt prospects . . . .
>
> *    *    *
>
> We are an independent, oil-focused exploration and production company with a world-class below salt prospect inventory in . . . offshore Angola . . . .  As of September 30, 2010, we have established a current portfolio of 134 identified, well-defined prospects, comprised of 48 prospects located in the deepwater U.S. Gulf of Mexico and 86 prospects located in offshore West Africa.

87.    Cobalt's Prospectus Supplement, and accompanying Prospectus, filed with the SEC

---

[9]  This amount includes 6,000,000 shares of common stock that Cobalt granted the Underwriters as an over-allotment option.

[10]  At the time of the January 16, 2013 Offering, Goldman Sachs Group, Inc. was a significant shareholder of Cobalt (holding approximately 15.33% of Cobalt's shares before the transaction) and a selling shareholder in this Offering.

on January 17, 2013, contained the following materially false and misleading statements about

Cobalt and its business in Angola:

> We are an independent, oil-focused exploration and production company with an extensive below salt prospect inventory in the deepwater of the U.S. Gulf of Mexico and offshore Angola and Gabon in West Africa.

> \*   \*   \*

> We have several near term exploratory and appraisal wells to be drilled over the next 12 to 18 months. Among these are several large, oil-focused wells . . . in the deepwater offshore Angola, including our Bicuar, Mavinga, Lontra and Loengo pre-salt prospects . . . .

> \*   \*   \*

> We are an independent, oil-focused exploration and production company with a world-class below salt prospect inventory in . . . offshore Angola . . . . As of September 30, 2010, we have established a current portfolio of 134 identified, well-defined prospects, comprised of 48 prospects located in the deepwater U.S. Gulf of Mexico and 86 prospects located in offshore West Africa.

88.    In the Company's Form 10-K filed on February 26, 2013, Cobalt again discussed

the SEC's November 2011 formal order of investigation to Cobalt related to the Company's

operations in Angola and claimed that Cobalt had "conducted an extensive investigation into these

allegations and believe[s] that [its] activities in Angola have complied with all laws, including the

FCPA":[11]

> In connection with entering into our RSAs for Blocks 9 and 21 offshore Angola, two Angolan-based E&P [exploration and production] companies were assigned as part of the contractor group by the Angolan government. We had not worked with either of these companies in the past, and, therefore, our familiarity with these companies was limited. In the fall of 2010, we were made aware of allegations of a connection between senior Angolan government officials and one of these companies, Nazaki Oil and Gáz, S.A. ("Nazaki"), which is a full paying member of the contractor group. In March 2011, the SEC commenced an informal inquiry into these allegations. To avoid non-overlapping information requests, we voluntarily contacted the U.S. Department of Justice ("DOJ") with respect to the SEC's informal request and offered to respond to any requests the DOJ may have. Since

---

[11] Cobalt's Form 10-K filed on February 26, 2013 was signed by Defendants Bryant, Wilkirson, Coneway, France, Golden, Lancaster, Lebovitz, Marshall, Moore, Pontarelli, Scoggins, Van Steenbergen, and Young.

such time, we have been complying with all requests from the SEC and DOJ with respect to their inquiry. In November 2011, a formal order of investigation was issued by the SEC related to our operations in Angola. We are fully cooperating with the SEC and DOJ investigations, have conducted an extensive investigation into these allegations and believe that our activities in Angola have complied with all laws, including the FCPA.

89.    Cobalt's Form 10-K filed on February 26, 2013 also included Certifications signed by

Defendants Bryant and Wilkirson on February 26, 2013, contained the following materially false and

misleading statements:

1. I have reviewed this annual report on Form 10-K of Cobalt International Energy, Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

90.    Cobalt's Form 10-K filed on February 26, 2013 also included a Certification signed by Defendant Bryant on February 26, 2013, contained the following materially false and misleading statements:

In connection with the Annual Report on Form 10-K of Cobalt International Energy, Inc. (the "Company") for the year ended December 31, 2012 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), Joseph H. Bryant, as Chief Executive Officer of the Company, hereby certifies, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that, to his knowledge:

(i) The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(ii) The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

91.    Cobalt's Form 10-K filed on February 26, 2013 also included a Certification signed by Defendant Wilkirson on February 26, 2013, contained the following materially false and misleading statements:

In connection with the Annual Report on Form 10-K of Cobalt International Energy, Inc. (the "Company") for the year ended December 31, 2012 as filed with

the Securities and Exchange Commission on the date hereof (the "Report"), John P. Wilkirson, as Chief Financial Officer of the Company, hereby certifies, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that, to his knowledge:

(i)  The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(ii)  The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

92.    In presentations to investors on March 19, May 21, June 3 and August 28, 2013, Cobalt misleadingly described the amount of oil in its Lontra well as having "Greater than billion barrel potential."

93.    On May 8, 2013, Cobalt selling shareholders offered to investors 50 million shares of Cobalt common stock pursuant to, among other filings, Cobalt's Free Writing Prospectus filed with the SEC on May 7, 2013; Cobalt's Preliminary Prospectus Supplement Subject to Completion, and accompanying Prospectus, filed with the SEC on May 8, 2013; and Cobalt's Prospectus Supplement, and accompanying Prospectus, field with the SEC on May 9, 2013.[12]

94.    All shares offered for sale on May 8, 2013 were offered at a price of $26.62.  In this Offering, the following selling shareholders sold the following numbers of Cobalt common stock:

| The Carlyle/Riverstone Funds | 15,083,328 |
| The First Reserve Funds | 15,832,304 |
| The Goldman Sachs Group, Inc.[13] | 15,084,368 |
| The KERN Fund | 4,000,000 |

95.    Cobalt's Free Writing Prospectus filed with the SEC on May 7, 2013 contained the

---

[12]  As part of the May 8, 2013 Offering, Cobalt also granted the Underwriters an over-allotment option of 7.5 million shares of common stock.

[13]  At the time of the May 8, 2013 Offering, Goldman Sachs Group, Inc. was a significant shareholder of Cobalt (holding approximately 12.14% of Cobalt's shares before the transaction) and a selling shareholder in the Offering.

materially false and misleading statement that, "Cobalt is an independent oil exploration and production company focusing on the deepwater U.S. Gulf of Mexico and offshore Angola and Gabon in West Africa."

96. Cobalt's Preliminary Prospectus Supplement Subject to Completion, and accompanying Prospectus, filed with the SEC on May 8, 2013 contained the following materially false and misleading statements about Cobalt and its business in Angola:

> We are an independent, oil-focused exploration and production company with an extensive below salt prospect inventory in the deepwater U.S. Gulf of Mexico and offshore Angola and Gabon in West Africa.

> \*   \*   \*

> We are an independent, oil-focused exploration and production company with a world-class below salt prospect inventory in . . . offshore Angola . . . . As of September 30, 2010, we have established a current portfolio of 134 identified, well-defined prospects, comprised of 48 prospects located in the deepwater U.S. Gulf of Mexico and 86 prospects located in offshore West Africa.

97. Cobalt's Prospectus Supplement, and accompanying Prospectus, filed with the SEC on May 9, 2013 contained the following materially false and misleading statements about Cobalt and its business in Angola:

> We are an independent, oil-focused exploration and production company with an extensive below salt prospect inventory in the deepwater U.S. Gulf of Mexico and offshore Angola and Gabon in West Africa.

> \*   \*   \*

> We are an independent, oil-focused exploration and production company with a world-class below salt prospect inventory in . . . offshore Angola . . . . As of September 30, 2010, we have established a current portfolio of 134 identified, well-defined prospects, comprised of 48 prospects located in the deepwater U.S. Gulf of Mexico and 86 prospects located in offshore West Africa.

98. On October 29, 2013, Defendant Farnsworth, Cobalt's Chief Exploration Officer, made the materially false and misleading statement to investors that, at Lontra, "this is not the big

gas field" but rather "an oil field," and thus "a significant discovery."

99.    On December 1, 2013, after the close of trading, Cobalt admitted to investors that its Lontra field actually "contains more gas than our pre-drill estimates."  When this financially devastating news was released, Cobalt's stock price fell dramatically in response to it, by nearly 17%, and Cobalt's common stock and bonds lost significant value as a result.  This disclosure was not a full correction of Defendants' fraud, however, because, as set forth below, the Company continued to make materially false and misleading statements to the contrary and assure investors that Cobalt had not engaged in wrongdoing.  Additional material facts also remained undisclosed to investors at this time.

