1                    IN THE UNITED STATES DISTRICT COURT

2                   FOR THE SOUTHERN DISTRICT OF TEXAS

3                            HOUSTON DIVISION

4   ST. LUCIE COUNTY FIRE         §      CASE NO. 4:14-CV-03428
    DISTRICT FIREFIGHTER'S         §      HOUSTON, TEXAS
5   PENSION TRUST FUND, ET AL      §
                                   §
6   VERSUS                         §      MONDAY,
                                   §      MARCH 2, 2015
7   JOSEPH H. BRYANT, ET AL        §      1:39 P.M. TO 2:15 P.M.

8

9                          INITIAL CONFERENCE

10             BEFORE THE HONORABLE NANCY F. ATLAS
                   UNITED STATES DISTRICT JUDGE

11

12
                               APPEARANCES:
13
         FOR PLAINTIFF/DEFENDANT:     SEE NEXT PAGE
14
         COURT RECORDER:              ROSARIO SALDANA
15
         COURT CLERK:                 SHEILA ASHABRANNER
16

17

18

19

20                    TRANSCRIPTION SERVICE BY:

21             JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                     935 ELDRIDGE ROAD, #144
22                   SUGAR LAND, TEXAS 77478
               Tel: 281-277-5325 / Fax: 281-277-0946
23                  www.judicialtranscribers.com

