# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - -x
:
:
IN RE COBALT INTERNATIONAL    :   Civ. Action No. 4:14-CV-3428
ENERGY, INC. SECURITIES     :   ECF CASE
LITIGATION             :   Electronically Filed
:
- - - - - - - - - - - - - - - - - - - - - - - - - - -x


## THE UNDERWRITER DEFENDANTS' MOTION TO DISMISS
## THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Charles W. Schwartz
Fed. Bar No. 603
Texas Bar No. 17861300
Email: charles.schwartz@skadden.com
Skadden, Arps, Slate,
   Meagher & Flom LLP
1000 Louisiana, Suite 6800
Houston, Texas 77002
Telephone: (713) 655-5160
Facsimile: (713) 483-9160
*Attorney-in-Charge for Underwriter Defendants*

*Of Counsel*
Jay B. Kasner
*(Admitted Pro Hac Vice)*
Email: jay.kasner@skadden.com
Scott D. Musoff
*(Admitted Pro Hac Vice)*
Email: scott.musoff@skadden.com
Skadden, Arps, Slate,
   Meagher & Flom LLP
Four Times Square
New York, New York 10036-6518
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

## **TABLE OF CONTENTS**

STATEMENT OF THE ISSUES ...................................................................... 2

FACTUAL BACKGROUND AND SUMMARY OF THE ARGUMENT ...................... 3

I. PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS IN THE OFFERING DOCUMENTS .......................................................................... 8

II. SECURITIES ACT CLAIMS PREMISED ON THE FEBRUARY 2012 OFFERING ARE ALSO BARRED BY THE STATUTE OF REPOSE ................................................................ 9

    A. There Can Be No Tolling of a Statute of Repose under *American Pipe* ................................................ 9

    B. Plaintiffs Cannot "Relate Back" to the Filing of the Original Complaint ......................................................... 13

    C. Even if Relation Back Were Available, Plaintiffs Cannot Lay Claim to This Right Because the Original Plaintiffs Did Not Have Standing .............................................................. 14

III. SECURITIES ACT CLAIMS PREMISED ON THE NAZAKI ALLEGATIONS ARE BARRED BY THE STATUTE OF LIMITATIONS ........................................................................ 16

IV. STOCK PURCHASES TRACEABLE TO THE FEBRUARY 2012 OFFERING CANNOT SUPPORT A SECURITIES ACT CLAIM IF THEY WERE MADE AFTER APRIL 30, 2013 .................................. 20

V. COUNT V MUST BE DISMISSED FOR LACK OF STANDING AGAINST THE UNDERWRITER DEFENDANTS ................................ 21

VI. PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST GOLDMAN, SACHS & CO. FOR CONTROL PERSON LIABILITY ........................................................................... 25

CONCLUSION ......................................................................................... 25

## TABLE OF AUTHORITIES

## CASES

*Albano v. Shea Homes L.P.*,
254 P.3d 360 (Ariz. 2011)..............................................................................11, 12

*American Pipe & Construction Co. v. Utah*,
414 U.S. 538 (1974).........................................................................................6, 10

*In re Bear Stearns Companies, Inc. Securities, Derivative, and ERISA Litigation*,
995 F. Supp. 2d 291 (S.D.N.Y. 2014) ...................................................................11

*In re BP p.l.c. Securities Litigation*,
No. 4:13-cv-1393, 2014 WL 4923749 (S.D. Tex. Sept. 30, 2014) .......................12

*Bridges v. Department of Maryland State Police*,
441 F.3d 197 (4th Cir. 2006)................................................................................12

*Cacha v. Montaco, Inc.*,
554 S.E.2d 388 (N.C. Ct. App. 2001)..............................................................11, 12

*In re Century Aluminum Co. Securities Litigation*,
749 F. Supp. 2d 964 (N.D. Cal. 2010) .................................................................23

*In re Century Aluminum Co. Securities Litigation*,
729 F.3d 1104 (9th Cir. 2013) .............................................................................15

*CTS Corp. v. Waldburger*,
134 S. Ct. 2175 (2014) .........................................................................................10

*DeMaria v. Andersen*,
153 F. Supp. 2d 300 (S.D.N.Y. 2001) ..................................................................23

*In re Direxion Shares ETF Trust*,
279 F.R.D. 221 (S.D.N.Y. 2012).........................................................................14

*Fait v. Regions Financial Corp.*,
655 F.3d 105 (2d Cir. 2011)...................................................................................8

*Firefighters Pension & Relief Fund v. Bulmahn*,
53 F. Supp. 3d 882 (E.D. La. 2014)................................................................17, 18

*Footbridge Ltd. Trust v. Countrywide Financial Corp.*,
770 F. Supp. 2d 618 (S.D.N.Y. 2011) ...........................................................9, 11, 12

*In re Franklin Bank Corp. Securities Litigation*,
   782 F. Supp. 2d. 364 (S.D. Tex. 2011) ......................................................... 18, 19

*In re Franklin Mutual Funds Fee Litigation*,
   478 F. Supp. 2d 677 (D.N.J. 2007) ................................................................. 14

*Griffin v. PaineWebber, Inc.*,
   No. 99 CIV. 2292(VM), 2001 WL 740764 (S.D.N.Y. June 29, 2001) ............... 23

*Gustafson v. Alloyd Co.*,
   513 U.S. 561 (1995) ....................................................................................... 22

*Hall v. Variable Annuity Life Insurance Co.*,
   727 F.3d 372 (5th Cir. 2013) .......................................................................... 11

*Irwin v. Department of Veterans Affairs*,
   498 U.S. 89 (1990) ......................................................................................... 12

*Jensen v. Snellings*,
   841 F.2d 600 (5th Cir. 1988) .......................................................................... 17

*Krim v. pcOrder.com, Inc.*,
   402 F.3d 489 (5th Cir. 2005) .......................................................................... 16

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
   501 U.S. 350 (1991) ................................................................................. 10, 11

*Levin v. Minnesota Life Insurance Co.*,
   No. H-07-1330, 2008 WL 2704772 (S.D. Tex. July 7, 2008) ............................ 15

*Lewis v. Fresne*,
   252 F.3d 352 (5th Cir. 2001) .......................................................................... 22

*In re Magnum Hunter Resources Corp. Securities Litigation*,
   No. 14-2581-cv, 2015 WL 3852561 (2d Cir. June 23, 2015) ...................... 14, 19

*In re Morgan Stanley Mortgage Pass-Through Certificates Litigation*,
   23 F. Supp. 3d 203 (S.D.N.Y. 2014) ............................................................... 13

*New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc.*,
   No. 08 Civ. 5653(PAC), 2010 WL 6508190 (S.D.N.Y. Dec. 15, 2010) .............. 12

*Pinter v. Dahl*,
   486 U.S. 622 (1988) ................................................................................. 21, 22

iii

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*,
    886 F. Supp. 2d 328 (S.D.N.Y. 2012) .......................................................... 11, 12

