UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE COBALT INTERNATIONAL ENERGY, INC. SECURITIES LITIGATION | LEAD CASE NO. 4:14-cv-03428 |

**THE COBALT DEFENDANTS'
RESPONSE TO NOTICE OF SUPPLEMENTAL AUTHORITY**

The Cobalt Defendants file this Response to Plaintiffs' October 7, 2015 Notice of Supplemental Authority, Dkt. No. 99 ("Notice") to address the case discussed in the Notice, *Marcus v. J.C. Penney Co., Inc.*, No. 6:13-CV-736-MHS-KNM, 2015 WL 5766870 (E.D. Tex. Sept. 29, 2015) (Schneider, J.) (adopting report and recommendation of Mitchell, Mag. J.). Contrary to Plaintiffs' assertions, *Marcus* does nothing to overcome the Cobalt Defendants' Motion to Dismiss, Dkt. No. 83 (the "Motion") Plaintiffs' Amended Class Action Complaint, Dkt. No. 72 (the "CAC").

First, in claiming that the Cobalt Defendants "argued that the alleged misstatements were not 'literally false' and should be judged on their 'literal truth,'" without acknowledging that literally true statements can be misleading, *see* Notice 1 (citing *Marcus*, 2015 WL 5766870, at *1), Plaintiffs distort both the Motion and the Cobalt Defendants' reply brief, Dkt. No. 98 (the "Reply"). In the Motion, the Cobalt Defendants expressly argued that the challenged statements were neither false nor misleading—and appropriately so, given that the CAC repeatedly attacked the truth of the

1

challenged statements in addition to calling them misleading. *See, e.g.*, CAC ¶ 128 ("Defendants' representations were materially *false* and misleading and omitted material facts . . . .") (emphasis added); *id.* ¶ 218 ("Cobalt and other Defendants made a series of materially *untrue* statements and omissions of material facts . . . .") (emphasis added). When Plaintiffs all but conceded the literal truth of the challenged statements in their opposition brief (the "Opposition"), the Cobalt Defendants rightly focused the Reply on whether, in context, any of the challenged statements or omissions were misleading to reasonable investors. *See* Reply 16 (pointing out that the Opposition "mount[ed] no serious challenge to the literal truth of the challenged statements," focusing instead on "characterizing the statements as misleading and omitting material facts"); *see also id.* at 16–31, 38–41, 54–64. Against this backdrop, Plaintiffs' insistence that the Cobalt Defendants' Motion and Reply challenge only the literal truth of the challenged statements is as perplexing as it is incorrect.

Equally wrong is Plaintiffs' claim that a sentence describing "other companies" in the present tense in an FCPA risk disclosure in Cobalt's 2012, 2013, and 2014 10-Ks renders misleading Cobalt's past-tense statement that its familiarity with Nazaki and Alper *was* limited. *See* Notice 2 (claiming that Cobalt "categorized Nazaki and Alper as 'companies with whom we *are* unfamiliar'") (emphasis added by Plaintiffs). That argument rests on precisely the kind of cherry picking and selective editing that plagued Plaintiffs' CAC and Opposition, which even a cursory review of the full FCPA risk disclosure makes clear:

> In connection with entering into our RSAs for Blocks 9 and 21 offshore Angola, two Angolan-based E&P companies were assigned as part of the contractor group by the Angolan government. We had not worked with either of these companies in the past, and, therefore, our familiarity with these companies was limited. In the fall of 2010, we were made aware of allegations of a connection between senior Angolan government officials and one of these companies, Nazaki Oil and Gáz, S.A. ("Nazaki"), which is a full paying member of the contractor group. In March 2011, the SEC commenced an informal inquiry into these allegations. To avoid non-overlapping information requests, we voluntarily contacted the U.S. Department of Justice ("DOJ") with respect to the SEC's informal request and offered to respond to any requests the DOJ may have. Since such time, we have been complying with all requests from the SEC and DOJ with respect to their inquiry. In November 2011, a formal order of investigation was issued by the SEC related to our operations in Angola. We are fully cooperating with the SEC and DOJ investigations, have conducted an extensive investigation into these allegations and believe that our activities in Angola have complied with all laws, including the FCPA. We cannot provide any assurance regarding the duration, scope, developments in, results of or consequences of these investigations.
>
> *In the future, we may be partnered with other companies with whom we are unfamiliar.* Violations of the FCPA may result in severe criminal or civil sanctions, and we may be subject to other liabilities, which could negatively affect our business, operating results and financial condition. In addition, the government may seek to hold us liable for successor liability FCPA violations committed by companies in which we invest or that we acquire.

Mot. Ex. 13, 2/21/12 10-K, 50–51 (Dkt. No. 85-4) (emphasis added); *accord* Mot. Ex. 29, 2/26/13 10-K, 57 (Dkt. No. 86-2); Mot. Ex. 47, 2/27/14 10-K, 55 (Dkt. No. 87-4). When viewed in context, the disclosure simply does not reflect any characterization of Cobalt's familiarity with Nazaki or Alper as of 2012, 2013, or 2014.