100.    On December 30, 2013, Cobalt filed with the SEC a Form S-3 "shelf" Registration Statement and Prospectus that allowed Cobalt to make securities offerings thereafter pursuant to it (the "December 30, 2013 Registration Statement").  The December 30, 2013 Registration Statement was signed by Cobalt Directors Bryant, Wilkirson, Coneway, Golden, Hutchison, Marshall, Moore, Scoggins, van Steenbergen, Utt, and Young, and it contained the following materially false and misleading statements about Cobalt and its business in Angola:

> Cobalt is an independent oil exploration and production company active in the deepwater U.S. Gulf of Mexico and offshore Angola and Gabon.

101.    In the Company's Form 10-K filed on February 27, 2014, Cobalt again discussed the SEC's November 2011 formal order of investigation to Cobalt related to the Company's operations in Angola and repeated materially false and misleading statements that Cobalt had "conducted an extensive investigation into these allegations and believe[s] that [its] activities in Angola have complied with all laws, including the FCPA":[14]

> In connection with entering into our RSAs for Blocks 9 and 21 offshore Angola,

---

[14] Cobalt's Form 10-K filed on February 27, 2014 was signed by Defendants Bryant, Wilkirson, Coneway, France, Golden, Lancaster, Lebovitz, Marshall, Moore, Pontarelli, Scoggins, Van Steenbergen, and Young.

two Angolan-based E&P companies were assigned as part of the contractor group by the Angolan government. We had not worked with either of these companies in the past, and, therefore, our familiarity with these companies was limited. In the fall of 2010, we were made aware of allegations of a connection between senior Angolan government officials and one of these companies, Nazaki Oil and Gáz, S.A. ("Nazaki"), which is a full paying member of the contractor group. In March 2011, the SEC commenced an informal inquiry into these allegations. To avoid non-overlapping information requests, we voluntarily contacted the U.S. Department of Justice ("DOJ") with respect to the SEC's informal request and offered to respond to any requests the DOJ may have. Since such time, we have been complying with all requests from the SEC and DOJ with respect to their inquiry. In November 2011, a formal order of investigation was issued by the SEC related to our operations in Angola. We are fully cooperating with the SEC and DOJ investigations, have conducted an extensive investigation into these allegations and believe that our activities in Angola have complied with all laws, including the FCPA.

102.    Cobalt's Form 10-K filed on February 27, 2014 also included Certifications signed by Defendants Bryant and Wilkirson on February 27, 2014, which each included the following materially false and misleading statements:

1. I have reviewed this annual report on Form 10-K of Cobalt International Energy, Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

35

(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

103.　Cobalt's Form 10-K filed on February 27, 2014 also included a Certification signed by Defendant Bryant on February 27, 2014, which included the following materially false and misleading statements:

In connection with the Annual Report on Form 10-K of Cobalt International Energy, Inc. (the "Company") for the year ended December 31, 2013 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), Joseph H. Bryant, as Chief Executive Officer of the Company, hereby certifies, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that, to his knowledge:

(i) The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(ii) The information contained in the Report fairly presents, in all material

respects, the financial condition and results of operations of the Company.

104.    Cobalt's Form 10-K filed on February 27, 2014 also included a Certification signed by Defendant Wilkirson on February 27, 2014, which included the following materially false and misleading statements:

> In connection with the Annual Report on Form 10-K of Cobalt International Energy, Inc. (the "Company") for the year ended December 31, 2013 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), John P. Wilkirson, as Chief Financial Officer of the Company, hereby certifies, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that, to his knowledge:
>
>    (i)  The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and
>
>    (ii)  The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

105.    On March 25, 2014 (according to a J.P. Morgan analyst report published months later, on August 28, 2014), the Angolan government terminated Alper's partnership interest in Cobalt's oil exploration blocks in Angola and granted that interest to a subsidiary of Sonangol. Yet, in Cobalt's first quarter 2014 Form 10-Q, signed by Defendants Bryant and Wilkirson and filed with the SEC on May 1, 2014, more than one month after the March 25, 2014 effective date of the Angolan Executive Decree related to the termination of Alper's partnership interest, ***Cobalt still falsely claimed that Alper was a 10% working interest partner with Cobalt***.  The May 1, 2014 Form 10-Q included the following materially false and misleading statements:

> On February 28, 2014, we submitted a formal declaration of commercial discovery to Sociedade National de Combustíveis de Angola—Empresa Pública ("Sonangol") with respect to our Cameia discovery on Block 21 offshore Angola. . . .  Our partners in the Cameia project include Sonangol P&P, with a 35% working interest, Nazaki Oil and Gáz, S.A. ("Nazaki"), with a 15% working interest, and Alper Oil, Limitada ("Alper"), with a 10% working interest.
>
> On April 3, 2014, the Angola Ministry of Petroleum published Executive Decree 95/14, which granted us a two-year extension of the initial exploration phase on Block 9 offshore Angola.  We expect to spud the Loengo #1 exploration well on

Block 9 offshore Angola in 2014.  The Loengo #1 exploration well will target pre-salt horizons in Block 9 offshore Angola, where we are the named operator with a 40% working interest.  Loengo was mapped using our 3-D seismic data.  Our partners in the Loengo prospect are Sonangol P&P, with a 35% working interest, Nazaki, with a 15% working interest, and Alper, with a 10% working interest.

106.    On May 8, 2014, Cobalt issued to investors $1.3 billion worth of convertible senior notes due 2024 (including a $150 million over-allotment) pursuant to, among other filings, a Preliminary Prospectus Subject to Completion filed with the SEC on May 7, 2014 and a Prospectus Supplement filed with the SEC on May 9, 2014.  Cobalt's Preliminary Prospectus Supplement Subject to Completion, and accompanying Prospectus, filed with the SEC on May 7, 2014 contained the following materially false and misleading statements about Cobalt and its business in Angola:

We are an independent exploration and production company with operations in the deepwater U.S. Gulf of Mexico and offshore Angola and Gabon in West Africa. Since our founding in 2005, our oil-focused, below-salt exploration efforts have been successful in each of our three operating areas, resulting in nine discoveries out of the fourteen exploration prospects drilled.  These nine discoveries consist of North Platte, Heidelberg and Shenandoah in the U.S. Gulf of Mexico; Cameia, Lontra, Mavinga, Bicuar and Orca offshore Angola; and Diaman offshore Gabon.

\*    \*    \*

Cobalt is an independent oil exploration and production company active in the deepwater U.S. Gulf of Mexico and offshore Angola and Gabon.

107.    Cobalt's Prospectus Supplement, and accompanying Prospectus, filed with the SEC on May 9, 2014 contained the following materially false and misleading statements about Cobalt and its business in Angola:

We are an independent exploration and production company with operations in the deepwater U.S. Gulf of Mexico and offshore Angola and Gabon in West Africa. Since our founding in 2005, our oil-focused, below-salt exploration efforts have been successful in each of our three operating areas, resulting in nine discoveries out of the fourteen exploration prospects drilled.  These nine discoveries consist of North Platte, Heidelberg and Shenandoah in the U.S. Gulf of Mexico; Cameia, Lontra, Mavinga, Bicuar and Orca offshore Angola; and Diaman offshore Gabon.

108.    On August 5, 2014, Cobalt shocked investors when it disclosed that, despite the Company's repeated claims during the Class Period that the Company was in full compliance with anti-bribery laws, the SEC's Enforcement Division had "recommend[ed] that the SEC institute an enforcement action against the Company, *alleging violations of certain federal securities laws*." The Company revealed that as part of the SEC's potential enforcement action, the agency may seek remedies that include monetary penalties.  Cobalt further disclosed that the Wells Notice it received from the SEC "related to the investigation [the SEC] has been conducting relating to Cobalt's operations in Angola, and the allegations of Angolan government official ownership of Nazaki Oil and Gas."

109.    Also on the morning of August 5, 2014, *Bloomberg* reported on findings of an anti-corruption organization that Cobalt had in fact been making apparent bribes to the Angolan government in the form of substantial funding for an Angolan research center that Cobalt could not confirm existed.

110.    In response to these disclosures about the SEC's investigation and Cobalt's illicit payments to Angola, on August 5, 2014, the price of Cobalt stock fell by nearly 11%, and Cobalt's common stock and bonds lost significant value as a result.  However, these disclosures were not full corrections of Defendants' fraud, because, as discussed below, the Company continued to make materially false and misleading statements to the contrary and assured investors that Cobalt had not engaged in wrongdoing.  Additional material facts also remained undisclosed to investors at this time.

111.    After Cobalt disclosed the SEC's heightened investigation of the Company on August 5, 2014, Cobalt continued its strenuous denials that it was involved in any illegal activity, stressing on August 5, 2014 that the SEC's Wells Notice "does nothing to change our prior

conclusion that our activity in Angola has fully complied with all laws, including the Foreign

Corrupt Practices Act, and Cobalt continues to strongly refute any allegations of any wrongdoing."