24

25      Proceedings recorded by electronic sound recording;
          transcript produced by transcription service.

```
 1                          APPEARANCES:

 2

 3   FOR THE PLAINTIFF:             ANDREW J. ENTWISTLE, ESQ.
                                    ENTWISTLE & CAPPUCCI
 4                                  280 Park Ave.
                                    26th Fl. West
 5                                  New York, NY  10017

 6                                  DAVID R. STICKNEY, ESQ.
                                    BERNSTEIN LITOWITZ
 7                                  12481 High Bluff Dr.
                                    Suite 300
 8                                  San Diego, CA  92130

 9   LIAISON COUNSEL FOR            DONA SZAK, ESQ.
     PLAINTIFF:                     AJAMIE LLP
10                                  711 Louisiana St.
                                    Suite 2150
11                                  Houston, TX  77002

12   FOR PLAINTIFF AP-7:            NAUMON A. AMJED, ESQ.
                                    KESSLER TOPAZ MELTZER AND
13                                   CHECK LLP
                                    280 King of Prussia Road
14                                  Radnor, PA  19087

15                                  RICHARD EUGENE NORMAN, ESQ.
                                    CROWLEY NORMAN LLP
16                                  Three Riverway
                                    Suite 1775
17                                  Houston, TX  77056

18   FOR COBALT DEFENDANTS:         DAVID D. STERLING, ESQ.
                                    BAKER BOTTS LLP
19                                  910 Louisiana
                                    Suite 3601
20                                  Houston, TX  77002

21                                  GEORGE T. CONWAY, ESQ.
                                    WATCHTELL, LIPTON, ROSEN &
22                                   KATZ
                                    51 West 52nd Street
23                                  New York, NY  10019

24

25
```

```
 1   FOR PRIVATE EQUITY            RONALD L. ORAN, JR., ESQ.
     DEFENDANTS AND FUNDS:         STRASBURGER & PRICE LLP
 2                                 909 Fannin Street
                                   Suite 2300
 3                                 Houston, TX  77010

 4   FOR UNDERWRITER               CHARLES W. SCHWARTZ, ESQ.
     DEFENDANTS:                   SKADDEN ARPS
 5                                 1000 Louisiana
                                   Suite 6800
 6                                 Houston, TX  77002

 7   FOR CARLYLE DEFENDANTS:       GEORGE BORDEN, ESQ.
                                   WILLIAMS & CONNOLLY LLP
 8                                 725 Twelfth St., N.W.
                                   Washington, D.C.  20005
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          HOUSTON, TEXAS; MONDAY, MARCH 2, 2015; 1:39 P.M.

2               THE COURT:  Good afternoon.

3               MR. ENTWISTLE:  Good afternoon, Your Honor.

4               THE COURT:  This is the case of St. Lucie County

5    Fire Department -- Fire District Firefighters' Pension Trust

6    Fund, et cetera, versus Bryant and others.

7               Would Counsel state their appearances?  Do it

8    slowly since nobody's got your cards here.

9               For Plaintiffs.

10               MR. ENTWISTLE:  Andrew Entwistle, Entwistle and

11   Cappucci LLP for the -- for proposed Lead Plaintiffs GAMCO

12   and the GAMCO Funds.

13               MR. STICKNEY:  Good afternoon, Your Honor, David

14   Stickney, from the firm Bernstein Litowitz Berger and

15   Roseman, proposed co-Lead Counsel for the class and also

16   Counsel for the Plaintiffs, the St. Lucie County Fire

17   District Firefighters' Pension Trust Fund and Fire and

18   Police Retiree Healthcare of San Antonio.

19               THE COURT:  Okay.

20               MS. SZAK:  Your Honor, Donna Szak, S-Z-A-K, with

21   Ajamie LLP, proposed Liaison Counsel for the class.

22               MR. AMJED:  Good afternoon, Your Honor, Naumon

23   Amjed from the law firm of Kessler Topaz Meltzer and Check

24   on behalf of Lead Plaintiff, Movant AP-7.

25               THE COURT:  Can you spell your last name for us?

1              MR. AMJED:  A-M-J-E-D.

2              THE COURT:  D?

3              MR. AMJED:  Yes, Your Honor.

4              THE COURT:  Okay.

5              MR. NORMAN:  Your Honor, Rich Norman from Crowley

6    Norman also on behalf of AP-7.

7              THE COURT:  Okay.  We had -- I guess that's four

8    groups of Plaintiffs, okay.  No, it's not.  We have a third

9    motion -- a fourth motion.

10             MR. ENTWISTLE:  Yes, Your Honor, there was an

11   additional motion.  All of the motions have either been

12   withdrawn by the stipulation that was filed with the Court,

13   or by separate withdrawal at this point.

14             THE COURT:  Okay.

15             MR. ENTWISTLE:  So they're not here in court.

16             THE COURT:  Okay.  Defense, and I'm right, I know

17   there are four groups, I hope you're going to identify the

18   groups.

19             MR. STERLING:  Yes, David Sterling, Russell Lewis

20   and Laura Smith of Baker Botts for the Cobalt Defendants.

21             THE COURT:  Next.

22             MR. BORDEN:  George Borden at Williams and

23   Connolly for the Carlyle Defendants.

24             THE COURT:  I couldn't hear your last name.

25             MR. BORDEN:  Borden, B-O-R-D-E-N, Your Honor.

1          THE COURT:  Thank you.

2          MR. ORAN:  Ronald Oran, Strasburger & Price, we're

3   for the private equity Defendants and funds other than the

4   Carlyle Group and their fund.

5          MR. CONWAY:  And my name is George Conway from

6   Wachtell Lipton Rosen & Katz in New York, and I represent

7   the same group of Defendants.