*Police & Fire Retirement Systems of Detroit v. Goldman, Sachs & Co.*,
    No. 10 Civ. 4429(MGC), 2014 WL 1257782 (S.D.N.Y. Mar. 27, 2014) ............. 13

*Police & Fire Retirement Systems of Detroit v. IndyMac MBS, Inc.*,
    721 F.3d 95 (2d Cir. 2013).......................................................... 10, 11, 12, 13, 14

*Public Employees' Retirement Systems of Mississippi v. IndyMac MBS, Inc.*,
    135 S. Ct. 42 (2014)............................................................................................. 10

*In re Puda Coal Securities Inc. Litigation*,
    No. 11 Civ. 2598(KBF), 2013 WL 5493007 (S.D.N.Y. Oct. 1, 2013) ................ 13

*Resolution Trust Corp. v. Olson*,
    768 F. Supp. 283 (D. Ariz. 1991) ...................................................................... 14

*Rosenzweig v. Azurix Corp.*,
    332 F.3d 854 (5th Cir. 2003)...................................................................21, 23, 24

*Shaw v. Digital Equipment Corp.*,
    82 F.3d 1194 (1st Cir. 1996) ............................................................................. 24

*Sudo Properties, Inc. v. Terrebonne Parish Consolidated Government*,
    503 F.3d 371 (5th Cir. 2007)............................................................................. 17

*Summit Office Park, Inc. v. U.S. Steel Corp.*,
    639 F.2d 1278 (5th Cir. 1981) .......................................................................... 14

*Tindol v. Boston Housing Authority*,
    487 N.E.2d 488 (Mass. 1986)............................................................................ 14

*Truk International Fund LP v. Wehlmann*,
    737 F. Supp. 2d 611(N.D. Tex. 2009), ............................................................... 8

*In re UBS AG Securities Litigation*,
    No. 07 Civ. 11225(RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) ............ 24

*Veltri v. Building Service 32B-J Pension Fund*,
    393 F.3d 318 (2d Cir. 2004)............................................................................. 12

*Weisskopf v. United Jewish Appeal-Federation of Jewish Philanthropies of New York, Inc.*,
    889 F. Supp. 2d 912 (S.D. Tex. 2012).............................................................. 14

iv

*Yates v. Mun. Mortg. & Equity, LLC*,
    744 F.3d 874 (4th Cir. 2014) ............................................................................. 23

*Young v. U.S.*,
    535 U.S. 43 (2002) ................................................................................................ 12

*Youngblood v. Dalzell*,
    925 F.2d 954 (6th Cir. 1991) ............................................................................. 12

## <u>STATUTES</u>

15 U.S.C. § 77a. .......................................................................................................... 2

15 U.S.C. § 77k(a) ...............................................................................................3, 7, 20

15 U.S.C. § 77m ...................................................................................................... 2, 9

## <u>RULES AND REGULATIONS</u>

17 C.F.R. § 230.158(a)(2)(i) (2008) ......................................................................... 20

Fed. R. Civ. P. 15(c)(1)(B) ...................................................................................... 13

## <u>OTHER AUTHORITIES</u>

*Black's Law Dictionary* 86 (West 6th ed. 1990) .................................................... 23

*Oxford English Dictionary*, http://www.oed.com ................................................... 23

The Underwriter Defendants[1] respectfully submit this motion to dismiss with prejudice all claims asserted against them in Plaintiffs' Consolidated Amended Class Action Complaint For Violations Of The Federal Securities Laws (the "CAC"), pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. The Underwriter Defendants also join in and incorporate by reference all applicable arguments set forth in the motion to dismiss filed by Cobalt International Energy, Inc. ("Cobalt" or the "Company") and certain of its officers and directors (collectively, the "Cobalt Defendants") ("Cobalt Defendants' Motion"). Defendant Goldman, Sachs & Co., the only Underwriter Defendant named in the control person claim described below, also incorporates by reference applicable arguments set forth in the motion to dismiss submitted by The Goldman Sachs Group, Inc., Riverstone Holdings LLC, First Reserve and Kern Partners (collectively, the "Corporate Sponsor Defendants") ("CS Motion"). To avoid duplication, the Underwriter Defendants likewise adopt and refer the Court to the Cobalt Defendants' and the Corporate Sponsor Defendants' respective Statements of the Issues, Standards of Review, and descriptions of the procedural and factual background. (*See* Cobalt Defendants' Motion at 1-19; CS Motion at 2-6.) The Underwriter Defendants

---

[1] The Underwriter Defendants are Goldman, Sachs & Co., Morgan Stanley & Co. LLC, Credit Suisse Securities (USA) LLC, Citigroup Global Markets Inc., J.P. Morgan Securities LLC, Tudor, Pickering, Holt & Co. Securities, Inc., Deutsche Bank Securities Inc., RBC Capital Markets, LLC, UBS Securities LLC, Howard Weil Incorporated, Stifel, Nicolaus & Company, Incorporated, Capital One Southcoast, Inc. and Lazard Capital Markets LLC.

briefly supplement these sections below to address issues specific to the allegations directed at them.

## STATEMENT OF THE ISSUES

In addition to the Statements of Issues outlined in the Cobalt Defendants' Motion and the Corporate Sponsor Defendants' Motion, Plaintiffs' CAC raises the following threshold legal issues that are addressed herein:

1.      Whether claims brought under Sections 11 and 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77a et seq. ("Securities Act"), relating to securities that were offered to the public on February 23, 2012 (the "February 2012 Offering"), are barred by the Securities Act's three-year statute of repose, *see* 15 U.S.C. § 77m. (*See* Argument, Point II.)

2.      Whether certain claims brought under Sections 11, 12(a)(2) and 15 of the Securities Act are barred by its one-year statute of limitations, where the operative complaint, on its face, demonstrates that plaintiffs were on inquiry notice of the facts underlying the alleged misstatements and omissions more than a year before suit was filed. (*See* Argument, Point III.)

3.      Whether a Section 11 claim relating to a February 2012 offering must be dismissed for failing to plead that plaintiffs actually relied on the registration statement for that offering, to the extent that (i) earning statements covering a period of at least twelve months after the effective date of the registration statement were made available to the public, and (ii) plaintiffs purchased securities traceable to this offering after the last

2

of these earning statements was publicly disclosed. *See* 15 U.S.C. § 77k(a). (*See* Argument, Point IV.)

Whether a claim brought under Section 12(a)(2) against an underwriter must be dismissed where the plaintiff has not pled (i) that it purchased the securities at issue in a public offering, rather than in a secondary market transaction, and (ii) that the underwriter directly sold, or directly solicited the sale of, these securities to plaintiff in that offering. (*See* Argument, Point V.)