<u>Second</u>, like the Opposition, *Marcus* fails to recognize that the PSLRA's safe harbor protects forward-looking statements when either of two disjunctive prongs is met, and only the second depends on a lack of actual knowledge. *Compare Marcus*, 2015 WL

5766870, at *2 ("The safe harbor is inapplicable when Plaintiffs adequately allege that defendants actually knew their statements were misleading at the time they were made."), *with* 15 U.S.C. § 78u–5(c)(1)(A)–(B) (2012) (immunizing defendants from liability when either "(A) the forward-looking statement is—(i) identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement; or (ii) immaterial; *or* (B) the plaintiff fails to prove that the forward-looking statement . . . was made with actual knowledge . . . that the statement was false or misleading") (emphasis added).  Neither *Southland* nor *Nathenson* holds otherwise.  *See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 371 (5th Cir. 2004) ("The safe harbor has two *independent* prongs:  one focusing on the defendant's cautionary statements and the other on the defendant's state of mind.") (emphasis added); *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 409 (5th Cir. 2001) (noting, in holding that the PSLRA does not eliminate severe recklessness as a basis for scienter, that certain PSLRA provisions specify a different state of mind, such as the actual knowledge required by the safe harbor's *second* prong, 15 U.S.C. § 78u–5(c)(1)(B)).  To the extent the later-decided *Lormand v. US Unwired, Inc.* suggests actual knowledge is relevant to the first prong, *see* 565 F.3d 228, 243 (5th Cir. 2009), this Court "is bound by *Southland*."  *See* Reply 60 n.60 (quoting *Hopson v. MetroPCS Commc'ns, Inc.*, No. 3:09-CV-2392-G, 2011 WL 1119727, at *18 n.19 (N.D. Tex. Mar. 25, 2011)).  But even if that were not the case, Plaintiffs have alleged no particularized facts showing any Cobalt Defendant actually knew any challenged statement was false when made.  *See* Mot. 47–49; Reply 63–64.

Third, the statements that the news report attributed to the CEO in *Marcus* bear no resemblance whatsoever to the allegations in the source materials on which the CAC relies. In *Marcus*, CNBC.com published an article reporting that J.C. Penney's CEO made particular statements at an investor conference. *See* 2015 WL 5766870, at *2. The defendants argued that those allegedly misleading statements could not be attributed to the CEO, "cit[ing] to cases regarding confidential witnesses ["CWs"] to support the conclusion that Plaintiffs must plead that the source is credible." *Id.* at *2 n.4. The court acknowledged that "[t]his is true when the source is a [CW] whose credibility is unknown" but deemed the rule inapplicable because the case involved not a CW "but rather an established news source alleging a very specific statement"—"Plaintiffs allege that [the CEO] made statements at an investor meeting and the next day CNBC, a well-known news source, reported specific statements that were made." *Id.* The court held that the plaintiffs had adequately pleaded that the CEO made the statements that CNBC reported he made. *Id.* at *2.

Here, Plaintiffs do not rely on news reports to allege that a Cobalt Defendant made a particular statement. Instead, Plaintiffs purport to plead "facts" about Nazaki and Alper based on allegations in articles and blog posts that rely on unnamed sources "whose credibility is unknown." *Id.* at *2 n.4. Because they lack the particularity and detail necessary to indicate their reliability, the allegations in these source materials do not satisfy the PSLRA. *See* Mot. 23–25; Reply 12. Nothing in *Marcus* suggests otherwise.

Finally, nothing in *Marcus* salvages Plaintiffs' deficient loss causation allegations. In *Marcus*, the plaintiffs alleged that news JC Penney was "looking to build a bigger

liquidity buffer" corrected JC Penney's statement just two weeks earlier that it had adequate liquidity, partially revealing the company's dire financial situation and causing a stock price drop.  2015 WL 5766870, at *3.  The district court deemed this allegation adequate to plead a corrective disclosure.  *Id.*  The loss causation theory in *Marcus*—that a disclosure of JC Penney's need for liquidity corrected a statement two weeks earlier that the company's existing liquidity was adequate—shares no similarities with Plaintiffs' theory of loss causation here—that a variety of isolated and disconnected events constituted a series of partial disclosures that revealed some nebulous and undefined fraud related to Cobalt's Angolan business.  Far from "inviting the Court to conduct a detailed factual inquiry into whether the corrective disclosures revealed previously hidden truths," Notice 3, the Motion and Reply simply pointed out that Plaintiffs have not pleaded how the alleged corrective disclosures actually correct any prior Cobalt statement.  *See* Mot. 65–69; Reply 66–68.  This failure is evident from the face of the CAC and dooms Plaintiffs' attempt to plead loss causation.

For all of these reasons, *Marcus* provides no basis for denying the Cobalt Defendants' Motion.

Dated: October 28, 2015

Respectfully submitted,

BAKER BOTTS L.L.P.

*Of Counsel:*

By: */s/ David D. Sterling*
    David D. Sterling
    Attorney-In-Charge
    Texas Bar No. 19170000
    Federal I.D. No. 07079
    One Shell Plaza
    910 Louisiana St.
    Houston, Texas 77002
    Tel: (713) 229-1946
    Fax: (713) 229-7946
    david.sterling@bakerbotts.com

Danny David
Texas Bar No. 24028267
Russell Lewis
Texas Bar No. 24036968
Federal I.D. No. 569523
Amy Pharr Hefley
Texas Bar No. 24046046
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana St.
Houston, Texas 77002
Tel: (713) 229-1234
Fax: (713) 229-1522
danny.david@bakerbotts.com
russell.lewis@bakerbotts.com
amy.hefley@bakerbotts.com

*Attorneys for Defendants Joseph H. Bryant, James W. Farnsworth, John P. Wilkirson, Peter R. Coneway, Henry Cornell, Jack E. Golden, N. John Lancaster, Jon A. Marshall, Kenneth W. Moore, J. Hardy Murchison, Michael G. France, Kenneth A. Pontarelli, Scott L. Lebovitz, Myles W. Scoggins, D. Jeff van Steenbergen, Martin H. Young, Jr., William P. Utt, and Cobalt International Energy, Inc.*

### CERTIFICATE OF SERVICE

    I hereby certify that on this 28th day of October, 2015, a true and correct copy of the foregoing document was served by the Court's CM/ECF system on all counsel of record.

                                  */s/ Amy Pharr Hefley*
                                  Amy Pharr Hefley