112.    In addition, on August 5, 2014, in response to questions from analysts about the

SEC's investigation on the Company's third quarter 2014 conference call, Defendant Bryant

added, "We understand due diligence [and] [w]e have gone above and beyond in every case [and]

[w]e sit here today confident in our position."

113.    On August 27, 2014, at a time when Cobalt's stock price had already fallen as a

result of the SEC's announced heightened investigation in connection with its Wells Notice on the

Company, Cobalt and the government of Angola acknowledged the illegitimacy of Cobalt's

partners in Angola.  Approximately three weeks after Cobalt announced on August 5, 2014 that

the SEC's Enforcement Division had recommended an enforcement action against Cobalt, Cobalt

announced the termination of Nazaki's and Alper's partnerships with Cobalt.  Specifically, Cobalt

announced that on August 26, it had "received documentation confirming that *Nazaki . . . and

Alper . . . are no longer members of the contractor group of Blocks 9 and 21 offshore Angola*."

This dramatic change occurred as a result of a "series of Executive Decrees passed by the Republic

of Angola," which transferred Nazaki and Alper's prior working interests in Blocks 9 and 21 to a

subsidiary of Sonangol.  As a result, in the wake of the SEC's investigation, Cobalt "*no longer

has any relationship with Nazaki or Alper*."  Cobalt and Angola thereby implicitly acknowledged

that there were significant underlying problems in the business relationships between Cobalt,

Nazaki and Alper, or the business they conducted, as to warrant the termination of those

relationships.  The timing of this change, and the timing of its announcement, are highly

suspicious.

114.    In addition, as first reported by an analyst for J.P. Morgan in a report dated August

28, 2014, the Angolan decree terminating Alper's partnership interest in the Angolan Blocks was effective March 25, 2014 – approximately five months before Cobalt made this information public. Yet, Cobalt's public filings with the SEC between March 2014 and August 2014 made no mention of this significant change and still referred to Alper as Cobalt's partner, and Cobalt otherwise made no disclosure of this fact. The J.P. Morgan analyst further noted that the Angolan decrees terminating Nazaki's partnership interests in Blocks 9 and 21 stated that Nazaki did not have "proven competence and financial capacity" to hold the Blocks. J.P. Morgan noted that it was "*curious*" that it took this long for the Ministry of Angola to figure out that Nazaki did not have the competence or financial capability to be a genuine partner with Cobalt.

115.    These disclosures were not full corrections of Defendants' fraud, because, as discussed below, the Company continued to make materially false and misleading statements to the contrary and assure investors that Cobalt had not engaged in wrongdoing. Additional material facts also remained undisclosed to investors at this time.

116.    On November 4, 2014, the last day of the Class Period, Cobalt disclosed sharply negative financial results that further reflected the serious financial impact that the poor quality of Cobalt's Angolan wells was having on the Company. That day, Cobalt disclosed a net loss of $143 million and the lack of oil or gas in its Loengo #1 exploration well – a well that Cobalt had described in the Offering Materials as "world class," "large," "oil-focused" and "high impact." Cobalt's loss on a per share basis was $0.35 per share, more than double Wall Street banks' consensus estimate of $0.17. In response to these disclosures, the price of Cobalt's stock fell 11.5%, and Cobalt's common stock and bonds lost significant value as a result.

* * *

117.    All of the foregoing statements in Cobalt public filings, press releases and on Cobalt

investor conference calls were materially misstated, and contained materially false and misleading statements because they misstated or failed to disclose that: (i.) Cobalt misrepresented as mere "allegations" the assertion that three senior Angolan officials had a "connection" with Nazaki when in fact those officials had a pecuniary interest in Nazaki; (ii.) Angola has acknowledged that, rather than being a "full paying member of the contractor group," Nazaki did not have "proven competence and financial capacity" to participate as a true partner with Cobalt in Blocks 9 and 21; (iii.) Cobalt was not "independent"; (iv.) Cobalt's "oil-focused" "exploration efforts" had not been "successful"; (v.) the Company did not believe, and/or lacked a reasonable basis to believe, that its activities complied with "all laws, including the FCPA"; (vi.) Cobalt's "prospect inventory" in Angola was not "oil-focused," "high impact," "world-class," "large," or "extensive," and Cobalt's oil prospects in Angola did not comprise 86 "well-defined" prospects in West Africa; (vii.) for statements made after March 25, 2014, Angola had already terminated Alper's partnership interest in Blocks 9 and 21 without Cobalt disclosing that fact to investors; and (viii.) Cobalt failed to timely disclose the true amount of oil (versus gas) in its wells.

## SCIENTER ALLEGATIONS

118.    During the Class Period, Cobalt and the Executive Defendants had both the motive and opportunity to commit fraud. They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time. In so doing, Cobalt and the Executive Defendants participated in a scheme to defraud and committed acts, practices and participated in a course of business that operated as a fraud or deceit on purchasers of Cobalt's common stock and notes during the Class Period.

119.    Further evidence that the Executive Defendants acted knowingly or recklessly when making the materially false and misleading statements identified above includes how:

- Cobalt executives have been aware of the SEC's and DOJ's investigations into Cobalt's activities in Angola for several years and the Company's executives had a duty to familiarize themselves with the facts underlying the government's allegations during that time. Indeed, Cobalt repeatedly assured investors in its public statements that it was aware of the facts underlying its business relationships with Nazaki and Alper.

- The Company claimed in its SEC filings that it conducted an "extensive investigation" into the SEC's allegations of corruption and wrongdoing, and on May 1, 2012, Defendant Bryant stated in connection with the allegations of corruption that the "Board of Directors routinely discusses compliance matters."

- During the Class Period, Defendant Bryant sold at least 750,000 shares of Cobalt common stock worth at least $21 million in the February 23, 2012 Offering while in possession of material undisclosed information, which was suspicious in both timing and amount. In addition, Defendant Farnsworth sold 293,789 shares of Cobalt common stock worth approximately $7.6 million during the Class Period, while in possession of material undisclosed information, which was also suspicious in timing and amount.

- The fact that Nazaki lacked "proven competence or financial capability" should have been apparent to Cobalt, based upon its express representations about Nazaki's financial participation in its operations and long-standing partnership with Nazaki.

- The timing of Cobalt's and Angola's disclosure of the divestiture of Nazaki's and Alper's partnership interests in Cobalt's Angolan operations a mere three weeks after Cobalt publicly disclosed the SEC's heightened investigation of the Company is highly suspicious.

## PRESUMPTION OF RELIANCE

120.    At all relevant times, the market for Cobalt's common stock was an efficient market

for the following reasons, among others:

    a.    Cobalt's common stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

    b.    As a regulated issuer, Cobalt filed periodic public reports with the SEC and the NYSE;

    c.    Cobalt regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting

services; and

    d.    Cobalt was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s). Each of these reports was publicly available and entered the public marketplace.

121.    As a result of the foregoing, the market for Cobalt's stock promptly digested current information regarding Cobalt from all publicly available sources and reflected such information in the price of Cobalt's stock. Under these circumstances, all purchasers of Cobalt's stock during the Class Period suffered similar injury through their purchase of Cobalt's stock at artificially inflated prices and the presumption of reliance applies.

122.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are grounded on Defendants' material omissions. During the Class Period, Cobalt withheld information, and failed to disclose material facts, concerning: (i.) the illegitimacy of its business relationships with Angola, Nazaki and Alper; (ii.) the amount of oil versus natural gas found in Cobalt's wells; (iii.) the fact that Nazaki lacked proven competence and financial capacity to participate in Cobalt's oil operations in Angola; (iv.) the fact that Cobalt's financial contributions to Angola for an Angolan research center were funding a center that did not exist; (v.) the fact that Angola had dissolved Alper's partnership interest in Cobalt's Angolan operations; and (vi.) the significance of the risk that Cobalt's business dealings subjected Cobalt to scrutiny by the U.S. government. Because this action involves Defendants' failure to disclose material adverse information, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the withheld information as set forth above, that requirement is satisfied here.

## DEFENDANTS' MATERIAL MISSTATEMENTS AND OMISSIONS
## TO INVESTORS IN VIOLATION OF THE SECURITIES ACT

123.    As discussed below, Cobalt and other Defendants made a series of material misstatements in Cobalt public filings in connection with the Company's five securities Offerings during the Class Period.  Plaintiffs' claims under the Securities Act concerning such material misstatements do not sound in fraud.  Any allegations of fraud, fraudulent conduct, or motive are specifically disclaimed from the following allegations concerning such misstatements for the purposes of Plaintiffs' claims under the Securities Act, which do not have scienter, fraudulent intent or motive as required elements.