8          THE COURT:  Oh, okay.

9          MR. SCHWARTZ:  Your Honor, I'm Charles Schwartz,

10  Skadden Arps Slate Meagher & Flom, I represent the

11  underwriter Defendants.

12         THE COURT:  All right.  Anybody else?

13     (No audible response.)

14         THE COURT:  No?  I need to cover a couple of

15  housekeeping matters before we get started.  I am aware of

16  the motions that have been filed and we're going to cover

17  those in a few minutes, but I think I need to make at least

18  one disclosure that I've thought about and believe would not

19  be grounds for recusal or disqualification, but I want to

20  make this disclosure in case somebody wants to pursue it

21  either here or within the next three days.

22         It appears that buried in the list of Defendants

23  is somebody named Katherine Bailey Hutchinson.  I am

24  guessing, but don't know for sure, that that is Kay Bailey

25  Hutchinson, the former Senator for the State of Texas.  I'm

1  primarily looking at the Plaintiff's Counsel here, because

2  Defense Counsel probably has this figured out.

3       My appointment back in 1985 was obviously from the

4  State of Texas under President Bill Clinton, second half of

5  his first term, February, right after the elections.  And

6  there were two Senators from the State of Texas, both by

7  then were Republican.  I had Democratic credentials.

8       It turned out that Phil Gramm and Kay Bailey

9  Hutchinson, Kay being a new Senator by then, she just joined

10 Phil Gramm's Committee, that is, she endorsed his

11 Committee's consideration of different applicants for

12 judgeships.

13       It turned out that Senator Hutchinson has known my

14 family -- that is my husband's family, not me -- and not my

15 personal family, but my husband's family for many years.

16 Back then she was new to the Senate seat, but my father-in-

17 law served on the Committee as one of the token Democrats in

18 Phil Gramm's Committee.  He was one of maybe three

19 Democrats, I don't really remember exactly.

20       The Committee approved me, that was not an issue.

21 I didn't meet with the Senators, either one.  I knew a lot

22 of people before I was nominated, and the Committee didn't

23 see any need to make a big deal about me, and they endorsed

24 me.

25       Kay Bailey Hutchinson appeared at my Senate

1   Judiciary Committee hearing and introduced me to the Senate

2   Judiciary Committee, which had just again turned Republican.

3   It's embarrassing because I can't remember who the Chair

4   was.  But the point is that she said nice things about me.

5   And among other things, she said, you know, I was capable, I

6   should have this job, she endorsed me.

7            But she also said that it was a good thing to get

8   me on the bench because it would be me out of the Democratic

9   fundraising business.  It was very funny at the time, and it

10  did work.  So anyway, I did get out of the fundraising

11  business and that was 20 years ago, really almost to the

12  month.

13           But the point is, that she and my father-in-law

14  have worked together on projects and things.  And so my

15  husband knows this former Senator through some UT Law alumni

16  things.  So she knows me by name, and I don't think --

17  again, I'm not social friends with her.  She would know me

18  by name, I think, and I, of course, know her by name.

19           But I don't see her mentioned in this Complaint

20  very much.  I mean, she served in a position, came into the

21  party late, and so I see she's a Defendant and I feel very

22  strongly about my reputation and hers, in the sense of I

23  don't want there ever to be any feeling of bias since she's

24  not a lead Defendant or a target.

25           I'm not sure how that leaves you.

1          But I'm going to be calling it as I see it

2   Defendant-by-Defendant based on what I see in the Complaint

3   and what evidence is presented.  And I honestly do not

4   believe this would cause a conflict, but there is this

5   history that I probably have gone on a little too long

6   about, but I felt like better now than later.

7          MR. ENTWISTLE:  Well, we appreciate that, Your

8   Honor, and certainly we're aware of former Senator

9   Hutchinson's reputation here involved in the community.  We

10  don't see any issue whatsoever with regard to Your Honor's

11  in attendance in all matters related to this case.  And I

12  suspect that when the Consolidated and Amended Complaint is

13  filed, that it will be very clear that there is no issue

14  here.

15         THE COURT:  Okay.  Well, it took me a while to

16  wake up to this relation -- I had to actually look up her

17  name and Google and all that, but it occurred to me at some

18  point.  So thank you for saying that.  But anyway, that's

19  that.

20         I also do know, but don't socialize with, but have

21  known, sort of just see at a cocktail party, Pete Conway,

22  but the others I don't even know what they look like, I know

23  what he looks like.

24         So I say that because I'm going to give each side

25  an opportunity to just mull it over.  Honestly though, in my

1   -- it is my strong belief that this will not affect how I

2   view the facts or the disclosures or the merits of any claim

3   or defense for that matter.  Okay?

4           So I'm not willing and not offering to recuse at

5   this time, but should there be something that comes up, I

6   said three days, but I'll give you five days.

7           MR. ENTWISTLE:  We don't need it, Your Honor,

8   there's no issue here from our side.

9           THE COURT:  Okay.  Anything from the Defense side?

10          MR. STERLING:  Nothing from ours, Your Honor.

11          MR. SCHWARTZ:  The only thing I would say is that

12   I've never known Morris Atlas to be token to anything, Your

13   Honor.