4.     Whether a claim brought under Section 15 of the Securities Act against an underwriter (in this case, Goldman, Sachs & Co.) must be dismissed where the plaintiff has not pled specific facts demonstrating that the underwriter exercised actual control over an alleged primary violator of Section 11. (*See* Argument, Point VI.)

## FACTUAL BACKGROUND AND SUMMARY OF THE ARGUMENT

This putative securities class action arises, in part, from five public offerings of equity and debt securities (collectively, the "Offerings," and individually, an "Offering") by Cobalt, a Houston-based oil exploration and production company with operations in the U.S. Gulf of Mexico and West Africa, including the Republic of Angola. (CAC ¶¶ 1, 22.) The Underwriter Defendants are financial services firms that allegedly served as underwriters in connection with one or more of the Offerings, as reflected in Appendix A attached hereto.

Based on their asserted roles in these Offerings, Plaintiffs' CAC seeks to impose liability on the Underwriter Defendants for alleged violations of Sections 11 (*see* Count

III) and 12(a)(2) (*see* Count V) of the Securities Act. (*See* CAC ¶¶ 282-300, 309-19.) To this end, Plaintiffs generally allege that the registration statements and prospectus supplements for each Offering (collectively, the "Offering Materials") misled investors by misrepresenting and omitting material facts concerning, among other matters, (i) Cobalt's business operations in Angola, including, more specifically, whether its dealings with the Angolan government complied with the Foreign Corrupt Practices Act ("FCPA"), and (ii) the viability of two exploratory wells, Lontra and Loengo, that Cobalt was developing at the time in partnership with Angola's state-run oil company, Sonangol. (*See* CAC ¶¶ 1-12, 218-20.) Separately, in Count IV, Plaintiffs seek to impose Section 15 "control person" liability upon Goldman, Sachs & Co. (CAC ¶¶ 301-08.)

As detailed more fully in the Cobalt Defendants' Motion, Plaintiffs' FCPA-related allegations are premised, in large part, on Cobalt's partnership with Angolan company Nazaki Oil and Gáz, S.A. ("Nazaki"). After winning the right to partner with Sonangol in the development of two areas – Blocks 9 and 21 – within Angola's oil fields, Cobalt and Sonangol entered into certain Risk Services Agreements (the "RSAs") to govern their relationship. (CAC ¶ 59.) As the RSAs were being negotiated, it is alleged, Sonangol "required" that the partnership include two additional entities, Nazaki and Alper. (CAC ¶¶ 59-60.)

Plaintiffs allege in substance that, unknown to the public, Nazaki was "secretly owned and controlled" by three members of the Angolan government and had been made a partner for the sole purpose of illicitly "funneling profits" to these officials. (CAC ¶¶ 2, 6.) Insofar as it pertains to the Securities Act claims, Plaintiffs allege that in the Offering

Materials for each Offering, Cobalt failed to disclose not only that these supposed ties existed, but also that its dealings with Nazaki purportedly violated the FCPA. (*See* CAC ¶¶ 219, 220, 226-28, 235-37, 245, 250, 256-58.)

Eventually, allegations emerged in various media outlets concerning Nazaki's suspected connection to the Angolan government. For example, on July 30, 2010, investigative journalist Rafael Marques de Morais published a report indicating that three top Angolan officials may be the true owners of Nazaki. (Ex. 1, at 18-19; *see also* CAC ¶ 77.) Similarly, on April 15, 2012, the *Financial Times* published two articles titled "Angola Officials Held Hidden Oil Stakes" and "Spotlight Falls on Cobalt's Angola Partner," revealing that two senior Angolan government officials admitted that they, along with a third Angolan official, were the true owners of Nazaki. (Ex. 2, at 1; Ex. 3, at 1-2; *see also* CAC ¶ 95.)

Cobalt's SEC filings also disclosed these allegations – clearly and repeatedly. For instance, in its Form 10-K for the year 2010, Cobalt revealed that it was investigating allegations regarding "a connection between senior Angolan government officials and Nazaki." (Ex. 4, at 47-48; *see also* CAC ¶ 79.) In a March 11, 2011 8-K, Cobalt disclosed that the SEC had made informal requests to Cobalt regarding allegations of a connection between Nazaki and senior Angolan government officials. (Ex. 5, at 1; *see also* CAC ¶ 80.) Later, on February 21, 2012, Cobalt disclosed that the SEC had commenced a formal investigation into Nazaki's ownership. (Ex. 6-2, at 50; *see also* CAC ¶ 93.)

For the reasons outlined below, the Securities Act claims are inadequate as a matter of law:

5

<u>First</u>, as set forth in the Cobalt Defendants' Motion, which the Underwriter Defendants adopt and incorporate by reference herein, Plaintiffs have failed to plausibly allege that the Offering Materials contained a single actionable misstatement or omission, thereby mandating the dismissal of the Securities Act claims on this basis alone. (*See* Argument, Point I.)

<u>Second</u>, the Securities Act claims premised on the February 2012 Offering are also subject to dismissal because they were filed after the expiration of the Securities Act's three-year statute of repose. In this regard, the repose period began to run on February 23, 2012, when roughly 59.8 million shares of Cobalt common stock were bona fide offered to the public pursuant to a prospectus of the same date. (CAC ¶ 221.) The CAC, however, was not filed until May 1, 2015, over three years later.[2] (*See* ECF No. 72.) Moreover, because the statute of repose creates a substantive right and is not subject to equitable tolling, Plaintiffs cannot escape dismissal by pointing to the filing of the original complaint on November 30, 2014 and arguing either (i) that this pleading tolled the statute of repose under the doctrine articulated by the Supreme Court in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974); or (ii) that, in any event, their claims should "relate back" to the original complaint for repose purposes under Federal Rule of Civil Procedure 15(c). (*See* Argument, Point II.)

---

[2] Because J.P. Morgan Securities, LLC, Tudor, Pickering, Holt & Co. Securities, Inc., Deutsche Bank Securities Inc., UBS Securities LLC, Howard Weil Incorporated, Stifel, Nicolaus & Company and Capital One Southcoast, Inc. are only alleged to have served as underwriters in the February 2012 Offering (CAC ¶¶ 29-33), this argument serves as a standalone basis for dismissing these defendants from the action in its entirety.

Third, the majority of Plaintiffs' Securities Act claims premised on the February 2012 Offering, the December 2012 Offering, the January 2013 Offering, and the May 2013 Offering are barred by the Securities Act's one-year statute of limitations. Plaintiffs were on inquiry notice of the purported fraudulent statements regarding Cobalt's partnership with Nazaki no later than April 2012, yet did not file the instant action until May 1, 2015, more than one year later. (*See* Argument, Point III).