### A.    The February 23, 2012 Common Stock Offering

124.    As discussed above, on February 23, 2012, Cobalt and selling shareholders of Cobalt common stock offered to investors 59.8 million shares of Cobalt stock through the February 23, 2012 Stock Offering at a price of $28.00 per share.  In the February 23, 2012 Offering, the following selling shareholders sold at least the following amounts of Cobalt common stock:[15]

| | |
|---|---|
| The Carlyle/Riverstone Funds | 10,346,879 |
| The First Reserve Funds | 10,252,967 |
| The Goldman Sachs Group, Inc. | 10,347,593 |
| The KERN Fund | 4,427,599 |
| Joseph H. Bryant | 750,000 |
| James H. Painter | 29,962 |
| Van P. Whitfield | 100,000 |

---

[15] The underwriters of the February 23, 2012 Offering were Goldman Sachs, Morgan Stanley, Credit Suisse, CGMI, J.P. Morgan, Tudor, Deutsche Bank, RBC, UBS, Howard Weil, Stifel Nicolaus, and Capital One. The total underwriting discounts and commissions paid to these Underwriters for the February 23, 2012 Stock Offering were $43.68 million.  At the time of the February 23, 2012 Offering, Goldman Sachs Group, Inc. was a significant shareholder of Cobalt (holding approximately 19.1% of Cobalt's shares before the transaction), a selling shareholder, and an underwriter in the Offering.  As Cobalt's Prospectus for this Offering acknowledged, Goldman Sachs was thus deemed to have a "conflict of interest" with Cobalt.

| Jack E. Golden | 45,000 |

125.    The February 23, 2012 Stock Offering, as well as the December 12, 2012 Bond Offering, the January 16, 2013 Stock Offering and the May 8, 2013 Bond Offering (discussed further below), were all conducted pursuant to the same "shelf" registration statement filed with the SEC on Form S-3 on January 4, 2011 (the "January 4, 2011 Registration Statement"). Form S-3 permits an issuer to register numerous securities for later issuance in a single SEC filing. Once this "shelf" is established, the issuer may later "take down" securities from the shelf by issuing them to the public pursuant to a later-filed Prospectus, Prospectus Supplement, and/or Pricing Supplement that refers investors to the underlying Form S-3.

126.    The January 4, 2011 Registration Statement and Prospectus was signed by Cobalt Directors Bryant, Wilkirson, Coneway, Cornell, Golden, Lancaster, Marshall, Moore, Murchison, Pontarelli, Scoggins, van Steenbergen, and Young, and contained the following material misstatements about Cobalt and its business in Angola:

> We are an independent, oil-focused exploration and production company with a world-class below salt prospect inventory in . . . offshore Angola . . . .  As of September 30, 2010, we have established a current portfolio of 134 identified, well-defined prospects, comprised of 48 prospects located in the deepwater U.S. Gulf of Mexico and 86 prospects located in offshore West Africa.

127.    The January 4, 2011 Registration Statement also incorporated by reference the Company's Form 10-K filed with the SEC on February 21, 2012. That Form 10-K contained the material misstatements identified above at ¶¶70-73, including the materially misstated Certifications signed by Defendants Bryant and Wilkirson.

128.    Cobalt also conducted the February 23, 2012 Offering pursuant to Cobalt's Preliminary Prospectus Supplement Subject to Completion and accompanying Prospectus filed with the SEC on February 21, 2012; and Cobalt's Prospectus Supplement and accompanying Prospectus filed with the

SEC on February 24, 2012. Those public filings became part of the January 4, 2011 Registration Statement pursuant to which the February 23, 2012 Offering was conducted, and they contained the material misstatements identified above at ¶¶75-76.[16]

### B.    The December 12, 2012 Bond Offering

129.    As discussed above, on December 12, 2012, Cobalt issued to investors $1.38 billion worth of convertible senior notes due 2019.[17]

130.    The December 12, 2012 Bond Offering was conducted pursuant to the January 4, 2011 Registration Statement, which contained the material misstatements identified in ¶126 above, and which incorporated by reference Cobalt's Form 10-K filed with the SEC on February 21, 2012. That Form 10-K contained the material misstatements identified above at ¶¶70-73, including the materially misstated Certifications signed by Defendants Bryant and Wilkirson.

131.    Cobalt also conducted the December 12, 2012 Offering pursuant to Cobalt's Preliminary Prospectus Supplement Subject to Completion, and accompanying Prospectus, filed with the SEC on December 11, 2012; and Cobalt's Prospectus Supplement and accompanying Prospectus, filed with the SEC on December 13, 2012. Those public filings became part of the January 4, 2011 Registration Statement pursuant to which the December 12, 2012 Offering was conducted, and they contained the materially false and misleading statements identified above at ¶¶83-84.[18]

---

[16]   The January 4, 2011 Registration Statement; Cobalt's Preliminary Prospectus Supplement Subject to Completion, and accompanying Prospectus, filed with the SEC on February 21, 2012; and Cobalt's Prospectus Supplement, and accompanying Prospectus, filed with the SEC on February 24, 2012, as well as the Cobalt public filings incorporated by reference into them, are referred to collectively herein as the "February 23, 2012 Offering Materials."

[17]   The underwriters for Cobalt's December 12, 2012 Bond Offering were Defendants Goldman Sachs and Morgan Stanley. As Cobalt acknowledged in its offering documents for the December 12, 2012 Bond Offering, due to Goldman Sachs Group, Inc.'s ownership stake in Cobalt while Goldman Sachs acted as an underwriter in the transaction, Goldman Sachs had a "conflict of interest" with Cobalt.

[18]   The January 4, 2011 Registration Statement; Cobalt's Preliminary Prospectus Supplement Subject to Completion, and accompanying Prospectus, filed with the SEC on December 11, 2012; and Cobalt's Prospectus Supplement and accompanying Prospectus, filed with the SEC on December 13, 2012, as well

### C.    The January 16, 2013 Common Stock Offering

132.    As discussed above, on January 16, 2013, Cobalt selling shareholders offered to investors 46 million shares of Cobalt common stock.[19]  All shares offered for sale on January 16, 2013 were offered at a price of $25.15.  In this Offering, the following selling shareholders sold the following numbers of Cobalt common stock:[20]

| | |
|---|---|
| The Carlyle/Riverstone Funds | 13,049,550 |
| The First Reserve Funds | 10,000,000 |
| The Goldman Sachs Group, Inc.[21] | 13,050,450 |
| The KERN Fund | 3,900,000 |

133.    The January 16, 2013 Stock Offering was conducted pursuant to the January 4, 2011 Registration Statement, which contained the material misstatements identified in ¶126 above, and which incorporated by reference Cobalt's Form 10-K filed with the SEC on February 21, 2012. That Form 10-K contained the material misstatements identified above at ¶¶70-73, including the materially misstated Certifications signed by Defendants Bryant and Wilkirson.

134.    Cobalt also conducted the January 16, 2013 Offering pursuant to Cobalt's Preliminary Prospectus Supplement Subject to Completion, and accompanying Prospectus, filed with the SEC on January 16, 2013; and Cobalt's Prospectus Supplement, and accompanying Prospectus, filed with the SEC on January 17, 2013.  Those public filings became part of the January 4, 2011 Registration Statement pursuant to which the January 16, 2013 Offering was conducted, and they

---

as the Cobalt public filings incorporated by reference into them, are referred to collectively herein as the "December 12, 2012 Offering Materials."

[19]  This amount includes 6,000,000 shares of common stock that Cobalt granted the Underwriters as an over-allotment option.

[20]  The underwriters of the January 16, 2013 Offering were Defendants Morgan Stanley and CGMI.

[21]  At the time of the January 16, 2013 Offering, Goldman Sachs Group, Inc. was a significant shareholder of Cobalt (holding approximately 15.33% of Cobalt's shares before the transaction) and a selling shareholder in this Offering.

contained the material misstatements identified above at ¶¶86-87.[22]

**D.    The May 8, 2013 Common Stock Offering**

135.    As discussed above, on May 8, 2013, Cobalt selling shareholders offered to investors 50 million shares of Cobalt common stock.[23]  All shares offered for sale on May 8, 2013 were offered at a price of $26.62.  In this Offering, the following selling shareholders sold the following numbers of Cobalt common stock:[24]

| | |
|---|---|
| The Carlyle/Riverstone Funds | 15,083,328 |
| The First Reserve Funds | 15,832,304 |
| The Goldman Sachs Group, Inc.[25] | 15,084,368 |
| The KERN Fund | 4,000,000 |

136.    The May 8, 2013 Stock Offering was conducted pursuant to the January 4, 2011 Registration Statement, which contained the material misstatements identified in ¶126 above, and which incorporated by reference Cobalt's Form 10-Ks filed with the SEC on February 21, 2012 and February 26, 2013.  Those Form 10-Ks contained the material misstatements identified above at ¶¶70-73 and ¶¶88-91, including the materially misstated Certifications signed by Defendants Bryant and Wilkirson.