14          THE COURT:  Yeah, that's my father-in-law.  Well,

15   thank you.

16          Anyway, let's go to the business of the hour,

17   which is the various motions.  I think I'll take the --

18   well, the Lead Counsel motion first, because it seems that

19   that has been resolved, and I have a motion, a stipulation

20   of proposed order from GAMCO and others, and then I have the

21   notice of withdrawal of the motions from Equity League

22   Pension Trust.

23          I'm under the impression all the other Counsel who

24   sought to be Lead Counsel have resigned or withdrawn their

25   motion.  I know that there's also the issue of Liaison

1   Counsel.  I'm holding that separate for a moment.

2          MR. ENTWISTLE:  Yes, Your Honor.  The stipulation

3   provides for the withdrawal in support of all of the Movants

4   except for equity, just for logistical reasons, equity

5   wanted to file a separate withdrawal, having no --

6          THE COURT:  Okay.

7          MR. ENTWISTLE:  -- other issues related to the

8   stip, so between the two documents, you've got all

9   withdrawals of all of the competing movements -- Movants in

10  support of the application by GAMCO and the two GAMCO funds

11  as Lead Plaintiffs.

12         THE COURT:  Okay.  Talk to me about why we're

13  having co-Lead Plaintiffs, number one.  And then why Liaison

14  Counsel.

15         MR. ENTWISTLE:  Well, co-Lead Plaintiffs mean the

16  two GAMCO funds, Your Honor.  We can certainly just have

17  the one --

18         THE COURT:  No, no, I misspoke --

19         MR. ENTWISTLE:  -- oh, co-Lead Counsel.

20         THE COURT:  -- Counsel.

21         MR. ENTWISTLE:  Co-Lead Counsel, certainly.  In

22  our case obviously, and our firm has represented GAMCO for

23  many years, but we've also worked very closely and had co-

24  lead appointments in the past with the Bernstein Litowitz

25  firm.

1        We currently work with them as co-lead in another

2   case, the Cooper case in New York -- in Delaware rather, and

3   also, they're working with us in a cooperative fashion in a

4   different aspect of the case in the MF Global case in

5   New York.  We represent all of the commodity holders, they

6   represent securities claimants in that case.

7        So we have a lot of experience together.  They

8   worked with us also in this -- the *Squirlocko* (phonetic)

9   case that we recovered more than a billion dollars.  So they

10  have a lot of experience with the firm, first of all.

11       Secondly, their two clients, the St. Lucie Fund

12  and the San Antonio Firefighters had filed -- developed and

13  filed the very early Complaint.  It's a very well developed

14  Complaint.  They did a lot of investigation as did our firm,

15  and so we feel they bring a lot to the table.

16       In that regard and their clients, we do intend

17  that both of their clients who support the motion would

18  become named Plaintiffs here.  They both purchased

19  noteholders on two of the offerings that are issue in this

20  case, and so they'll be an important part of it.

21       And we know we can work very efficiently with

22  them, and that's always a concern obviously, but we've got a

23  lot of experience working together.  And it seemed like it

24  was much more efficient to sort of build on the basket of

25  knowledge that both firms had, and GAMCO looked very closely

1   and talked to us a lot about this, as it was making its

2   selection.  And they said to us, what do you think, and it

3   seemed to us that was the most efficient way to move forward

4   with the prosecution of the case and do it expeditiously as

5   well.

6            THE COURT:  How are you going to avoid duplication

7   of effort?  How do you handle that?

8            MR. ENTWISTLE:  You know, what we do, Your Honor,

9   as we really build it out as a single team.  And so, you

10  know, you get me, you know, while we're in court as you see

11  today, and we tend to keep things very lean as one

12  representative from my firm and one from the Bernstein firm

13  here.  Obviously, no one is looking to bring a lot of

14  lawyers to court that don't need to be here.

15           And then as we work these projects together, again

16  we work through very lean assignments who's doing what to

17  whom and then, you know, you get one voice when we're in the

18  courtroom.

19           So we work very closely to avoid duplication and

20  it really becomes sort of one law firm as a team --

21           THE COURT:  The team is integrated.

22           MR. ENTWISTLE:  Exactly, it's a very integrated

23  team.

24           THE COURT:  Okay.  On Plaintiffs, the Lead

25  Plaintiff -- Plaintiffs, I got the impression that it is

1  going to be GAMCO, I'm shortening this, Income Trust and

2  GAMCO -- well --

3           MR. ENTWISTLE:  GAMCO Gold and GAMCO National.

4           THE COURT:  Gold and one is GAMCO Gold and --

5           MR. ENTWISTLE:  GAMCO National and GAMCO Gold --

6           THE COURT:  -- GAMCO National.

7           MR. ENTWISTLE:  -- right.  And so they're the two

8  Lead Plaintiffs, but there will be other named Plaintiffs --

9           THE COURT:  As well as St. --

10          MR. ENTWISTLE:  -- in the Complaint.

11          THE COURT:  -- Lucie.

12          MR. ENTWISTLE:  St. Lucie, exactly right.  And

13  there may be some others depending as we sort of parse

14  through just to make sure that we have all the various

15  offerings, you know, covered, et cetera.

16          THE COURT:  Okay.

17          MR. ENTWISTLE:  But they're going to be the two

18  leads.

19          THE COURT:  Okay.  And, Mr. Stickney.

20          MR. STICKNEY:  Yes.

21          THE COURT:  You have heard what Mr. Entwistle

22  said, are you comfortable partnering with them, in a way

23  that will not cause unnecessary duplication?