Fourth, because actual reliance has not been pled, Section 11 claims based on common stock purchases traceable to the February 2012 Offering must be dismissed to the extent that such purchases were made after April 30, 2013, the date when Cobalt's first quarter 2013 Form 10-Q was filed with the SEC. Plaintiffs must plead actual reliance on an allegedly misleading registration statement if they "acquired the security after the issuer has made generally available to its security holders an earning statement covering a period of at least twelve months beginning after the effective date of the registration statement." 15 U.S.C. § 77k(a). In this case, Cobalt issued earning statements covering a twelve month period after the February 2012 Offering, culminating with the filing of its first quarter 2013 Form 10-Q. Yet the CAC does not even purport to allege that Plaintiffs – or any other Cobalt investor for that matter – actually relied on the February 2012 Offering Materials. (*See* Argument, Point IV.)

Fifth, Plaintiffs have not adequately pled that they have standing to prosecute a Section 12(a)(2) claim against any, let alone all, of the Underwriter Defendants. To meet this requirement, a plaintiff must allege, *inter alia*, that the defendant in question directly sold – or solicited the sale of – the relevant securities to plaintiff in the offering itself.

Plaintiffs, however, have not identified who among them (if anyone) purchased directly in an Offering; nor do Plaintiffs allege, as they must, from which of the thirteen Underwriter Defendants these securities were acquired. Plaintiffs' boilerplate allegations of solicitation, which are contained in one conclusory sentence from one paragraph of Plaintiffs' 319-paragraph complaint (*see* CAC ¶ 313), are equally inadequate. (*See* Argument, Point V.)

Sixth, and finally, the Section 15 control person liability claim brought against Defendant Goldman, Sachs & Co. must be dismissed for all of the reasons outlined in the Corporate Sponsor Defendants' Motion, which is incorporated by reference herein. (*See* Argument, Point VI.)

## I.   PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS IN THE OFFERING DOCUMENTS

Claims under Sections 11 and 12(a)(2) of the Securities Act have roughly parallel elements. *See Truk Int'l Fund LP v. Wehlmann*, 737 F. Supp. 2d 611, 620 (N.D. Tex. 2009), *aff'd*, 389 F. App'x 354 (5th Cir. 2010). "Section 11 imposes liability on issuers and other signatories of a registration statement that 'contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.'" *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 109 (2d Cir. 2011) (quoting 15 U.S.C. § 77k(a)). "Section 12(a)(2) imposes liability under similar circumstances with respect to, *inter alia*, prospectuses." *Id.* (citing 15 U.S.C. § 77l(a)(2)). Here, for the reasons outlined in the Cobalt Defendants' Motion, Plaintiffs have failed to allege even one actionable misstatement or omission in the Offering

Materials. Accordingly, the Securities Act claims brought against the Underwriter Defendants for violations of Sections 11 and 12(a)(2) fail as a matter of law and must be dismissed.

## II.     SECURITIES ACT CLAIMS PREMISED ON THE FEBRUARY 2012 OFFERING ARE ALSO BARRED BY THE STATUTE OF REPOSE

Section 13 of the Securities Act states that "[i]n no event shall any such action be brought to enforce a liability created under section 11 or section 12(a)(1) more than three years after the security was bona fide offered to the public, or under section 12(a)(2) more than three years after the sale." 15 U.S.C. § 77m. Under this provision, the "bona fide offering date" is the issuance date for the relevant prospectus supplement, *Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, 770 F. Supp. 2d 618, 623 (S.D.N.Y. 2011), which in this case is February 23, 2012. (CAC ¶ 146.) This creates an insurmountable timing problem for Plaintiffs because the CAC was filed on May 1, 2015 – well beyond the three-year statute of repose. This alone bars Plaintiffs from asserting any Securities Act claims tied to the February 2012 Offering. Plaintiffs, moreover, cannot escape this conclusion by pointing to the filing of the original complaint on November 30, 2014, because, as discussed below, neither the so-called *American Pipe* tolling doctrine nor the relation back doctrine are available to toll a statute of repose.

### A.     There Can Be No Tolling of a Statute of Repose under *American Pipe*

In *American Pipe*, the Supreme Court held that "the commencement of a class action suspends the applicable statute of *limitations* as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class

9

action." 414 U.S. at 554 (emphasis added). Tolling, however, is not available to extend a statute of repose, such as Section 13. Unlike statutes of limitation, statutes of repose give rise to a substantive right, one which reflects a "judgment that defendants should 'be free from liability after the legislatively determined period of time, beyond which the liability will no longer exist and will not be tolled for any reason.'" *CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2183 (2014) (citation omitted); *see also Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991) (then-applicable three-year statute of repose for the Securities Exchange Act of 1934 establishes an outer limit that is "inconsistent with tolling . . . [b]ecause the purpose . . . is clearly to serve as a cutoff"). Consistent with this Supreme Court precedent, the Second Circuit recently ruled that the Securities Act's statute of repose is not subject to *American Pipe* tolling. *See Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 107-10 (2d Cir. 2013).[3]

The court in *IndyMac* considered whether putative class members could intervene in an action to revive Securities Act claims brought after the three-year statute of repose had expired. *Id.* at 102-03. Plaintiffs argued that the repose period was tolled under *American Pipe* with the initial filing of the class action. *Id.* The Second Circuit, however, disagreed. The court reasoned that because statutes of repose create substantive rights, they are "'subject only to legislatively created exceptions'" and not judicially derived

---

[3] In early 2014, the Supreme Court granted a writ of certiorari from the Second Circuit's ruling but subsequently dismissed the writ as improvidently granted, thereby leaving the Second Circuit's decision intact. *Pub. Emps.' Ret. Sys. of Miss. v. IndyMac MBS, Inc.*, 135 S. Ct. 42 (2014).

principles of equitable tolling. *Id.* at 106 (citation omitted). Because *American Pipe* tolling is an equitable doctrine rooted in the Supreme Court's decision of the same name, the Second Circuit explained, it could not be used to toll the Securities Act's statute of repose. *See id.* at 108-09, 112 (citing *Credit Suisse Sec. (USA) LLC v. Simmonds*, 132 S. Ct. 1414 (2012); *Holland v. Florida*, 560 U.S. 631 (2010)); *see also Lampf*, 501 U.S. at 363 (statutes of repose are not subject to equitable tolling).[4] The Fifth Circuit has yet to address the *IndyMac* holding. *See Hall v. Variable Annuity Life Ins. Co.*, 727 F.3d 372, 375 n.5 (5th Cir. 2013) (recognizing *IndyMac* decision but declining to rule on whether it concurred "[b]ecause the parties ha[d] not briefed this issue"). The Underwriter Defendants nevertheless submit that the Second Circuit's well-reasoned decision is consistent with Supreme Court precedent and should apply with equal force here.

Even before *IndyMac*, several courts had held that the rule of *American Pipe* cannot toll statutes of repose. *See Albano v. Shea Homes L.P.*, 254 P.3d 360 (Ariz. 2011), *answer to certified question conformed to by*, 662 F.3d 1120 (9th Cir. 2011); *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 995 F. Supp. 2d 291, 300-01 (S.D.N.Y. 2014); *Footbridge*, 770 F. Supp. 2d at 624-27; *Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, 886 F. Supp. 2d 328, 333-35 (S.D.N.Y. 2012); *Cacha v. Montaco, Inc.*, 554 S.E.2d 388, 393 (N.C. Ct. App.