137.    Cobalt also conducted the May 8, 2013 Stock Offering pursuant to Cobalt's Free

---

[22]  The January 4, 2011 Registration Statement; Cobalt's Preliminary Prospectus Supplement Subject to Completion, and accompanying Prospectus, filed with the SEC on January 16, 2013; and Cobalt's Prospectus Supplement, and accompanying Prospectus, filed with the on January 17, 2013, as well as the Cobalt public filings incorporated by reference into them, are referred to collectively herein as the "January 16, 2013 Offering Materials."

[23]  As part of the May 8, 2013 Offering, Cobalt also granted the Underwriters an over-allotment option of 7.5 million shares of common stock.

[24]  The underwriter of the May 8, 2013 Offering was CGMI.

[25]  At the time of the May 8, 2013 Offering, Goldman Sachs Group, Inc. was a significant shareholder of Cobalt (holding approximately 12.14% of Cobalt's shares before the transaction) and a selling shareholder in the Offering.

Writing Prospectus filed with the SEC on May 7, 2013; Cobalt's Preliminary Prospectus Supplement Subject to Completion, and accompanying Prospectus, filed with the SEC on May 8, 2013; and Cobalt's Prospectus Supplement, and accompanying Prospectus, filed with the SEC on May 9, 2013. Those public filings became part of the January 4, 2011 Registration Statement pursuant to which the December 12, 2012 Offering was conducted, and they contained the material misstatements identified above at ¶¶95-97.[26]

### E.    The May 8, 2014 Bond Offering

138.    On May 8, 2014, Cobalt issued to investors $1.3 billion worth of convertible senior notes due 2024 pursuant to another "shelf" Registration Statement and Prospectus that the Company filed with the SEC on December 30, 2013.[27]    The December 30, 2013 Registration Statement was signed by Cobalt Directors Bryant, Wilkirson, Coneway, Golden, Hutchison, Marshall, Moore, Scoggins, van Steenbergen, Utt, and Young. It contained the following material misstatements about Cobalt and its business in Angola:

> Cobalt is an independent oil exploration and production company active in the deepwater U.S. Gulf of Mexico and offshore Angola and Gabon.

139.    The December 30, 2013 Registration Statement incorporated by reference Cobalt's Form 10-Ks filed with the SEC on February 26, 2013 and February 27, 2014. Those Form 10-Ks contained the material misstatements identified above at ¶¶88-91 and ¶¶101-104, including the materially misstated Certifications signed by Defendants Bryant and Wilkirson.

140.    The December 30, 2013 Registration Statement also incorporated by reference

---

[26] The January 4, 2011 Registration Statement; Cobalt's Free Writing Prospectus filed with the SEC on May 7, 2013; Cobalt's Preliminary Prospectus Supplement Subject to Completion, and accompanying Prospectus, filed with the SEC on May 8, 2013; and Cobalt's Prospectus Supplement, and accompanying Prospectus, filed with the SEC on May 9, 2013, as well as the Cobalt public filings incorporated by reference into them, are referred to collectively herein as the "May 8, 2013 Offering Materials."

[27] The underwriters for Cobalt's May 8, 2014 bond offering were Defendants Goldman Sachs, RBC, Credit Suisse, CGMI, and Lazard.

Cobalt's first quarter 2014 Form 10-Q, which the Company filed with the SEC on May 1, 2014. That Form 10-Q was signed by Defendants Bryant and Wilkirson and contained the material misstatements identified above at ¶105.

141.    Cobalt also conducted the May 8, 2014 Offering pursuant to Cobalt's Preliminary Prospectus Supplement Subject to Completion, and accompanying Prospectus, on May 7, 2014; and Cobalt's Prospectus Supplement, and accompanying Prospectus, filed with the SEC on May 9, 2014. Those public filings became part of the December 30, 2013 Registration Statement pursuant to which the May 8, 2014 Offering was conducted, and they contained the material misstatements identified above at ¶¶106-107.[28]

142.    The February 23, 2012 Offering Materials, the December 12, 2012 Offering Materials, the January 16, 2013 Offering Materials, the May 8, 2013 Offering Materials and the May 8, 2014 Offering Materials are collectively referred to herein as the "Offering Materials."

*  *  *

143.    The foregoing statements in the Offering Materials were materially misstated because they misstated or failed to disclose that:  (i.) Cobalt misstated as mere "allegations" the assertion that three senior Angolan officials had a "connection" with Nazaki when in fact those officials had a pecuniary interest in Nazaki; (ii.) Angola has acknowledged that, rather than being a "full paying member of the contractor group," Nazaki did not have "proven competence and financial capacity" to participate as a true partner with Cobalt in Blocks 9 and 21; (iii.) Cobalt was not "independent"; (iv.) Cobalt's "oil-focused" "exploration efforts" had not been "successful";

---

[28] The December 30, 2013 Registration Statement; Cobalt's Preliminary Prospectus Supplement Subject to Completion, and accompanying Prospectus, on May 7, 2014; and Cobalt's Prospectus Supplement, and accompanying Prospectus, filed with the SEC on May 9, 2014, as well as the Cobalt public filings incorporated by reference into them, are referred to collectively herein as the "May 8, 2014 Offering Materials."

(v.) the Company lacked a reasonable basis to believe that its activities complied with "all laws, including the FCPA"; (vi.) Cobalt's "prospect inventory" in Angola was not "oil-focused," "high impact," "world-class," "large," or "extensive," and Cobalt's oil prospects in Angola did not comprise 86 "well-defined" prospects in West Africa; (vii.) for statements made after March 25, 2014, Angola had already terminated Alper's partnership interest in Blocks 9 and 21; and (viii.) Cobalt failed to timely disclose the true amount of oil (versus gas) in its wells.

144.    As discussed above, for purposes of Plaintiffs' claims under the Securities Act, the foregoing allegations do not sound in fraud, and Plaintiffs disclaim any allegations of fraud, fraudulent conduct, or motive concerning such misstatements for the purposes of Plaintiffs' claims under the Securities Act.

## LOSS CAUSATION/ECONOMIC LOSS

145.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiffs and the Class.  The price and value of Cobalt's common stock and convertible notes significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.  Specifically, Defendants' false and misleading statements misrepresented the Company's true value and future business prospects, and investors suffered losses as the price and value of Cobalt stock and notes declined when those statements were corrected and risks concealed by the Company materialized, including on the dates that news reports concerning the value of Cobalt's wells in Angola, regulatory action regarding the Company's practices, and Cobalt's payments to Angola, were disclosed to the market as set forth above.  Accordingly, as a result of their purchases of Cobalt's common stock and notes during the Class Period, Plaintiffs and other members of the Class suffered economic loss, i.e., damages under

the federal securities laws.

146.    On December 1, 2013, after the close of trading, Cobalt admitted to investors that its Lontra oil field actually "contains more gas than our pre-drill estimates."  When this financially devastating news was released, Cobalt's stock price fell dramatically in response to it, by nearly 17%, and Cobalt's common stock and bonds lost significant value as a result.  This disclosure was not a full correction of Defendants' misstatements, because the Company continued to make materially false and misleading statements to the contrary and assure investors that Cobalt had not engaged in wrongdoing.  In addition, additional material facts remained undisclosed to investors at this time.

147.    On August 5, 2014, Cobalt shocked investors when it disclosed that, despite the Company's repeated claims during the Class Period that the Company was in full compliance with anti-bribery laws, the SEC's Enforcement Division had "recommend[ed] that the SEC institute an enforcement action against the Company, *alleging violations of certain federal securities laws*."  The Company revealed that as part of the SEC's potential enforcement action, the agency may seek remedies that include monetary penalties.  Cobalt further disclosed that the Wells Notice it received from the SEC "related to the investigation [the SEC] has been conducting relating to Cobalt's operations in Angola, and the allegations of Angolan government official ownership of Nazaki Oil and Gas."

148.    Also on the morning of August 5, 2014, *Bloomberg* reported that Cobalt had in fact been making apparent bribes to the Angolan government in the form of substantial funding for an Angolan research center that Cobalt could not confirm existed.