24          MR. STICKNEY:  Absolutely.  I think Mr. Entwistle

25  summarized our process very well.  I think that the statute

1  gives the Lead Plaintiff the authority, subject to the

2  Court's approval.  It was a thoughtful considered decision

3  here to choose two experienced resourceful law firms.

4          THE COURT:  Okay.  All right.  Is there any

5  objection to this from anybody?

6      (No audible response.)

7          THE COURT:  No?  All right, fine.  Then I'm going

8  to select you two as Lead Counsel, I guess, with

9  Mr. Entwistle's name first.

10          MR. ENTWISTLE:  Thank you, Your Honor.

11          THE COURT:  Now, let's talk about Liaison Counsel,

12  because this one is confusing to me.

13          MR. ENTWISTLE:  So, Your Honor, obviously we're

14  here in this district, and while I am a member of the Texas

15  Bar, and I'm a member of the District Bar, it seemed to us

16  that having a local firm act as liaison was needed, and I

17  know you know the Ajamie Law Firm well, made all the sense

18  in the world, just to make sure there were no issues in

19  terms of local practice or procedures, logistics and the

20  like.  That's really their role here; again, very efficient,

21  and in the interest of keeping things as organized as

22  possible.

23          THE COURT:  Well, do you want to comment about

24  what you think your role is actually going to be?

25          MS. SZAK:  Yes.  My firm's role would be as

1  Mr. Entwistle said, we'll liaise with the Plaintiff group in

2  regard to court procedures.  If we have discovery going on

3  in Texas, we would assist with that discovery.  We would

4  take assignments from Mr. Entwistle and Mr. Stickney's firm,

5  we certainly wouldn't duplicate effort.

6       THE COURT:  Okay.  I practiced in New York for six

7  years, most of you or a lot of you are from New York or D.C.

8  and it doesn't faze me to have New Yorkers here.  I'm happy

9  with New Yorkers.  I like Texas, too.

10      But the point is that honestly, I want all of you

11 to understand these procedures, because they are not

12 complicated.  There is nothing complicated about my

13 procedures except basic courtesy, and there is the basic

14 notice to everybody, the proposition.

15      MR. ENTWISTLE:  Uh-huh.

16      THE COURT:  I don't see myself under electronic

17 filing system processes to be working through the Ajamie

18 firm.  I'm just going to tell you that.  It's nothing

19 personal, please understand that.  I just don't see it.

20      Everything that happens is going to get filed in

21 the Docket, or it's going to be an email if it's informal to

22 all Counsel, Sheila has a list serve, or she'll create one

23 and everybody's going to get notice of everything that

24 happens.

25      And so I'm not trying to talk you out of getting

1  extra money for that firm but I'm not going to be talking to

2  you or to you through that law firm, it's not happening.

3  Again, nothing personal to you, ma'am, I promise.

4          MR. ENTWISTLE:  And we don't expect that, Your

5  Honor.  We -- you know, we sort of make it a practice of

6  always having a local liaison to the extent it becomes

7  important for whatever the reason is.  But the voice you'll

8  get is mine whenever --

9          THE COURT:  It needs to be yours.

10          MR. ENTWISTLE:  It will be.

11          THE COURT:  I'm just going to tell you that, it

12  needs to be yours.

13          MR. ENTWISTLE:  That's fine, Your Honor.

14          THE COURT:  Because I've had experienced in both

15  as a judge and frankly as a litigator where local Counsel

16  and Lead Counsel were not on the same page, and it just

17  creates more trouble than it's worth.

18          MR. ENTWISTLE:  That will never happen here, Your

19  Honor.  The -- you'll hear my voice and --

20          THE COURT:  Okay.

21          MR. ENTWISTLE:  -- it'll be that you deal with

22  when it comes to those issues.  That will not be an issue,

23  and we've -- obviously I know many of the folks at the

24  defense table as their firms, and we've already met and

25  conferred as Your Honor knows from the 26(f) filing, so I

1 think this will be a very collegial, civil, efficient case

2 for Your Honor, as we move forward, so.

3          THE COURT:  Okay.  Well, the good news for you

4 guys is, it makes it less of a hassle for everybody if you

5 can just work out your differences, but -- you know, the

6 little differences, but I don't know if it's good news or

7 bad news, but you get to see me if there are discovery

8 disputes.  You don't get a magistrate judge, you get me,

9 that's part of the deal.

10          And the reason for that is, frankly, it's easier

11 for me to get with you and figure out what the dispute is

12 and resolve it, than to have to read what some magistrate

13 judge wrote, and your objections, and then I have to go back

14 and read the underlying dispute.  It's so not worth it to

15 me.

16          MR. ENTWISTLE:  Right.

17          THE COURT:  So the good news is you get me, the

18 bad news is you get me, but as a result of all of that,

19 again, I just don't get it on Liaison Counsel, and I'm going

20 to appoint the Ajamie firm and Ms. Szak --

21          MS. SZAK:  Dona Szak, yes.

22          THE COURT:  Szak is how you say it?

23          MS. SZAK:  Yes.

24          THE COURT:  Szak, and I look forward to working

25 with you, but I don't see that it's going to be a very big

1  job, I mean, because I'm going to be sending out these

2  notices to everybody.  I am not the kind of judge that's

3  going to send it just to you and have you send it to the

4  rest of the world.  That just isn't necessary, okay.  And if

5  this is violating somebody's sensibilities or some process

6  that you all are aware of, please let me know because I'm