---

[4] The Second Circuit added that even if *American Pipe* tolling was viewed as a legal doctrine derived from Federal Rule of Civil Procedure 23, which governs class actions, it still could not abridge the substantive rights that arise from a statute of repose without violating the Rules Enabling Act. *See IndyMac*, 721 F.3d at 109.

2001). By contrast, at least one district court from the Fifth Circuit has reached the opposite conclusion. *See In re BP p.l.c. Sec. Litig.*, No. 4:13-cv-1393, 2014 WL 4923749, at *4 (S.D. Tex. Sept. 30, 2014). In *BP*, the district court rejected *IndyMac* on the theory that *American Pipe* "is not really a 'tolling' doctrine at all." *Id.* Instead, the court stated, it "treats a putative class action as a 'pre-filing' of all covered individual claims" by unnamed class members "within the limitations and repose periods." *Id. BP*, however, was wrongly decided. It is an outlier at odds with the weight of other cases on the subject and is squarely inconsistent with Supreme Court authority.[5] *See IndyMac*, 721 F.3d at 107-10; *Albano*, 254 P.3d 360; *Footbridge*, 770 F. Supp. 2d at 624-27; *Plumbers*, 886 F. Supp. 2d at 333-35; *Cacha*, 554 S.E.2d at 393.

Even if, however, the *BP* court were correct on the law, the facts here are distinguishable such that it does not mandate a similar holding. As discussed below, unlike in *BP*, the original plaintiffs here did not have standing to assert claims based on the February 2012 Offering. Therefore, there was no valid "pre-filing."[6] Regardless of its applicability to statutes of repose, *American Pipe* tolling is unavailable when the original plaintiffs lack standing. *See New Jersey Carpenters Health Fund v. DLJ Mortg. Capital,*

---

[5] Numerous courts, including the Supreme Court, have described *American Pipe* tolling as equitable. *See Young v. United States*, 535 U.S. 43, 49 (2002); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 n.3 (1990); *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322-23 (2d Cir. 2004); *Bridges v. Dep't of Maryland State Police*, 441 F.3d 197, 211 (4th Cir. 2006); *Youngblood v. Dalzell*, 925 F.2d 954, 959 n.3 (6th Cir. 1991).

[6] Moreover, under the Rules Enabling Act, Federal Rule of Civil Procedure 23 "[cannot] abridge, enlarge or modify any substantive right." *IndyMac*, 721 F.3d at 109 (quoting 28 U.S.C. § 2072(b)); *see infra* p. 13.

*Inc.*, No. 08 Civ. 5653(PAC), 2010 WL 6508190, at *2 (S.D.N.Y. Dec. 15, 2010); *In re Puda Coal Sec. Inc. Litig.*, No. 11 Civ. 2598(KBF), 2013 WL 5493007, at *11-14 (S.D.N.Y. Oct. 1, 2013).

### B.    Plaintiffs Cannot "Relate Back" to the Filing of the Original Complaint

Federal Rule of Civil Procedure 15(c) states, in relevant part, that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). This Federal Rule, however, cannot be used as a vehicle for extending or otherwise circumventing the time limitation imposed by a statute of repose.

As the Second Circuit explained in *IndyMac*, the Rules Enabling Act vests the Supreme Court with "'the power to prescribe general rules of practice and procedure,' including the Federal Rules of Civil of Procedure." *IndyMac*, 721 F.3d at 109 (quoting 28 U.S.C. § 2072(a)). This authority, however, comes with an important caveat: the Court, in discharging its rule-making duties, "[cannot] abridge, enlarge or modify any substantive right." *Id.* (quoting 28 U.S.C. § 2072(b)). Because statutes of repose create substantive rights, it follows that Rule 15(c) cannot be used to limit these rights without violating the Rules Enabling Act. *See, e.g.*, *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 23 F. Supp. 3d 203, 208 (S.D.N.Y. 2014) (new plaintiffs could not extend statute of repose by relating back to an original complaint under Rule 15(c)); *Police & Fire Ret. Sys. of Detroit v. Goldman, Sachs & Co.,* No. 10 Civ. 4429(MGC), 2014 WL 1257782, at *9 (S.D.N.Y. Mar. 27, 2014) (relying on *IndyMac* and Rules Enabling Act to hold that

plaintiff cannot use relation back to add new claims to its own complaint that would otherwise be barred by statute of repose).[7] For this reason, the relation back doctrine is of no help to Plaintiffs here.

### C.   Even if Relation Back Were Available, Plaintiffs Cannot Lay Claim to This Right Because the Original Plaintiffs Did Not Have Standing

But even if relation back were available in theory (and it is not), claims brought in an amended complaint cannot relate back to an original complaint if, as in this case, the original claims were brought by a plaintiff who lacked standing. *See Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282-83 (5th Cir. 1981) (holding that where original plaintiff did not have standing to assert claim against the defendants it could not then rely on Rule 15 to amend complaint to add new plaintiffs who had standing); *In re Magnum Hunter Res. Corp. Sec. Litig.*, No. 14-2581-cv, 2015 WL 3852561, at *4 (2d Cir. June 23, 2015) (where original plaintiff failed to allege that it purchased securities traceable to an offering, Securities Act claims could not relate back to original complaint and thus were untimely).[8] And that is precisely the situation Plaintiffs find themselves in here.

---

[7] *See also Tindol v. Boston Hous. Auth.*, 487 N.E.2d 488, 490-91 (Mass. 1986) (prohibiting relation back after period of repose had expired); *Resolution Trust Corp. v. Olson*, 768 F. Supp. 283, 285 (D. Ariz. 1991) (relation back applicable only to statutes of limitations, not statutes of repose); *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d 677, 684-85 (D.N.J. 2007) (Rules Enabling Act bars relation back where statute of limitations defines substantive rights).

[8] *See also IndyMac*, 721 F.3d at 110-11 (new plaintiffs' claims were outside of the statute of repose and could not relate back to timely claim of original plaintiff who lacked standing); *In re Direxion Shares ETF Trust*, 279 F.R.D. 221, 237 (S.D.N.Y. 2012) (where original plaintiff lacked standing on certain securities, new plaintiffs' claims on those *(cont'd)*

Plaintiffs St. Lucie County Fire District Firefighters' Pension Trust Fund ("St. Lucie") and Fire and Police Retiree Health Care Fund, San Antonio ("San Antonio") filed the original complaint on November 30, 2014, with San Antonio alleging that it had purchased shares of Cobalt common stock on March 26, 2013 and December 9, 2013. (*See* ECF No. 1-2, at 3.)[9] These securities, by definition, could not have been purchased in the February 2012 Offering and cannot be traceable to that Offering either. At the time of these two secondary market transactions, Cobalt stock already had been issued through three unrelated public offerings – the Company's 2009 initial public offering, an April 2011 offering and the January 2013 Offering (CAC ¶¶ 62, 136, 160).