149.    In response to these disclosures about the SEC's investigation and Cobalt's illicit payments to Angola, on August 5, 2014, the price of Cobalt stock fell by nearly 11%, and Cobalt's

common stock and bonds lost significant value as a result.  These disclosures were not full corrections of Defendants' misstatements, because the Company continued to make materially false and misleading statements to the contrary and assure investors that Cobalt had not engaged in wrongdoing.  In addition, additional material facts remained undisclosed to investors at this time.

150.    On November 4, 2014, the last day of the Class Period, Cobalt disclosed sharply negative financial results that further reflected the serious financial impact that the poor quality of Cobalt's Angolan wells was having on the Company.  That day, Cobalt disclosed a net loss of $143 million and the lack of oil or gas in its Loengo #1 exploration well – a site that Cobalt had described in the Offering Materials as "world class," "large," "oil-focused" and "high impact." Cobalt's loss on a per share basis was $0.35 per share, more than double Wall Street banks' consensus estimate of $0.17.  In response to these disclosures, the price of Cobalt's stock fell 11.5%, and Cobalt's common stock and bonds lost significant value as a result.

## CLASS ACTION ALLEGATIONS

151.    This securities class action is brought on behalf of purchasers of Cobalt's securities between February 21, 2012 and November 4, 2014, inclusive (the "Class Period"), including persons who purchased or otherwise acquired:  (i.) Cobalt securities on the open market; (ii.) Cobalt's common stock pursuant and/or traceable to registered public offerings conducted on or about February 23, 2012, January 16, 2013 and May 8, 2013 (the "Stock Offerings"); and/or (iii.) Cobalt's 2.65% Convertible Senior Notes due 2019, pursuant and/or traceable to the registered public offering conducted on or about December 12, 2012, and/or Cobalt Convertible Senior Notes due 2024, pursuant and/or traceable to the registered public offering conducted on or about May 8, 2014 (the "Bond Offerings"; collectively with the Stock Offerings, the "Offerings") (the

"Class"). Excluded from the Class are Defendants and their families, directors, and officers of Cobalt and their families and affiliates.

152. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Cobalt has more than 412 million shares of common stock outstanding, owned by hundreds or thousands of investors.

153. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

     a.     Whether Defendants violated the Securities Act;

     b.     Whether Defendants violated the Exchange Act;

     c.     Whether Defendants misrepresented material facts;

     d.     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

     e.     Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

     f.     Whether the prices of Cobalt's securities was artificially inflated;

     g.     Whether Defendants' conduct caused the members of the Class to sustain damages; and

     h.     The extent of damage sustained by Class members and the appropriate measure of damages.

154. Plaintiffs' claims are typical of those of the Class because Plaintiffs and the Class sustained damages from Defendants' wrongful conduct.

155. Plaintiffs will adequately protect the interests of the Class and have retained counsel experienced in class action securities litigation. Plaintiffs have no interests which conflict with those of the Class.

156.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

157.    Cobalt's purported "safe harbor" warnings accompanying any of its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

158.    Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of Cobalt who knew that the statement was false.  None of the historic or present tense statements made by Defendants was an assumption underlying or relating to any plan, projection, or statement of future economic performance, as such statements were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor was any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## COUNT I

### For Violation Of Section 10(b) Of The Exchange Act And Rule 10b-5
### Against Cobalt And The Executive Defendants

159.    Plaintiffs repeat and re-allege each and every allegation contained above (other than disclaimers of fraud claims) as if fully set forth herein.

160.    During the Class Period, Cobalt and the Executive Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (ii) cause Plaintiffs and other members of the Class to purchase Cobalt securities at artificially

inflated prices.

161.    Cobalt and the Executive Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Cobalt's securities in violation of Section 10(b) of the Exchange Act, 15 U.S.C. §§ 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

162.    Cobalt and the Executive Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operation and prospects.

163.    During the Class Period, Cobalt and the Executive Defendants made the false statements specified above, which they knew or recklessly disregarded to be false or misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

164.    Cobalt and the Executive Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them.  Cobalt and the Executive Defendants engaged in this misconduct to conceal Cobalt's true condition from the investing public and to support the artificially inflated prices of the Company's securities.

165.    Plaintiffs and the Class have suffered damages in that, in reliance on the integrity

of the market, they paid artificially inflated prices for Cobalt's securities. Plaintiffs and the Class would not have purchased the Company's securities at the prices they paid, or at all, had they been aware that the market prices for Cobalt's securities had been artificially inflated by Cobalt and the Executive Defendants' fraudulent course of conduct.

166.    As a direct and proximate result of Cobalt and the Executive Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered economic loss and damages in connection with their respective purchases of the Company's securities during the Class Period as the prior artificial inflation in the price of Cobalt's securities was removed over time.

167.    By virtue of the foregoing, Cobalt and the Executive Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT II

### For Violation Of Section 20(a) Of The Exchange Act
### Against The Executive Defendants

168.    Plaintiffs repeat, incorporate, and re-allege each and every allegation set forth above (other than disclaimers of fraud claims) as if fully set forth herein.

169.    As alleged above, Cobalt and the Executive Defendants each violated Section 10(b) and Rule 10b-5 thereunder by their acts and omissions as alleged in this Complaint.

170.    The Executive Defendants acted as controlling persons of Cobalt within the meaning of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Cobalt, the Executive Defendants had the power and ability to control the actions of Cobalt and its employees. By reason of such conduct, the Executive Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## COUNT III

**For Violations Of Section 11 Of The Securities Act**
**(Against Cobalt, The Director Defendants And The Underwriter Defendants)**

171.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein only to the extent, however, that such allegations do not allege fraud, scienter or the intent of the Defendants to defraud Plaintiffs or members of the Class.  For the purposes of this Section 11 claim, Plaintiffs do not allege that any Defendant acted with scienter or fraudulent intent, which are not elements of a claim under Section 11 of the Securities Act.  This count is predicated upon Defendants' liability for making false and materially misleading statements in the Offering Materials.

172.    This Claim does not sound in fraud.  Any allegations of fraud or fraudulent conduct and/or motive are specifically excluded from this Count. For purposes of asserting this Claim under the Securities Act, Plaintiffs do not allege that the Defendants acted with scienter or fraudulent intent, which are not elements of a Section 11 claim.

173.    This claim is brought against Cobalt, the Director and Underwriter Defendants pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of all proposed Class members who purchased or otherwise acquired Cobalt's common stock or convertible notes in or traceable to the Offerings, and were damaged thereby.

174.    At the time of each Offering, the Registration Statement, including the Prospectus (and all Supplements thereto) for each Offering, contained untrue statements of material fact, omitted to state facts necessary to make the statements made therein not misleading, and failed to disclose required material information, as set forth above.

175.    Cobalt is the issuer of the common stock and convertible notes sold pursuant to the January 4, 2011 Registration Statement and is the issuer of the convertible notes sold pursuant to

the December 30, 2013 Registration Statement.  The January 4, 2011 Registration Statement (and

Prospectuses and all Supplements thereto) and the December 30, 2013 Registration Statement (and

Prospectuses and all Supplements thereto) are referred to collectively herein as the "Registration

Statements."  As the issuer of such stock and bonds, Cobalt is strictly liable to the members of the

Class who purchased common stock and/or bonds in or traceable to the Offerings for the materially

untrue statements and omissions that appeared in or were omitted from the Registration Statements

and Offering Materials.

176.    The following Director Defendants were the signatories of the untrue and

misleading January 4, 2011 Registration Statement as directors of Cobalt and are liable for the

Offerings made pursuant to such Registration Statement:  Bryant, Wilkirson, Coneway, Cornell,

Golden, Lancaster, Marshall, Moore, Murchison, Pontarelli, Scoggins, van Steenbergen, and

Young.

177.    The following Director Defendants were the signatories of the untrue and

misleading December 30, 2013 Registration Statement as directors of Cobalt and are liable for the

Offerings made pursuant to such Registration Statement:  Bryant, Wilkirson, Coneway, Golden,

Hutchison, Marshall, Moore, Scoggins, van Steenbergen, Utt, and Young.

178.    Director Defendants Lebovitz and France were members of the Cobalt Board of

Directors at the time of the filing of the Prospectus Supplements with respect to which liability is

asserted in this action for the Offerings (other than the May 8, 2014 Bond Offering, as both

Lebovitz and France resigned from the Cobalt Board of Directors on May 28, 2013).