7  not trying to be horsey, I'm just trying to actually be more

8  efficient.

9          MS. SZAK:  No, Your Honor, that's fine with us,

10  and we agree as far as my firm's is concerned, as I said

11  we're taking assignments from Lead Counsel whatever they

12  need us to do.  We're a leanly staffed firm, we're not going

13  to overwork this case or any other case.

14          THE COURT:  Okay.  Great.

15          MS. SZAK:  So -- and I can assure you there aren't

16  going to be any disagreements with co-Counsel.

17          THE COURT:  And you'll be the person on the file,

18  right?

19          MS. SZAK:  Myself and Tom Ajamie probably both of

20  us if we need to have hearings in front of Your Honor.

21  Mr. Ajamie wasn't able to be here because he had to be at a

22  pretrial for a case that's actually going to trial next

23  week.

24          THE COURT:  Okay.  That sounds good.

25          MR. ENTWISTLE:  Yeah, he's in Pittsburgh I guess

1  so he's not in -- he's enjoying worst weather than we're

2  having in Houston, so.

3          THE COURT:  Yeah.

4          MR. ENTWISTLE:  Many of us may never leave by the

5  way, we may not go back to New York with the weather they've

6  been having in New York, so.

7          THE COURT:  It's horrible, believe me, I

8  understand completely.

9          All right.  Well then, I'll go with that, but I

10 hope I've made myself clear.

11         MR. ENTWISTLE:  You have, Your Honor.

12         THE COURT:  Now, let's -- so that solves Lead

13 Plaintiff, Lead Counsel and Liaison Counsel.

14         MR. ENTWISTLE:  That's right.

15         THE COURT:  Should we move to the consolidation

16 issue or do you have anything else on the --

17         MR. ENTWISTLE:  No.  Consolidation, as Your Honor

18 knows, is unopposed --

19         THE COURT:  Right.

20         MR. ENTWISTLE:  -- by any party and so --

21         THE COURT:  Right.  And I did talk to Judge

22 Gilmore, and she's fine giving up the case and that part's

23 fine.  Now, there is this Harmon derivative action, I call

24 it Harmon, Judge Harmon has a derivative action.  I'm not

25 seeing that as part of this consolidation, slightly

1   different claims.  I don't know what your position is

2   about --

3          MR. ENTWISTLE:  The Defendants may have a

4   different view.  It's certainly -- it probably will be

5   coordinated for all pretrial purposes, whether formal

6   consolidation related to the derivative action necessary, I

7   would say probably not, but Mr. Sterling may have a

8   different view.

9          MR. STERLING:  We think it's clearly a related

10  case that we don't think should be consolidated.

11         THE COURT:  Right.  Okay.  So what are we thinking

12  about doing regarding Judge Harmon keeping the case?

13         MR. STERLING:  I think it's a related case.  It's

14  supposed to come here, isn't it?

15         THE COURT:  Are you planning to make that --

16         MR. STERLING:  Yes.

17         THE COURT:  -- request?

18         MR. STERLING:  Yes.

19         THE COURT:  What's your view on that?

20         MR. ENTWISTLE:  I think it is related, and in

21  order to coordinate it particularly when we get to the point

22  of discovery and what not, I think that's the most efficient

23  approach, Your Honor.

24         THE COURT:  Do they have a class issue there?

25         MR. STERLING:  It's a derivatives, Your Honor.

1          THE COURT:  So no?

2          MR. ENTWISTLE:  No.

3          MR. STERLING:  Just as this case is going to have

4    some threshold legal issues long before we ever get to

5    discovery, that case will as well.

6          THE COURT:  Okay.  Because I haven't heard

7    anything about me taking that case and I'm not sure when

8    hers was filed.  We need to make the motion in the first

9    filed case, that's the local rule and copy me if I'm second

10   filed.

11         MR. ENTWISTLE:  I think this was the first file --

12         THE COURT:  I actually did look that up.  Am I the

13   first filed?

14         MR. STERLING:  You're the first, Your Honor.

15         MR. ENTWISTLE:  Yes.

16         THE COURT:  Well, that solves that problem.

17         MR. STERLING:  We'll get that done.

18         THE COURT:  Okay.  Now, on consolidation, this --

19   I'm fine with consolidating these cases.  But I have one

20   more thing.  There is a motion or there was a motion to

21   designate attorney-in-charge for the Goldman Sachs/Wachtel

22   people.

23         MR. STERLING:  Yes, Your Honor, that's our motion.

24   That's to have Mr. Conway appointed as Lead Attorney.  He's

25   not a member of the Southern District of Texas, but he's in

1  pro hoc now --

2            THE COURT:  Uh-huh.

3            MR. STERLING:  -- and we just wanted him

4  designated as Lead Attorney.

5            THE COURT:  Okay.  But it's attorney-in-charge for

6  the group.

7            MR. STERLING:  Yes, Your Honor.

8            THE COURT:  And you're calling yourselves the

9  private equity guys?

10           MR. ORAN:  Well, other than Carlyle, they're other

11  private equity people, but since there are 15 or 20 of them,

12  we tried --

13           THE COURT:  Yes.

14           MR. ORAN:  -- not to name them.

15           THE COURT:  Okay.  So I'm going to sign this

16  order, but I think we need to -- it will be helpful for us

17  to have shorthand names for you versus Carlyle versus

18  whoever else.

19           MR. ORAN:  We've come up with that before the next

20  filing, just come up with names.

21           THE COURT:  Yeah, if you don't mind, again because

22  I anticipate this being a humongous Docket sheet, if you

23  don't mind coming up with the shorthand names that we can

24  use through the Complaint and through the -- all of my

25  orders, and then let me know what that --

1          MR. ORAN:  Absolutely.