This sequence of events is crucial, for "[w]hen a company has issued shares in multiple offerings under more than one registration statement . . . a greater level of factual specificity will be needed before a court can reasonably infer that shares purchased in the aftermarket are traceable to a particular offering." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013). Indeed, "aftermarket

_____
*(cont'd from previous page)*
securities could not relate back); *Weisskopf v. United Jewish Appeal-Federation of Jewish Philanthropies of N.Y., Inc.*, 889 F. Supp. 2d 912, 928-29 (S.D. Tex. 2012) ("Rule 15 does not permit a plaintiff who lacks standing to cure this defect by adding additional parties through amendment."); *Levin v. Minn. Life Ins. Co.*, No. H-07-1330, 2008 WL 2704772, at *6 (S.D. Tex. July 7, 2008) ("A plaintiff cannot rely on the amendment procedure under Fed. R. Civ. P. 15 to substitute a new plaintiff in order to cure the lack of subject matter jurisdiction.") (citation omitted).

[9] St. Lucie is only alleged to have purchased debt securities, and therefore did not purchase securities traceable to the February 2012 Offering of common stock. (*See* ECF No. 1-1, at 3; CAC at 126-27.)

purchasers usually will not be able to trace their shares back to a particular offering" unless "plaintiffs [can] allege facts from which [to] reasonably infer that their situation is different." *Id.* at 1107-08.[10]

San Antonio makes no attempt to trace its 2013 purchases to the February 2012 Offering. (*See* ECF No. 1 ¶¶ 18, 186, 202 (original complaint); *see also* CAC ¶¶ 19, 296, 311-13.) San Antonio therefore did not have standing to assert Securities Act claims in relation to this Offering when it filed the original complaint, thereby precluding Plaintiffs from using relation back principles.

Accordingly, Defendants are entitled to an order (i) dismissing the CAC in its entirety against those Underwriter Defendants who are alleged to have participated only in the February 2012 Offering; and (ii) dismissing the CAC against all other Defendants to the extent that it purports to bring Securities Act claims relating to the February 2012 Offering.[11]

## III.   SECURITIES ACT CLAIMS PREMISED ON THE NAZAKI ALLEGATIONS ARE BARRED BY THE STATUTE OF LIMITATIONS

Separately, most of Plaintiffs' Securities Act claims under Sections 11, 12(a)(2) and 15 are barred by the Securities Act's one-year statute of limitations. Under Section

---

[10] *See also Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 500 (5th Cir. 2005) ("Congress conferred standing on those who actually purchased the tainted stock, not on the whole class of those who possibly purchased tainted shares.").

[11] The complaint filed in a second case that has been consolidated in this action, *Neuman v. Cobalt International Energy, Inc.*, has no bearing on the statute of repose analysis. Unlike in the action brought by *St. Lucie* and *San Antonio*, the plaintiff in *Neuman* did not sue the Underwriter Defendants or even raise Securities Act claims against the defendants named therein. *See* No. 4:14-cv-3488, ECF No. 1, 1-1 (S.D. Tex. Dec. 5, 2014).

13 of the Act, such claims must be brought "'within one year after the discovery of the untrue statement or . . . omission, or after such discovery should have been made by the exercise of reasonable diligence.'" *Sudo Props., Inc. v. Terrebonne Parish Consol. Gov't*, 503 F.3d 371, 376 (5th Cir. 2007) (quoting 15 U.S.C. § 77m). In the Fifth Circuit, this one-year period begins to run when a purchaser had "inquiry notice" of the alleged wrongdoing – that is, when a "reasonable investor of ordinary intelligence would have discovered the information and recognized it as a storm warning." *Id.; see also Firefighters Pension & Relief Fund v. Bulmahn*, 53 F. Supp. 3d 882, 899 (E.D. La. 2014) (same). "The requisite knowledge . . . is merely that of the *facts* forming the *basis* of [the] cause of action . . . not that of the existence of the cause of action itself." *Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir. 1988). Although this analysis may at times be "fact-intensive," when "the facts needed for determination of when a reasonable investor of ordinary intelligence would have been aware of the existence of a wrongdoing can be gleaned from the complaint and agency filings that are integral to the complaint, resolution of the issue on a motion to dismiss is appropriate." *Bulmahn*, 53 F. Supp. 3d at 900.

Dismissal is more than appropriate here. The CAC's allegations, on their face, demonstrate that Plaintiffs had inquiry notice of the purported fraud underlying the bulk of their FCPA-related claims – i.e., those relating to Nazaki – no later than April 2012. Specifically, as catalogued in Plaintiffs' own pleading:

- On May 20, 2010, "reports surfaced that Cobalt's partners, Nazaki and Alper, were controlled by Angolan government officials." (CAC ¶ 75; *see also* Ex. 7, at 1.)

17

- On July 30, 2010, de Morais published a report allegedly "indicat[ing] that three top Angolan officials may be the true owners of Nazaki." (CAC ¶ 77; *see also* Ex. 1, at 18-20.)

- On March 1, 2011, Cobalt disclosed that allegations had been made regarding "a connection between senior Angolan government officials and Nazaki." (CAC ¶ 79; *see also* Ex. 4-2, at 47-48.)

- On March 11, 2011, Cobalt announced that the SEC had commenced an informal inquiry and that Cobalt had contacted the DOJ regarding the foregoing allegations. (CAC ¶ 80; Ex. 5, at 1.)

- On February 21, 2012, Cobalt disclosed that the SEC and DOJ had commenced formal investigations regarding Nazaki's alleged connections to senior Angolan officials. (CAC ¶ 93; Ex. 6-2, at 50.)

- And on April 15, 2012, the *Financial Times* published two articles that allegedly "revealed for the first time that Vicente and Kopelipa *admitted* that they, along with Dino, were the true owners of Nazaki." (CAC ¶ 95; *see also* Ex. 2, at 1; Ex. 3, at 1-2.)

Plaintiffs want the Court to rule that their Securities Act claims are timely while, at the same time, crediting the foregoing allegations as being supportive of Securities Act claims. But Plaintiffs cannot have it both ways. If, as Plaintiffs contend, the articles and government investigations rendered Cobalt's statements false and misleading, then it follows that those same articles and investigations were sufficient to "'alert a reasonable investor to the possibility of fraudulent statements or omissions in his securities transactions.'" *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d. 364, 384 (S.D. Tex. 2011) (quoting *Snellings*, 841 F.2d at 607).[12] The bottom line is that these public

---

[12] *See also Bulmahn*, 53 F. Supp. 3d at 899 (explaining that a "reasonable investor" is "presumed to have read prospectuses, quarterly reports and other information relating to their investments" and assumed to have knowledge of "publicly available news articles and analyst's reports").