179.    Each of the Director Defendants is unable to establish an affirmative defense based

on a reasonable and diligent investigation of the statements contained in the Registration

Statements.  These Defendants did not make a reasonable investigation or possess reasonable

grounds to believe that the statements contained in the Registration Statements were true and not misleading, and that there were no omissions of any material fact. Accordingly, these Defendants acted negligently, and are liable to the members of the Class who purchased or otherwise acquired the Cobalt common stock and convertible notes in or traceable to the Offerings.

180.    The underwriters of the February 23, 2012 Cobalt Stock Offering were Defendants Goldman Sachs, Morgan Stanley, Credit Suisse, CGMI, J.P. Morgan, Tudor, Deutsche Bank, RBC, UBS, Howard Weil, Stifel Nicolaus, and Capital One.

181.    The underwriters of the December 12, 2012 Cobalt Bond Offering were Defendants Goldman Sachs and Morgan Stanley.

182.    The underwriters of the January 16, 2013 Cobalt Stock Offering were Defendants Morgan Stanley and CGMI.

183.    The underwriter of the May 8, 2013 Cobalt Stock Offering was Defendant CGMI.

184.    The underwriters of the May 8, 2014 Cobalt Bond Offering were Defendants Goldman Sachs, RBC, Credit Suisse, CGMI, and Lazard.

185.    Each of the Underwriter Defendants is unable to establish an affirmative defense based on a reasonable and diligent investigation of the statements contained in the Registration Statements. The Underwriter Defendants did not make a reasonable investigation or possess reasonable grounds to believe that the statements contained in the Offering Materials were true and not misleading, and that there were no omissions of any material fact. Accordingly, the Underwriter Defendants acted negligently, and are liable to the members of the Class who purchased or otherwise acquired the common stock and convertible notes in or traceable to the Offerings.

186.    Plaintiffs and members of the Class purchased Cobalt common stock and/or

61

convertible notes issued under or traceable to the Registration Statements.

187.    Plaintiffs and members of the Class did not know, or in the exercise of reasonable diligence could not have known, of the inaccurate statements and omissions contained in the Registration Statements when they purchased or otherwise acquired the common stock and/or convertible notes of Cobalt.

188.    Plaintiffs and members of the Class who purchased the common stock and/or convertible notes pursuant to the Registration Statements suffered substantial damages as a result of the untrue statements and omissions of material facts in the Registration Statements, as they either sold these shares at prices below the Offering prices or still hold shares as of the date of this Complaint, when the prices and trading value of the common stock and convertible notes are below the Offering prices and values.

189.    This claim is brought within the applicable statute of limitations.

190.    By reason of the foregoing, the Defendants named in this Count have violated Section 11 of the Securities Act.

## COUNT IV

**For Violations Of Section 12(a)(2) Of The Securities Act**
**(Against Defendants Cobalt, Bryant, Golden, Goldman Sachs Group, Inc., Pontarelli,**
**Lebovitz, Riverstone, Carlyle, Coneway, Lancaster, First Reserve, Moore, Murchison,**
**France, KERN, Van Steenbergen, The Selling Fund Defendants,**
**And The Underwriter Defendants)**

191.    This claim does not sound in fraud.  For the purposes of this Section 12(a)(2) claim, Plaintiffs does not allege that any Defendant acted with scienter or fraudulent intent, which are not elements of a claim under Section 12(a)(2) of the Securities Act.  This claim is based solely on negligence.

192.    Plaintiffs repeat and re-allege the allegations above as if fully set forth herein.

193.    This claim is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), on behalf of all members of the Class who purchased Cobalt common stock and/or convertible notes in the Offerings, against Defendants Cobalt, Bryant, Golden, Goldman Sachs Group, Inc., Pontarelli, Riverstone, Carlyle, Coneway, Lancaster, First Reserve, Moore, Murchison, KERN, Van Steenbergen, the Selling Fund Defendants, and the Underwriter Defendants.

194.    Each Defendant named in this Count was a seller, offeror, and/or solicitor of sales of the common stock and/or convertible notes offered pursuant to the Registration Statements and their corresponding Prospectuses in or traceable to the Offerings.

195.    Cobalt was the issuer of the shares of common stock and convertible notes in the Offerings, for which it received billions of dollars in proceeds.  Cobalt solicited the purchase of shares by virtue of issuing the Registration Statements and related Prospectuses, and was motivated at least in part to serve its own financial interests.

196.    Defendant Bryant sold at least 750,000 shares of Cobalt common stock in the February 23, 2012 Offering.  Bryant also solicited the purchase of shares by virtue of signing the Registration Statements containing the Prospectuses.  In making these solicitations, Bryant was motivated in part to serve his own financial interests.

197.    Defendant Golden sold at least 45,000 shares of Cobalt common stock in the February 23, 2012 Offering.  Golden also solicited the purchase of shares by virtue of signing the Registration Statements containing the Prospectus.  In making these solicitations, Golden was motivated in part to serve his own financial interests.

198.    Defendant Goldman Sachs Group, Inc. and the Goldman Sachs Funds sold at least 10,347,593 shares of Cobalt common stock in the February 23, 2012 Offering, sold at least

13,050,450 shares of Cobalt common stock in the January 16, 2013 Offering, and sold at least 15,084,368 shares of Cobalt common stock in the May 8, 2013 Offering.  Goldman Sachs Group, Inc., Lebovitz and Pontarelli solicited the purchase of such shares sold by virtue of exercising control over Cobalt, by the fact that Defendant Pontarelli signed the Registration Statement, by the fact that Pontarelli and Lebovitz were Directors of Cobalt at the time of the Stock Offerings, and by using Goldman Sachs Group, Inc.'s wholly-owned subsidiary, Goldman Sachs, as an underwriter in the February 23, 2012 Offering.  Defendant Goldman Sachs Group, Inc., Lebovitz and Pontarelli were motivated in part to serve their own financial interests and/or those of the securities owners.

199.    Defendants Riverstone, Carlyle and the Carlyle/Riverstone Funds sold at least 10,346,879 shares of Cobalt common stock in the February 23, 2012 Offering, sold at least 13,049,550 shares of Cobalt common stock in the January 16, 2013 Offering, and sold at least 15,083,328 shares of Cobalt common stock in the May 8, 2013 Offering.  Defendants Riverstone, Carlyle, Coneway and Lancaster solicited the purchase of such shares by virtue of exercising control over Cobalt, and by the fact that Defendants Coneway and Lancaster signed the Registration Statement and were Directors of Cobalt.  Defendants Riverstone, Carlyle, Coneway and Lancaster were motivated in part to serve their own financial interests or those of the securities owners.

200.    Defendant First Reserve and the First Reserve Funds sold at least 10,252,967 shares of Cobalt common stock in the February 23, 2012 Offering, sold at least 10,000,000 shares of Cobalt common stock in the January 16, 2013 Offering, and sold at least 15,832,304 shares of Cobalt common stock in the May 8, 2013 Offering.  Defendants First Reserve, Moore, Murchison and France also solicited the purchase of such shares sold by virtue of exercising control over

Cobalt, and by the fact that Defendants Moore and Murchison signed the January 4, 2011 Registration Statement and Defendants Moore, Murchison and France were Directors of Cobalt. Defendants First Reserve, Moore, Murchison and France were motivated in part to serve their own financial interests or those of the securities owners.

201.    Defendant KERN and the KERN Fund sold at least 4,427,599 shares of Cobalt common stock in the February 23, 2012 Offering, sold at least 3,900,000 shares of Cobalt common stock in the January 16, 2013 Offering, and sold at least 4,000,000 shares of Cobalt common stock in the May 8, 2013 Offering.  Defendants KERN and van Steenbergen also solicited the purchase of such shares sold by virtue of exercising control over Cobalt, and by the fact that Defendant van Steenbergen signed the Registration Statement and was a Director of Cobalt.  Defendants KERN and van Steenbergen were motivated in part to serve their own financial interests or those of the securities owners.

202.    The Underwriter Defendants transferred title to Cobalt stock and convertible notes to members of the Class who purchased such securities in the Offerings, and transferred title of such Cobalt securities to other underwriters and/or broker-dealers that sold those securities as agents for the Underwriter Defendants.  The Underwriter Defendants also solicited the purchase of Cobalt stock and convertible notes in the Offerings by the members of the Class who purchased in the Offerings by means of the Registration Statements and corresponding Prospectuses, motivated at least in part by the desire to serve the Underwriter Defendants' own financial interest and the interests of Cobalt, including but not limited to earning commissions on the sale of Cobalt stock and convertible notes in the Offerings.

203.    The Registration Statements and corresponding Prospectuses contained untrue statements of material fact or omitted to state material facts necessary in order to make the

statements, in light of the circumstances under which they were made, not misleading, as set forth more fully above.