2          THE COURT:  -- the key, the code.  And then submit

3  this attorney-in-charge order, a proposed order using that

4  terminology, okay, so I'm not going to sign this yet but

5  it's granted.

6          MR. ORAN:  Thank you, Your Honor.

7          THE COURT:  Okay.  So for the record, this is

8  Document No. 41, it's granted, Sheila.

9          And for the record I guess it's Document 53 is

10  granted and we take notice of Document 52, which is the

11  withdrawal of some other lawyers.

12          All right.  Now, in terms of the order

13  consolidating the cases, I looked at your order, and I got

14  my thoughts on it.  I would like to figure out a way to --

15  now why are you asking for a master file and why are you

16  asking for me to administratively close certain actions?

17          The mechanics of that are different from what we

18  typically do here, and it's mostly terminology.  But if I

19  take a case and it's consolidated, it's a follow-on or a tag

20  along case so to speak and it follows on the lead case, we

21  call the lead case the lead case or consolidated case In Re

22  Cobalt, and we just file this order in the case that is

23  being ended, so to speak.  We don't administratively close

24  it because --

25          MR. ENTWISTLE:  And that's fine.

1            THE COURT:  -- Washington doesn't like that.  So

2   we just end that case, nothing else gets filed there,

3   everything will get filed in the consolidated case, In Re

4   Cobalt, which is, you know, the 3428 Docket number, that is,

5   we don't have a master Docket and a master file, and some of

6   the terminology that I used to see, but we don't need

7   anymore.

8            MR. ENTWISTLE:  And that's fine with us, Your

9   Honor.  I think we sort of used that terminology, because

10  it's terminology that we've used --

11           THE COURT:  Elsewhere.

12           MR. ENTWISTLE:  -- in our exhibits and every

13  district has its own sort of administrative practice.  And

14  so that's fine.  I think it all means the same thing --

15           THE COURT:  Right.

16           MR. ENTWISTLE:  -- I think they just use different

17  words.  So we just wanted to have one, sort of named the In

18  Re Cobalt Securities Litigation name for the consolidated

19  action, and then all filings would happen within that

20  action --

21           THE COURT:  Right.

22           MR. ENTWISTLE:  -- which I assume would be the

23  14-3428 so that's fine.

24           THE COURT:  Exactly.

25           MR. ENTWISTLE:  That's fine.

1            THE COURT:  Exactly.

2            MR. ENTWISTLE:  That's fine.

3            THE COURT:  So I'm just going to change the

4    terminology.

5            MR. ENTWISTLE:  That's fine, Your Honor.

6            THE COURT:  Now, the defense, are you guys fine

7    with that?

8            MR. STERLING:  Fine, Your Honor.

9            THE COURT:  And I'm taking Newman and I'm going to

10   ultimately take that other case but not consolidate it.  In

11   Re Cobalt International Energy, Inc. Securities Litigation

12   is going to be the name.  No problems there, right,

13   Mr. Sterling?

14           MR. STERLING:  Sounds great.

15           THE COURT:  Okay.  Now, the newly or transferred

16   cases, mechanically is there any expectation cases are going

17   to be filed in other districts?

18           MR. ENTWISTLE:  Not right now, Your Honor.  I

19   don't really see that happening, but anything is possible,

20   but I would be very surprised since we're already well

21   out --

22           THE COURT:  Yeah.

23           MR. ENTWISTLE:  -- we work with who the Lead

24   Plaintiff.  For instance, normally if that's going to

25   happen, it happens relatively quickly.

1          THE COURT:  Okay.

2          MR. ENTWISTLE:  So I would be surprised, but if we

3  do get follow-on cases or run-off cases, obviously they'll

4  follow them down into this district once it's consolidated.

5          THE COURT:  Right, they'll transfer them in here

6  and then we'll do it.  Okay.  So I'm going to issue some

7  version of the order that you guys have proposed, and I'm

8  going to give -- it's going to -- I like the idea of if

9  someone here, if any party learns of another case, then you

10  send a copy of the order that I will enter to them and they

11  -- the case will be -- I think what you said upon receipt of

12  notification, the clerk should file a -- send a copy, but

13  we're not set up to do that.

14          MR. ENTWISTLE:  That's fine.  We'll send it out.

15          THE COURT:  So I was thinking, any party can send

16  a copy of the order consolidating the cases to the Counsel

17  in the new case.  And then within 14 days, as opposed to 10,

18  after the date the order is sent, then Counsel in the new

19  case must file an objection.  And then you guys will get

20  7 days to respond and then I'll rule.

21          UNIDENTIFIED:  Okay.

22          THE COURT:  Okay?

23          MR. ENTWISTLE:  That's fine, Your Honor.

24          THE COURT:  It's a little dicey if there's a case

25  in another district, but frankly that's not likely so we're

1  just not worrying about that.

2         Okay.  So I'm going to try to come up with

3  something that looks okay in that regard.

4         MR. ENTWISTLE:  Very good.

5         THE COURT:  I may go ahead and send you a draft of

6  this one, so if anybody has any comments, you can send back

7  comments.  So the draft will come from Sheila to all parties

8  -- all Counsel, and then you'll have to file any proposed

9  alterations to the proposed order that I'm submitting,

10 you'll have to find those on the Docket.  Okay?

11        MR. ENTWISTLE:  Uh-huh.

12        THE COURT:  All right.  So I'll enter that.

13        Now, that takes care of that.  I'm coming to the

14 end.  You want a schedule, right?