18

disclosures spoke directly to the precise issue underlying Plaintiffs' Nazaki-related claims. As such, they represent "'storm warnings' which would alert a reasonable investor to the possibility of fraudulent statements or omissions in his securities transactions" – i.e., warnings which Plaintiffs were not free to ignore. *Id.* at 383–84 (noting that "disclosures in the media" and "an SEC investigation" can constitute storm warnings); s*ee also In re Magnum Hunter*, 2015 WL 3852561, at \*3-4 (claims barred by limitations where "public disclosures . . . would have led a reasonably diligent plaintiff to have discovered the facts underlying his claim.").

But that is exactly what Plaintiffs did here. Given the foregoing disclosures, Plaintiffs had inquiry notice of Nazaki's purported ties to Angolan government officials no later than April 2012. As such, the statute of limitations period for the alleged misstatements and omissions concerning Nazaki began to run (i) no later than April 2012 for claims based on the February 2012 Offering Materials; (ii) and no later than the SEC filing dates for Offering Materials relating to the December 2012, January 2013 and May 2013 Offerings. It therefore follows that Plaintiffs' time period for asserting Securities Act claims linked to these Offerings expired long before the filing dates for the original (November 30, 2014) and currently operative (May 1, 2015) complaints. Accordingly, Plaintiffs' Securities Act claims premised on the Nazaki-related statements in these four Offerings are barred by Section 13's statute of limitations.

**IV.   STOCK PURCHASES TRACEABLE TO THE FEBRUARY
2012 OFFERING CANNOT SUPPORT A SECURITIES ACT
CLAIM IF THEY WERE MADE AFTER APRIL 30, 2013**

The Court need not reach this issue as the claims related to the February 2012

Offering are barred by the statute of repose. *See infra* Point II. However, even if they

were not barred, any claims based on purchases made after April 30, 2013 must be

dismissed for failure to allege reliance. Section 11 specifies that a plaintiff must plead

and prove reliance if it "acquired the security after the issuer has made generally

available to its security holders an earning statement covering a period of at least twelve

months beginning after the effective date of the registration statement." 15 U.S.C. §

77k(a). In this case, Cobalt issued earning statements that collectively covered a twelve-

month period after the effective date for the February 2012 Offering, with the last

statement being made available on April 30, 2013.[13] More specifically, Cobalt issued the

following reports:

| SEC Filing | Period Covered | Date Available |
|---|---|---|
| Q2 2012 Form 10-Q | April 1, 2012-June 30, 2012 | July 31, 2012 |
| Q3 2012 Form 10-Q | July 1, 2012-September 30, 2012 | October 30, 2012 |
| 2012 Form 10-K | January 1, 2012-December 31, 2012 | February 26, 2013 |
| Q1 2013 Form 10-Q | January 1, 2013-March 31, 2013 | April 30, 2013 |

---

[13] An "earning statement" need not be a single document. Any "combination of reports" covering a twelve-month period, which can include Forms 10-Q and 10-K, may be considered an "earning statement." 17 C.F.R. § 230.158(a)(2)(i) (2008).

Viewed together, these disclosures cover a twelve-month period running from April 1, 2012 to March 31, 2013. Thus, even if Plaintiffs' claims were timely and they could plead that they bought Cobalt common stock traceable to the February 2012 Offering (and they cannot), they still would have to allege actual reliance on the Offering Materials for any purchases made after April 30, 2013, when the first quarter 2013 Form 10-Q was made available.

The CAC, however, does not purport to allege that Plaintiffs – or any other member of the putative class for that matter – relied on the registration statement or prospectus for the February 2012 Offering. To the contrary, the CAC affirmatively disclaims any attempt to plead any form of reliance for Plaintiffs' Securities Act claims, on the (erroneous) theory that "reliance is not an element of [such] claims." (CAC ¶ 214.) Accordingly, any purchases of securities traceable to the February 2012 offering must be dismissed if they occurred after April 30, 2013.[14]

## V.    COUNT V MUST BE DISMISSED FOR LACK OF STANDING AGAINST THE UNDERWRITER DEFENDANTS

Under Section 12(a)(2), plaintiffs may only bring suit against "statutory sellers," a term that has been interpreted by the Supreme Court to include only (i) "the person who actually passes title to the buyer" or (ii) "'the person who successfully solicits the purchase.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 871 (5th Cir. 2003) (quoting *Pinter v. Dahl*, 486 U.S. 622, 647 (1988)). Significantly, the statute "imposes liability on

---

[14] All named Plaintiffs, with the exception of St. Lucie, purchased Cobalt common stock after April 30, 2013. Plaintiffs have yet to establish which of these purchases, if any, are traceable to the February 2012 Offering. (*See* CAC at 120-32; ECF No. 74-1.)

only the buyer's immediate seller; remote purchasers are precluded from bringing actions against remote sellers." *Pinter*, 486 U.S. at 644 n.21. Further, liability attaches only if plaintiffs bought their securities directly in a public offering, as opposed to in the aftermarket. *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 570, 577 (1995) (holding that Section 12(a)(2) does not apply to a private contract for a secondary market sale of securities); *accord Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001). In this case, Plaintiffs have not pled facts demonstrating that any – let alone all – of the Underwriter Defendants were "statutory sellers."

First, the CAC does not sufficiently plead that the Underwriter Defendants passed title to a named Plaintiff in any of the five Offerings. To be sure, Plaintiffs allege, without factual support, that "[t]he Underwriter Defendants transferred title to Cobalt stock and convertible notes to Plaintiffs and/or members of the Class who purchased such securities in the Offerings." (CAC ¶ 313; *see also id.* ¶¶ 312, 315-16.) But this conclusory and ambiguous assertion, on its face, falls short of the requirements in *Pinter*. By using the conjunction "and/or," Plaintiffs have alleged only that one of them *might* have purchased directly from an Underwriter Defendant, not that any of them did so. And in fact, this allegation can be read to support an alternative construction – namely, that certain unspecified Underwriter Defendants sold Cobalt securities in the Offerings to putative class members or to "other underwriters and/or broker-dealers that sold those securities as agents for the Underwriter Defendants" (*see* CAC ¶ 313), *but not* to any named Plaintiff. *See Black's Law Dictionary* 86 (West 6th ed. 1990) ("'And/or' means either or both of"); Oxford English Dictionary (defining "and/or" as "a formula denoting that the items

22

joined by it can be taken either together or as alternatives"), *available at* http://www.oed.com.