204.    Plaintiffs and the members of the Class who purchased Cobalt stock and/or convertible notes in the Offerings made such purchases pursuant to the materially untrue and misleading Registration Statements and their corresponding Prospectuses, and did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions contained therein.

205.    Plaintiffs and the members of the Class who purchased the Cobalt stock and/or convertible notes in the Offerings pursuant to the Registration Statements and related Prospectuses suffered substantial damages as a result of the untrue statements and omissions of material facts in the Registration Statements and Prospectuses, as they either sold these shares at prices below the Offering prices or still held such securities as of the date of this Complaint, when the prices and trading value of the common stock and convertible notes are below the Offering prices.

206.    Plaintiffs and the members of the Class who purchased the Cobalt common stock and/or convertible notes pursuant to the Registration Statements and corresponding Prospectuses and still hold those securities have sustained substantial damages as a result of the untrue statements of material facts and omissions contained therein, for which they hereby elect to rescind and tender their common stock to the Defendants sued in this Count in return for the consideration paid with interest.   Those members of the Class who have already sold their stock and/or convertible notes acquired in the Offerings pursuant to the materially untrue and misleading Registration Statements and Prospectuses are entitled to damages from Defendants.

207.    This claim is brought within the applicable statute of limitations.

208.    By virtue of the foregoing, the Defendants named in this count violated Section

12(a)(2) of the Securities Act.

## COUNT V

**For Violations Of Section 15 Of The Securities Act**
**(Against The Control Person Defendants)**

209.    This claim does not sound in fraud.  For the purposes of this Section 15 claim, Plaintiffs do not allege that any Defendant acted with scienter or fraudulent intent, which are not elements of a claim under Section 15 of the Securities Act.  This claim is based solely on negligence.

210.    This Count is asserted against the Control Person Defendants for violations of Section 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of all members of the Class who purchased or otherwise acquired Cobalt common stock and/or convertible notes issued pursuant to the Registration Statements.

211.    At all relevant times, these Defendants were controlling persons of the Company within the meaning of Section 15 of the Securities Act.  Defendant Bryant, at the time of the filing of the Registration Statements and the Offerings, served as Chairman of the Board of Directors and CEO.  Defendant Farnsworth, at the time of the filing of the Registration Statements and the Offerings, served as Cobalt's Chief Exploration Officer.  Defendant Wilkirson, at the time of the filing of the Registration Statements and the Offerings, served as Cobalt's CFO.  The Cobalt Board of Directors approved the Offerings and reviewed and approved the Registration Statements and Prospectuses at the time that each Director Defendant was a member of the Board.  Goldman Sachs Group, Inc., Riverstone, Carlyle, First Reserve, KERN and the Selling Fund Defendants exercised control over Cobalt through their financing of the Company, significant share ownership of the Company during the Class Period and having their own senior executives, and executives over which they exercise control, on the Cobalt Board during the Class Period.

212.    Defendants Goldman Sachs Group, Inc., Goldman Sachs, Riverstone, Carlyle, First Reserve, KERN and the Selling Fund Defendants were also controlling persons of their agents on the Cobalt Board of Directors because they were the employers of these individuals and controlled the manner in which these individuals voted as Cobalt Directors.  Specifically:

a.    Defendant Pontarelli was a Managing Director and agent of Goldman Sachs and a member of the Cobalt Board at the same time he signed the January 4, 2011 Registration Statement, and at the time of the Company's February 23, 2012, December 12, 2012, January 16, 2013, and May 8, 2013 securities offerings.

b.    Defendant Lebovitz was a Managing Director and agent of Goldman Sachs and a member of the Cobalt Board at the time of the Company's February 23, 2012, December 12, 2012, January 16, 2013, and May 8, 2013 securities offerings.

c.    Defendant Coneway was a Managing Director and agent of Riverstone and a member of the Cobalt Board at the same time he signed the January 4, 2011 and December 30, 2013 Registration Statements, and at the time of the Company's February 23, 2012, December 12, 2012, January 16, 2013, and May 8, 2013 securities offerings.

d.    Defendant Lancaster was a Managing Director and agent of Riverstone and a member of the Cobalt Board at the same time he signed the January 4, 2011 Registration Statement, and at the time of the Company's February 23, 2012, December 12, 2012, January 16, 2013, and May 8, 2013 securities offerings.

e.    Defendant Moore was a Managing Director and agent of First Reserve and a member of the Cobalt Board at the same time he signed the January 4, 2011 and December 30, 2013 Registration Statements, and at the time of the Company's February 23, 2012, December 12, 2012, January 16, 2013, May 8, 2013, and May 8, 2014 securities offerings.

f.    Defendant Murchison was a consultant, former Managing Partner, and agent of First Reserve and a member of the Cobalt Board at the same time he signed the January 4, 2011 Registration Statement.

g.    Defendant France was a Managing Director and agent of First Reserve and a member of the Cobalt Board at the time of the Company's February 23, 2012, December 12, 2012, January 16, 2013, May 8, 2013 securities offerings.

h.    Defendant van Steenbergen was the Co-Founder and Managing Partner of Defendant KERN and a member of the Cobalt Board at the same time he signed the January 4, 2011 and December 30, 2013 Registration Statements, and at the time of the Company's February 23, 2012, December 12, 2012, January 16, 2013, May 8, 2013, and May 8, 2014 securities offerings.

213.    By reason of their control over Cobalt Board members Pontarelli, Lebovitz, Coneway, Lancaster, Moore, Murchison, France and van Steenbergen, Defendants Goldman Sachs Group, Inc., Goldman Sachs, Riverstone, Carlyle, First Reserve, KERN and the Selling Fund Defendants were able to:  (i.) gain access to all Cobalt reports, agendas and other information available to Pontarelli, Lebovitz, Coneway, Lancaster, Moore, Murchison, France and van Steenbergen as members of the Cobalt Board of Directors;  (ii.) participate in the preparation and dissemination of the materially misstated Offering Materials through Pontarelli, Lebovitz, Coneway, Lancaster, Moore, Murchison, France and van Steenbergen; and (iii.) otherwise exercise control over Cobalt's public filings and Offerings.

214.    The Director Defendants and Goldman Sachs Group, Inc., prior to and at the time of the IPO, participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of Cobalt's business affairs, including the Offerings.

215.    As officers and/or directors of a company engaging in offerings of its securities, the Director Defendants had a duty to disseminate accurate and truthful information with respect to Cobalt's business, financial condition and results of operations.  These Defendants participated in the preparation and dissemination of the Registration Statements and Prospectuses, and otherwise participated in the process necessary to conduct the Offerings.  Because of their positions of control and authority as senior officers and/or directors of Cobalt, these Defendants were able to, and did, control the contents of the Registration Statements and Prospectuses, which contained materially untrue information and failed to disclose material facts.

216.    By reason of the aforementioned conduct, the Control Person Defendants are liable under Section 15 of the Securities Act jointly and severally with and to the same extent as Cobalt and Director Defendants Pontarelli, Lebovitz, Coneway, Lancaster, Moore, Murchison, France and van Steenbergen are liable under Sections 11 and 12(a)(2) of the Securities Act, to Plaintiffs and members of the Class who purchased or otherwise acquired common stock and/or convertible notes issued pursuant to the Registration Statements.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of Plaintiffs and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D.    Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

DATED:  November 30, 2014

/s/Gerald T. Drought
Gerald T. Drought
**MARTIN & DROUGHT, P.C.**
300 Convent St.
Bank of America Plaza, 25th Floor
San Antonio, TX  78205-3789
Tel: (210) 227-7591
Fax: (210) 227-7924

*Liaison Counsel and Additional Counsel to
Plaintiff Fire and Police Retiree Health Care
Fund, San Antonio*

**BERNSTEIN LITOWITZ BERGER &**
    **GROSSMANN LLP**
Gerald H. Silk
Avi Josefson
Adam Wierzbowski
1285 Avenue of the Americas
New York, NY 10019
Tel: (212) 554-1400
Fax: (212) 554-1444

*Counsel for Plaintiffs Fire and Police Retiree*
*Health Care Fund, San Antonio and St. Lucie*
*County Fire District Firefighters' Pension*
*Trust Fund*

Robert D. Klausner
Bonni Jensen
**KLAUSNER KAUFMAN JENSEN &**
    **LEVINSON**
10059 Northwest 1st Court
Plantation, FL 33324
Tel: (954) 916-1202
Fax: (954) 916-1232

*Additional Counsel to St. Lucie County Fire*
*District Firefighters' Pension Trust Fund*