15        MR. ENTWISTLE:  Scheduling, Your Honor.  I did

16 bring an initial scheduling and Docket control order

17 pursuant to your rules.  We shared this with Counsel.  We've

18 obviously discussed this schedule.  It's the same schedule

19 -- I've got copies for you, Sheila.

20        We've obviously been through the schedule with

21 defense Counsel.  We shared this exact document with them as

22 well, just so we could comply.

23        THE COURT:  Okay.

24        MR. ENTWISTLE:  So you may want to modify it, but

25 we've talked about the schedule, it makes sense to all of

1    us.

2              THE COURT:  Right.  Okay.  It's what I calculated

3    basically.  So it's not going to be briefed, this motion is

4    deemed filed in June, June 30th, and it will be submitted,

5    if you will, right, September 14th.

6              MR. ENTWISTLE:  That's right, Your Honor.

7              THE COURT:  Okay.  I can live with that I guess.

8              MR. ENTWISTLE:  Thank you.

9              THE COURT:  You'll be on my six month list for

10   March.  Okay.  Or it might not be actually.  No, we know it

11   definitely will be.  Anyway, I guess I can live with this.

12   But here's the point.  I'm responsible for this motion from

13   June 30th on.  The data collection process that the courts

14   used does not worry about how long it takes something to be

15   ripe.  It only cares when the motion was filed.

16             So I'm just going to tell you that granting

17   extensions to yourselves on this deadline is not my first

18   choice.  It's like really not my first choice.  I need to

19   get this thing submitted, so I can get it out timely.

20             I'm not going to tell you if you have an extra

21   week or two, it's going to matter to me, it's not.  But

22   month long extensions, huh-uh, huh-uh, okay?

23             MR. ENTWISTLE:  We understand, Your Honor, and --

24             THE COURT:  And I've given you completely free

25   rein here, you know, I mean, in other words, I'm going with

1  what you've asked for to be accommodating, but I'm asking

2  you not to squeeze me at the end, because I don't like to

3  have three six month motions.

4          MR. STERLING:  This briefing schedule is kind of

5  our standard 10(b)(5) briefing schedule, and I can't

6  remember the last time we asked for an extension.

7          THE COURT:  Really?

8          MR. STERLING:  I really don't.

9          THE COURT:  This is realistic?

10          MR. STERLING:  Yeah.

11          MR. ENTWISTLE:  Well, we think so too, Your Honor.

12  Obviously there are -- you know, we still don't know, the

13  Defendants won't know until after we file the Consolidated

14  and Amended Complaint exactly what their motion line-up will

15  look like --

16          THE COURT:  Uh-huh.

17          MR. ENTWISTLE:  -- and we've already discussed the

18  fact that once that happens, that we would sort of meet and

19  confer with them and talk about how it should be organized.

20  And then we would anticipate coming back to Your Honor just

21  to talk about how they intend to structure the motions, what

22  we collectively thing, given what the pages should look like

23  in relation to that to be efficient --

24          THE COURT:  Oh, you mean the number of pages?

25          MR. ENTWISTLE:  Exactly.  And it will depend on

1   how many separate motions they've made, and what the most

2   efficient way of addressing them is, but let us come back to

3   you on that when we get to that point.  I think we can be a

4   lot more informed and a lot more efficient --

5               THE COURT:  Okay.

6               MR. ENTWISTLE:  -- you know, at that point.

7               THE COURT:  All right.  That works for me, that's

8   fine.

9          Does anybody have a connection to White & Case,

10  any parties?  I didn't see any, White & Case?

11       (No audible response.)

12              THE COURT:  Okay.  Thank you.  Anything else we

13  can do today?

14              MR. ENTWISTLE:  I think that's it, Your Honor.

15  The only other items in your normal 26(f) order are things

16  that would await, you know, addressing after the motion.  So

17  we've already sort of projected out then within 7 days after

18  any disposition --

19              THE COURT:  Right.

20              MR. ENTWISTLE:  -- we would then get together and

21  deal with that.  So I think we're -- Mr. Sterling?

22              MR. STERLING:  Nothing else on our end, Judge.

23              THE COURT:  No?  Other Counsel?

24              MR. SCHWARTZ:  No, Your Honor.

25              THE COURT:  Okay.  Great.  Okay.  Well, thank you

1   all.  I appreciate your being so efficient and accommodating

2   to one another, good for you.

3           MR. ENTWISTLE:  Well, thank you, Your Honor.  We

4   appreciate it.  Thank you for the hospitality and the good

5   weather, we appreciate that.

6           THE COURT:  Yeah, the weather's pretty good today.

7           MR. ENTWISTLE:  Yeah.

8           THE COURT:  Can't complain.

9           MR. ENTWISTLE:  Well compared to New York, it's

10  much, much better than it's been in the northeast, so we

11  appreciate that.

12          THE COURT:  Oh, I know, I've been up there.  It's

13  bad.

14          Thank you all very much, you're excused.

15      (The Parties thank the Court.)

16      (Proceedings concluded at 2:15 p.m.)

17                          *  *  *  *  *

18       *I certify that the foregoing is a correct*

19  *transcript to the best of my ability from the electronic*

20  *sound recording of the proceedings in the above-entitled*

21  *matter.*

22  */S/ MARY D. HENRY*

23  *CERTIFIED BY THE AMERICAN ASSOCIATION OF*
    *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**D-337*

24  *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*
    *JTT INVOICE #54076*

25  *DATE:  JUNE 25, 2015*