Indeed, the CAC does not identify which Plaintiffs (if any) purchased directly in an Offering, nor does it allege from which of the thirteen Underwriter Defendants the securities were purportedly purchased – a fatal infirmity. *See, e.g.*, *DeMaria v. Andersen*, 153 F. Supp. 2d 300, 307 (S.D.N.Y. 2001) (dismissing Section 12 claim against underwriters where "complaint [did] not aver that any defendant was the immediate seller to any named plaintiff" or "actively solicited any named plaintiff in connection with the sale" of relevant securities), *aff'd*, 318 F.3d 170 (2d Cir. 2003).[15] This omission is particularly significant since it concerns information, regarding direct sales, that would easily be available to Plaintiffs if they had actually bought from an Underwriter Defendant in an Offering. Given the CAC's conspicuous silence on this point, Plaintiffs have not pled that any of the Underwriter Defendants were direct sellers under Section 12(a)(2). *See In re Century Aluminum Co. Sec. Litig.*, 749 F. Supp. 2d 964, 975-77 (N.D. Cal. 2010) (dismissing Section 12 claim against underwriters where one construction of complaint was that plaintiffs purchased securities in the aftermarket); *Griffin v. PaineWebber, Inc.*, No. 99 CIV. 2292(VM), 2001 WL 740764, at *2 (S.D.N.Y. June 29, 2001) (for standing purposes, it is not sufficient to allege that other class members purchased shares directly from underwriters).

---

[15] *See also Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 900-01 (4th Cir. 2014) (affirming dismissal of Section 12(a)(2) claims against two underwriters where plaintiffs failed to plead factual support for conclusion that either underwriter was a direct seller).

Second, Plaintiffs also fall short in pleading solicitation – an act which requires the seller to, "at a minimum, directly communicate with the buyer." *Rosenzweig*, 332 F.3d at 871. In this regard, Plaintiffs claim that the Underwriter Defendants "solicited the purchase of Cobalt stock and convertible notes in the Offerings by Plaintiffs and/or members of the Class who purchased in the Offerings by means of the Prospectuses." (CAC ¶ 313, *see also id.* ¶ 311.) But this statement, with its own use of the conjunction "and/or," suffers from the same defect as Plaintiffs' "direct seller" allegation, because it can be interpreted to mean that the Underwriter Defendants solicited putative class members but not the named Plaintiffs. The allegations also leave open the possibility that some of the Underwriter Defendants did not make or solicit any sales at all. In any event, pointing to a defendant's purported use of a prospectus, without more, is not enough to allege solicitation. *See Rosenzweig*, 332 F.3d at 871 (finding no Section 12 standing against issuer where plaintiff alleged only that defendant had signed registration statement).[16] Yet that is all Plaintiffs offer here: there is no allegation of direct contact with Plaintiffs (or any other member of the potential class), much less contact by a specific Underwriter Defendant that resulted in the purchase of Cobalt securities by any Plaintiff in one of the Offerings. This complete lack of detail mandates dismissal. *See In re UBS AG Sec. Litig.*, No. 07 Civ. 11225(RJS), 2012 WL 4471265, at *27 (S.D.N.Y.

---

[16] *See also Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1216 (1st Cir. 1996) ("[N]either involvement in preparation of a registration statement or prospectus nor participation in 'activities' relating to the sale of securities, standing alone, demonstrates the kind of relationship between defendant and plaintiff that could establish statutory seller status."), *abrogated on other grounds by* 15 U.S.C. § 78u-4(b)(2).

Sept. 28, 2012) (denying claims of solicitation where there were no allegations regarding "the manner in which the underwriters solicited the sale of securities or whether any of its solicitations were actually successful"), *aff'd sub nom, Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014).

## VI.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST GOLDMAN, SACHS & CO. FOR CONTROL PERSON LIABILITY

For the reasons outlined in the Corporate Sponsor Defendants' Motion, which are adopted and incorporated by reference herein, Plaintiffs also have failed to plead an actionable claim of control person liability against Goldman, Sachs & Co. under Section 15. Specifically, Plaintiffs not only have failed to plead a primary violation of Section 11 by a controlled person or entity (which is a condition precedent to Section 15 liability), they have alleged no facts suggesting that Goldman, Sachs & Co. (which is alleged to have merely been one of many underwriters) had the actual power to, and in fact did, control the alleged primary violators of Section 11. Accordingly, Count IV of the CAC must be dismissed against Goldman, Sachs & Co. (*See* CS Motion at 4 n.1, 7-16.)

## CONCLUSION

For the foregoing reasons, as well as those outlined in the Cobalt Defendants' Motion and the Corporate Sponsor Defendants' Motion, the Underwriter Defendants respectfully request that the Court dismiss the CAC in its entirety with prejudice.

25

Dated: June 30, 2015

Respectfully submitted,

*/s/ Charles W. Schwartz*
Charles W. Schwartz
Fed. Bar No. 603
Texas Bar No. 17861300
Email: charles.schwartz@Skadden.com
Skadden, Arps, Slate,
   Meagher & Flom LLP
1000 Louisiana, Suite 6800
Houston, Texas 77002
Telephone: (713) 655-5160
Facsimile: (713) 483-9160
ATTORNEYS FOR UNDERWRITER
DEFENDANTS

*Of Counsel*
Jay B. Kasner
*(Admitted Pro Hac Vice)*
Email: jay.kasner@Skadden.com
Scott D. Musoff
*(Admitted Pro Hac Vice)*
Email: scott.musoff@Skadden.com
Skadden, Arps, Slate,
   Meagher & Flom LLP
Four Times Square
New York, New York 10036-6518
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 30, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to the counsel who have registered with this court.


*/s/ Charles W. Schwartz*

Charles W. Schwartz

**APPENDIX A**

| Offering | Underwriter Defendant(s) |
|---|---|
| February 23, 2012 Common Stock Offering | • Goldman, Sachs & Co. <br> • Morgan Stanley & Co. LLC <br> • Credit Suisse Securities (USA) LLC <br> • Citigroup Global Markets Inc. <br> • J.P. Morgan Securities LLC <br> • Tudor, Pickering, Holt & Co. Securities, Inc. <br> • Deutsche Bank Securities Inc. <br> • RBC Capital Markets, LLC <br> • UBS Securities LLC <br> • Howard Weil Incorporated <br> • Stifel, Nicolaus & Company, Incorporated <br> • Capital One Southcoast, Inc. |
| December 12, 2012 Convertible Senior Notes Offering | • Morgan Stanley & Co. LLC <br> • Goldman, Sachs & Co. |
| January 16, 2013 Common Stock Offering | • Morgan Stanley & Co. LLC <br> • Citigroup Global Markets Inc. |
| May 8, 2013 Common Stock Offering | • Citigroup Global Markets Inc. |
| May 8, 2014 Convertible Senior Notes Offering | • Goldman, Sachs & Co. <br> • RBC Capital Markets, LLC <br> • Credit Suisse Securities (USA) LLC <br> • Lazard Capital Markets LLC <br> • Citigroup Global Markets Inc. |

(*See* CAC ¶¶ 28-33.)