United States District Court
Southern District of Texas
**ENTERED**
January 19, 2016
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

IN RE COBALT INTERNATIONAL       §
ENERGY, INC. SECURITIES          §          CIVIL ACTION NO. H-14-3428
LITIGATION                       §

## MEMORANDUM AND ORDER

This securities case is before the Court on the Motion to Dismiss [Doc. # 81]

filed by Defendants Goldman, Sachs & Co. ("Goldman Sachs"), Morgan

Stanley & Co. LLC, Credit Suisse Securities (USA) LLC, Citigroup Global Markets

Inc., J.P. Morgan Securities LLC, Tudor, Pickering, Holt & Co. Securities, Inc.,

Deutsche Bank Securities Inc., RBC Capital Markets, LLC, UBS Securities LLC,

Howard Weil Incorporated, Stifel, Nicolaus & Company, Incorporated, Capital One

Southcoast, Inc., and Lazard Capital Markets LLC (collectively, "Underwriter

Defendants").[1]   Also pending is the Motion to Dismiss [Doc. # 82] filed by

Defendants Goldman Sachs Group, Inc., Riverstone Holdings LLC ("Riverstone"),

First Reserve, and Kern Partners Ltd. ("Kern") (collectively together with The Carlyle

---

[1]      Plaintiffs GAMCO Global Gold, Natural Resources & Income Trust, GAMCO
Natural Resources, Gold & Income Trust, St. Lucie County Fire District Firefighters'
Pension Trust Fund, Fire and Police Retiree Health Care Fund, San Antonio, Sjunde
AP-Fonden, and Universal Investment Gesellschaft m.b.H. filed an Opposition [Doc.
# 89], and the Underwriter Defendants filed a Reply [Doc. # 97].

Group, L.P., "Control Defendants"), in which Defendant The Carlyle Group, L.P. ("Carlyle") joined [Doc. # 84].[2]  Cobalt International Energy, Inc. ("Cobalt"), Joseph H. Bryant, James W. Farnsworth, John P. Wilkirson, Peter R. Coneway, Henry Cornell, Jack E. Golden, N. John Lancaster, Jon A. Marshall, Kenneth W. Moore, J. Hardy Murchison, Michael G. France, Kenneth A. Pontarelli, Scott L. Lebovitz, Myles W. Scoggins, D. Jeff van Steenbergen, Martin H. Young, Jr., and William P. Utt (collectively, the "Cobalt Defendants") filed a separate Motion to Dismiss [Doc. # 83], to which Plaintiffs filed an Opposition [Doc. # 88], and the Cobalt Defendants filed a Reply [Doc. # 98].

The Court has reviewed the full record, including Plaintiffs' Consolidated Amended Class Action Complaint ("Complaint") [Doc. # 72].  Based on this review, and the application of relevant legal authorities, the Court **grants in part and denies in part** the pending Motions to Dismiss.

## I.    BACKGROUND

Cobalt is an exploration and production company that was formed in 2005 as a private company.  Defendant Joseph H. Bryant, Goldman Sachs, and Riverstone founded the company, which was incorporated in the state of Delaware.  Cobalt

---

[2]    Plaintiffs filed an Opposition [Doc. # 90], and the Control Defendants filed a Reply [Doc. # 95], in which Defendant Carlyle joined [Doc. # 96].

conducted an initial public offering ("IPO") of its shares in December 2009.  At the time of the IPO, Bryant was Cobalt's Chief Executive Officer ("CEO") and Chairman of Cobalt's Board of Directors.

In 2007, Cobalt entered into an agreement with Sonangol E.P. ("Sonangol"), the Angolan national oil company, to acquire a 40% interest in oil exploration Blocks 9, 20, and 21 in offshore Angola.  In 2009, the Angolan Parliament issued two decrees assigning an interest in the Blocks to Nazaki Oil & Gaz ("Nazaki"), Sonangol P&P, and Alper Oil, Limitada ("Alper").  In February 2010, Cobalt and these other companies signed Risk Services Agreements ("RSAs") with Sonangol.

On January 4, 2011, Cobalt filed a Registration Statement and Prospectus ("January 2011 Registration Statement") with the Securities and Exchange Commission ("SEC").  Based on this 2011 Registration Statement, Cobalt conducted, *inter alia*, a stock offering in late February 2012 ("February 2012 Stock Offering") and a bond offering in December 2012 ("2012 Bond Offering").

On March 10, 2011, Cobalt learned that the SEC was conducting an informal inquiry into allegations that there existed a connection between Nazaki and senior government officials in Angola.  The next day, Cobalt contacted the Department of Justice ("DOJ") regarding the same allegations.  Both the SEC and the DOJ began formal investigations into whether Cobalt had violated the Foreign Corrupt Practices

Act of 1977 ("FCPA").  The SEC investigation terminated in January 2015 with no recommendation for enforcement action against Cobalt.  The DOJ investigation remains ongoing.

Meanwhile, Cobalt drilled two exploration wells in the offshore Angola drilling region: Lontra on Block 20 and Loengo on Block 9.  Cobalt had no rights to gas discoveries and, instead, had rights only to any oil that was discovered in the Blocks. Ultimately, Lontra was found to contain a substantially higher percentage of gas than originally estimated, and drilling at Loengo failed to discover oil.

On November 30, 2014, Plaintiffs St. Lucie County Fire District Firefighters' Pension Trust Fund ("St. Lucie") and Fire and Police Retiree Health Care Fund, San Antonio ("San Antonio"), who each purchased Cobalt securities, filed a Complaint [Doc. # 1] alleging violations of the Securities Exchange Act of 1934 ("Exchange Act") and the Securities Act of 1933 ("Securities Act").  On December 5, 2014, Steven Neuman, a purchaser of Cobalt securities, filed a Complaint [Doc. # 1 in Civil Action No. H-14-cv-3488], alleging violations of the Securities Act and the Exchange Act.  By Order [Doc. # 67] entered March 3, 2015, the Court consolidated the two civil cases.  By Order [Doc. # 68] entered the same day, the Court appointed GAMCO Global Gold, Natural Resources & Income Trust and GAMCO Natural Resources, Gold & Income Trust (collectively, "GAMCO") as lead Plaintiffs in the consolidated cases.

On May 1, 2015, Plaintiffs filed their Consolidated Amended Class Action Complaint ("Complaint") [Doc. # 72].  Plaintiffs allege in Count I of their Complaint that Cobalt and its executives violated Section 10(b) of the Exchange Act and Rule 10b-5.  In Count II, Plaintiffs allege that Cobalt and its executives violated Section 20(a) of the Exchange Act.  Plaintiffs assert in Count III a claim under Section 11 of the Securities Act against Cobalt, its directors, and the Underwriter Defendants. In Count IV, Plaintiffs assert a claim against the Control Defendants under Section 15 of the Securities Act.  In Count V, Plaintiffs assert a claim against the Underwriter Defendants under Section 12(a)(2) of the Securities Act.

Defendants filed their Motions to Dismiss.  All Defendants seek dismissal of all claims against them.  The Motions to Dismiss have been fully briefed and are now ripe for decision.

## II.   APPLICABLE LEGAL STANDARDS

### A.   Pleading Standard for Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted.  *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).  The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true.  *Harrington*, 563

F.3d at 147.  The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012).  When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief.  *Iqbal*, 556 U.S. at 679.

Except as explained below regarding the special pleading requirements for two elements of a § 10(b) claim, these pleading requirements apply to Plaintiffs' claims in this case.  *See Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 210 (5th Cir. 2004) ("Section 11 only requires notice pleading under FED. R. CIV. P. 8 rather than the detailed pleading mandated by FED. R. CIV. P. 9(b) or the Private Securities Litigation Reform Act"); *In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658 (N.D. Tex. 2013).

### B.    Special Pleading Requirements for § 10(b) Claims

The basic elements of a § 10(b) claim involving publicly traded securities are: (1) a material misrepresentation or omission, (2) in connection with the purchase or sale of a security, (3) scienter by the defendant, (4) justifiable reliance by the plaintiff, (5) damages; and (6) a causal connection between the material misrepresentation and the loss, referred to a "loss causation."  *See Lormand v. US Unwired, Inc.*, 565

F.3d 228, 238-39 (5th Cir. 2009).  The Private Securities Litigation Reform Act ("PSLRA") imposes a heightened pleading requirement for two elements of a § 10(b) claim – the misrepresentation and scienter elements.  *See Owens v. Jastrow*, 789 F.3d 529, 535 (5th Cir. 2015) (citing 15 U.S.C. § 78u–4; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007)).  Specifically, "the PSLRA requires a plaintiff to identify each allegedly misleading statement with particularity and explain why it is misleading, the so-called 'particularity' requirement."  *Lormand*, 565 F.3d at 239 (citing 15 U.S.C. § 78u–4(b)(1)).

Additionally, the PSLRA requires a plaintiff to allege facts "giving rise to a strong inference that the defendant acted with the required state of mind."  *Id.* (quoting 15 U.S.C. § 78u–4(b)(2)).  To satisfy the pleading standard for the required "strong inference" of scienter, the allegations must create an inference of scienter that is "at least as compelling as any opposing inference one could draw from the facts alleged."  *Owens*, 789 F.3d at 536 (quoting *Tellabs*, 551 U.S. at 324).  "[A] tie favors the plaintiff."  *Id.* (quoting *Lormand*, 565 F.3d at 254).

## III.   **COBALT DEFENDANTS' MOTION TO DISMISS**

### A.   **"Foundational Infirmities"**

The Cobalt Defendants argue that the allegations in the Complaint should be "deeply discounted because of their dubious origins."  *See* Cobalt Defendants'

Motion, p. 20.   Specifically, the Cobalt Defendants ask the Court to disregard allegations based on information from confidential witnesses and various published articles.   The Cobalt Defendants argue also that Plaintiffs engaged in "selective editing" of the documents on which they base their claims.

Courts often discount allegations from confidential sources. *See, e.g., Ind. Elec. Workers' Pension Trust Fund v. Shaw Group, Inc.*, 537 F.3d 527, 535 (5th Cir. 2008). In this case, however, the confidential witnesses not identified by name are adequately identified in other ways and the basis for their knowledge is set forth in the Complaint. For example, two of the confidential witnesses are Cobalt's Chief Financial Officer ("CFO") and Executive Vice President from June 2009 to June 2010, and its Chief Information Officer ("CIO") from June 2012 to April 2014.   Another was the executive administrative assistant for Cobalt's West Africa division from April 2010 to March 2015, who reported to Richard Smith (at the relevant time, Cobalt's Country Manager for Angola and Vice President, International Business Development, Commercial and Finance) for her first two years at Cobalt,  and to Michael Drennon (Cobalt's Executive Vice President and General Manager Angola) throughout her tenure at Cobalt.  These witnesses may be confidential to the extent that their names are not included in the Complaint, but they are neither anonymous nor secret.  The

allegations in the Complaint based on knowledge obtained from these witnesses will not be discounted, deeply or otherwise.

Plaintiffs identify and cite to several articles which the Cobalt Defendants argue lack reliability.  The cited articles relate primarily to the issue regarding Cobalt's alleged knowledge that Nazaki and Alper were owned by Angolan governmental officials, providing one source of evidentiary support for the allegations.  Plaintiffs allege other bases, however, for their claim that the Cobalt Defendants made false or misleading statements.  The content of the articles is properly alleged and the accuracy of the articles is not a proper subject for a motion to dismiss.

The Cobalt Defendants argue also that Plaintiffs selectively edited certain statements, and that the editing "casts even further doubt on Plaintiffs' claims."  *See* Cobalt Defendants' Motion, p. 25.  The pleading stage, however, is not the time to consider whether Plaintiffs' allegations should be doubted.  The only issue is whether Plaintiffs' allegations in the Complaint satisfy the pleading requirements of the Federal Rules of Civil Procedure and the PSLRA.

B.     **Allegations of False or Misleading Statements**

The Cobalt Defendants argue that Plaintiffs' § 10(b) and § 11 claims should be dismissed for failure to allege a false or misleading statement.  As noted above, an essential element of a § 10(b) claim is that the defendant made a material statement

that was false or misleading.  *See Lormand*, 565 F.3d at 238.  The only elements of

a § 11 claim are: (1) an omission or misrepresentation of (2) a material fact required

to be stated or necessary to make other statements not misleading.  *See Krim v.*

*BancTexas Group, Inc.*, 989 F.2d 1435, 1445 (5th Cir. 1993); *see also In re Franklin*

*Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 379 (S.D. Tex. 2011).  A fact is

"material" if "a reasonable investor would consider [it] significant in the decision

whether to invest, such that it alters the total mix of information available about the

proposed investment."  *Krim*, 989 F.2d at 1445.

   ***Nazaki and Alper.***– Plaintiffs adequately allege with particularity that the

Cobalt Defendants, through corporate filings and through statements during investor

conference calls, misrepresented their knowledge that Angolan government officials

owned Nazaki and Alper.  Plaintiffs allege also that the Cobalt Defendants, in Cobalt's

2011 Form 10-K and otherwise, falsely represented that Nazaki was "a full paying

member" of the partnership with Cobalt.[3]

   Plaintiffs allege that an attorney in the United States conducted an investigation

in 2008 and "was told that" Nazaki was controlled by Angolan government officials.

---

[3]     The Cobalt Defendants argue that "full paying member" did not mean a member who
        had paid anything but, instead, described Nazaki's interests in the Angolan blocks as
        "non-carried."  *See* Cobalt Defendants' Motion [Doc. # 83], p. 40.  While this
        argument may be relevant to a motion for summary judgment, it does not indicate that
        Plaintiffs have failed to allege false and misleading statements to support their claims
        under the Securities Act and the Exchange Act.

Plaintiffs allege that it had been publicly reported as early as the first half of 2010 that Nazaki was controlled by an Angolan General.  Plaintiffs allege that the *Global Witness* reported in May 2010 that "top Angolan officials" might be using Nazaki and Alper as fronts for the officials' own private benefit.  Plaintiffs allege that, in response to the *Global Witness* report, the Cobalt Defendants denied the allegations and claimed they were unaware of any connection between Nazaki and any senior Angolan government officials.  Plaintiffs allege that, even after the *Financial Times* reported in April 2012 that the three senior Angolan officials admitted their ownership of Nazaki, the Cobalt Defendants said they had refuted any allegations of wrongdoing and had conducted rigorous due diligence on the issue of Nazaki's ownership beginning in 2007.

These and many other allegations in the Complaint satisfy the PSLRA requirements for pleading a false or misleading representation regarding a material matter – the ownership of Nazaki and Alper and whether Nazaki was a "full paying member" of the partnership.

***Longra and Loengo Wells.*** – Plaintiffs adequately allege with particularity that the Cobalt Defendants through corporate filings and through statements during investor conference calls misrepresented their knowledge regarding the Longra and Loengo wells.  Plaintiffs allege that the Cobalt Defendants described the two wells in

the offering materials for the January 2013 and May 2013 stock offerings as "large [and] oil-focused."  Plaintiffs allege that the Cobalt Defendants throughout 2013 described Lontra as a "super-size prospect" with oil potential greater than a billion barrels.   Plaintiffs allege that Cobalt's Chief Exploration Officer, Defendant Farnsworth, falsely stated in October 2013 that Lontra was "not the big gas field" but was, instead, "an oil field" that was "a significant discovery."  Plaintiffs allege that the Cobalt Defendants made these representations knowing that Lontra was primarily gas, to which Cobalt had no rights, and that there was "not even a remote chance" of success in the Loengo well.

   ***Forward-Looking Statements.*** – The Cobalt Defendants argue also that certain statements regarding the Angolan wells are protected by the PSLRA's Safe Harbor clause as forward-looking.   Under the Safe Harbor clause, a forward-looking statement is not actionable if: (1) it is identified as forward-looking and is accompanied by "meaningful cautionary statements identifying important factors that could cause actual results to differ materially;" (2) it is immaterial; or (3) the plaintiff fails to plead that the forward-looking statement was made with actual knowledge that it was false or misleading.  *See Lormand*, 565 F.3d at 243 (citing 15 U.S.C. § 78u–5(c)(1)(A), (B); *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 371-72 (5th Cir. 2004)).  "Whether or not a statement is forward-looking

is governed by the nature of the statement, not a litigant's allegations about the statement."  *KB Partners I, L.P. v. Pain Therapeutics, Inc.*, 2015 WL 7760201, *10 (W.D. Tex. Dec. 1, 2015).

Many court have held that the Safe Harbor clause does not protect statements when the plaintiff adequately alleges that the defendant knew his statements were misleading when made.  *See, e.g., Lormand*, 565 F.3d at 244 ("Because the plaintiff adequately alleges that the defendants actually knew that their statements were misleading at the time they were made, the safe harbor provision is inapplicable to all alleged misrepresentations."); *Marcus v. J.C. Penney Co., Inc.*, 2015 WL 5766870, *2 (E.D. Tex. Sept. 29, 2015).  Plaintiffs in this case clearly allege that the Cobalt Defendants knew "fairly early on" that the Lontra well was producing primarily gas, to which Cobalt had no rights, and knew by the end of 2013 that there was "not even a remote chance" that the Loengo well would be successful.  As a result, to the extent a plaintiff's allegation that the defendant knew that the statements were misleading precludes application of the Safe Harbor clause, the Motion to Dismiss based on that provision is denied.

Moreover, the Safe Harbor clause applies only when the alleged misrepresentations are accompanied by "meaningful cautionary language."  *See Lormand*, 565 F.3d at 244 (quoting 15 U.S.C. § 78u-5(c)(1)(A)(i)).  "When risks have

already begun to materialize, it is no longer sufficient to generally warn of the possibility of these risks in the future." *Marcus*, 2015 WL 5766870 at *3. "When cautionary language is glossed over as a future risk rather than the certain dangers that had already begun to materialize then the warnings are no longer meaningful." *Id.* (internal quotations and ellipsis omitted). In this case, the Cobalt Defendants note that the statements regarding the Lontra and Loengo wells related to their "potential" and "prospects." Plaintiffs allege, however, that by the time the Cobalt Defendants made the statements in 2012 and 2013 regarding the potential of the Lontra and Loengo wells, these Defendants already knew that the wells had limited potential, and that the risks that the Lontra well would be primarily gas and that the Loengo well would be a "dry" well had already begun to materialize. As a result, Plaintiffs have adequately alleged that the Safe Harbor provision does not apply to protect the "forward-looking" statements.

*__Conclusion Regarding Material Misrepresentation Element.__* – Plaintiffs have adequately alleged with particularity the factual basis for the material misrepresentation element of their § 10(b) and § 11 claims.

## C.   __Allegations of Scienter__

Scienter is an element of Plaintiffs' § 10(b) claim. "When analyzing a complaint for scienter, a court must 'assess all the allegations holistically,' not in

isolation." *Owens*, 789 F.3d at 536 (quoting *Tellabs*, 551 U.S. at 326).  Plaintiffs have alleged, primarily based on information received from the confidential witnesses who were Cobalt insiders, that the Cobalt Defendants knew that Nazaki was owned by Angolan officials.  Plaintiffs have similarly alleged, based on information from Cobalt insiders, that the Cobalt Defendants knew "fairly early on" that Lontra was primarily gas, to which Cobalt had no rights, and that there was "not even a remote chance" that Loengo would be successful.  Viewing all the factual allegations in the Complaint holistically and not in isolation, the Court finds that Plaintiffs have alleged with adequate particularity that the Cobalt Defendants acted with the requisite scienter.

### D.  Allegations of Loss Causation

The loss causation element of a § 10(b) claim under the PSLRA requires the plaintiff to prove that the defendant's act or omission caused plaintiff's loss.  *See* 15 U.S.C. § 78u–4(b)(4); *Pub. Emp. Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 320 (5th Cir. 2014).  "For a complaint to adequately plead this requirement, it need only set forth 'a short and plain statement of the claim showing that the pleader is entitled to relief' and provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  *Amedisys, Inc.*, 769 F.3d at 320 (quoting *Dura Pharm., Inc., v. Broudo*, 544 U.S. 336, 341-42 (2005)).  The plaintiff "must allege that when the 'relevant truth' about the fraud began to leak out or

otherwise make its way into the marketplace, it caused the price of the stock to depreciate and, thereby, proximately caused the plaintiff's economic harm." *Id.* (citing *Lormand*, 565 F.3d at 255 (citing *Dura*, 544 U.S. at 342)). "Loss causation in fraud-on-the-market cases can be demonstrated circumstantially by (1) identifying a corrective disclosure (a release of information that reveals to the market the pertinent truth that was previously concealed or obscured by the company's fraud); (2) showing that the stock price dropped soon after the corrective disclosure; and (3) eliminating other possible explanations for this price drop, so that the factfinder can infer that it is *more probable* than not that it was the corrective disclosure – as opposed to other possible depressive factors – that caused at least a 'substantial' amount of price drop." *Id.* at 320-21 (internal quotations and citations omitted).

In this case, Plaintiffs have alleged that the Cobalt Defendants misrepresented their knowledge of the connection between Nazaki and senior government officials in Angola, and misrepresented their knowledge regarding the Lontra and Loengo wells. Plaintiffs have alleged that when Cobalt issued corrective disclosures on December 1, 2013, admitting that Lontra was primarily a gas-producing well, the stock price fell more than 21% over the next two days. Plaintiffs have alleged that when Cobalt issued corrective disclosures regarding the elevation of the SEC and DOJ investigations regarding Nazaki's ownership in August 2014, the stock price fell more

than 11%. Similarly, Plaintiffs have alleged that when Cobalt disclosed in November 2014 that Loengo was a "dry well," the stock price immediately declined 11.5% on high volume trading. Based on Plaintiffs' allegations in the Complaint, the factfinder could reasonably infer that it is more probable than not that the corrective disclosures caused at least a substantial portion of these episodes of price decline.

### E.    **Allegations of Reliance**

Reliance is an element of Plaintiffs' § 10(b) claim. To invoke the presumption of reliance based on a "fraud-on-the-market" theory, a plaintiff must allege, *inter alia*, that the security traded in an efficient market. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2408 (2014). "Efficiency is a relative concept, a matter of degree." *In re Enron Corp. Sec.*, 529 F. Supp. 2d 644, 750 (S.D. Tex. 2006).

There is no challenge to Plaintiffs' allegation that the market for Cobalt common stock was an efficient one. The Cobalt Defendants argue that Plaintiffs failed to allege reliance as to the December 2012 and May 2014 bond offerings. Plaintiffs respond that the Cobalt bonds offered in December 2012 and May 2014 were convertible bonds and, therefore, their market price necessarily tracked that of the common stock.[4]

---

[4]    In their Reply, the Cobalt Defendants argue that Plaintiffs do not allege that the bonds are convertible. In the Complaint, however, Plaintiffs clearly allege that the bonds
(continued...)

Because the bonds were convertible to common stock, and because Plaintiffs adequately alleged that there was an efficient market for the common stock, Plaintiffs have alleged sufficient facts on the reliance factor for their § 10(b) claim as to the bond offerings.  *See Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp.*, 315 F. Supp. 2d 666, 675 (E.D. Pa. 2004); *Chu v. Sabratek Corp.*, 100 F. Supp. 2d 815, 826 (N.D. Ill. 2000).  The Cobalt Defendants' Motion to Dismiss on this basis is denied.

### F.    Control Person Liability

The Cobalt Defendants argue that the § 20 and § 15 control person liability claims must be dismissed because Plaintiffs have failed to allege a primary claim under § 10(b) and § 11.  As explained above, however, Plaintiffs have adequately alleged their § 10(b) and § 11 claims.  Therefore, the § 20 and § 15 claims are not subject to dismissal.

### G.    Conclusions On Cobalt Defendants' Motion to Dismiss

The only issue before the Court at this time is whether the securities claims in Plaintiffs' Complaint are adequately *alleged*, not whether the claims are likely to survive a motion for summary judgment following discovery.  As discussed above,

---

[4]      (...continued)
offered in the December 2012 Bond Offering (¶ 232) and in the May 2014 Bond Offering (¶ 252) were convertible.

Plaintiffs have adequately alleged their Securities Act and Exchange Act claims against the Cobalt Defendants.

## IV.   __UNDERWRITER DEFENDANTS' MOTION TO DISMISS__

Plaintiffs allege that the Underwriter Defendants violated Section 11 of the Securities Act and Section 12(a)(2) of the Securities Act.  Plaintiffs allege that each of the Underwriter Defendants except Lazard Capital Markets, LLC ("Lazard") served as an underwriter for Cobalt's February 2012 Stock Offering, that Goldman Sachs[5] and Morgan Stanley & Co. LLC ("Morgan Stanley") served as underwriters for the December 2012 Bond Offering, that Morgan Stanley and Citigroup Global Markets Inc. ("CGMI") served as underwriters for the January 2013 Stock offering, that CGMI served as an underwriter for the May 2013 Stock Offering, and that Goldman Sachs, Credit Suisse Securities (USA) LLC ("Credit Suisse"), CGMI, RBC Capital Markets, LLC ("RBC"), and Lazard served as underwriters for the May 2014 Bond Offering.

The Underwriter Defendants have moved to dismiss, asserting (1) that the Securities Act claims based on the February 2012 Stock Offering are barred by the three-year statute of repose; (2) that claims based on the statements regarding Nazaki are barred by the one-year statute of limitations; (3) that Plaintiffs who purchased

---

[5]      Goldman Sachs is also sued as a Control Person pursuant to § 20 of the Exchange Act. Its Motion to Dismiss the § 20 claims against it will be addressed below with the Control Defendants' Motions to Dismiss.

shares after April 30, 2013, have failed to allege reliance in support of their § 11 claim, and (4) that Plaintiffs fail to allege that any of the Underwriter Defendants is a "statutory seller" for purposes of the § 12 claim.[6]

## A.    <u>Statute of Repose</u>

Section 11 claims are subject to a three-year statute of repose which provides that "[i]n no event" shall an action be brought "more than three years after the security was bona fide offered to the public."  15 U.S.C. § 77m.  In this case, Cobalt stock was "bona fide offered to the public" on February 23, 2012.  St. Lucie County Fire District Firefighters' Pension Trust Fund ("St. Lucie") and Fire and Police Retiree Health Care Fund, San Antonio ("San Antonio") filed an original class action complaint on November 30, 2014, prior to the expiration of the three-year statute of repose.  The Underwriter Defendants argue that the November 2014 complaint does not prevent dismissal based on the statute of repose.  Specifically, the Underwriter Defendants argue that neither of the two named Plaintiffs in the November 2014 complaint had standing to assert a Securities Act claim based on the February 2012 Stock Offering because neither Plaintiff purchased stock in that offering.  As explained below,

---

[6]    The Underwriter Defendants argue also that Plaintiffs' Securities Act claims should be dismissed for failure to allege adequately a material statement that was false or misleading.  For the reasons discussed above in connection with the Cobalt Defendants' Motion to Dismiss, dismissal on this basis is denied.

however, the allegations in the Complaint establish for present purposes that St. Lucie
had standing on November 30, 2014, to assert the Securities Act claim based on the
February 2012 Offering.

"Section 11 of the Securities Act, imposing civil liability for public offering of
securities pursuant to a false registration statement, permits 'any person acquiring
such security' to sue." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 495 (5th Cir. 2005)
(citing 15 U.S.C. § 77k(a)). Section 11's "standing provisions limit putative plaintiffs
to the narrow class of persons consisting of those who purchase securities that are the
direct subject of the prospectus and registration statement." *Id.* (internal quotations
and citation omitted). The plain language of the statute confers standing on any
person who acquires a security issued under the registration statement that allegedly
contained an untrue statement of material fact, "so long as the security was indeed
issued under *that* registration statement and not another." *Id.* (emphasis in original);
*see also Hopson v. Chase Home Fin. LLC*, 14 F. Supp. 3d 774, 783 (S.D. Miss. 2014)
(citing *Krim*'s holding that § 11 provides a right of action to any person acquiring
shares issued pursuant to an untrue registration statement); *In re Citigroup Inc. Bond
Litig.*, 723 F. Supp. 2d 568, 584 (S.D.N.Y. 2010) (holding that if a registration
statement contains an untrue statement of material fact, "then any person acquiring a
security pursuant to that registration statement has standing to sue a variety of

participants in the security's issuance" and citing 15 U.S.C. § 77k(a)); *In re Azurix Corp. Sec. Litig.*, 198 F. Supp. 2d 862, 892 (S.D. Tex. 2002) (holding that the term "any person acquiring such security" in § 77k(a) includes "purchasers of shares issued and sold pursuant to the challenged registration statement").

In this case, Plaintiffs allege that the February 2012 Stock Offering that is the subject of the Underwriter Defendants' statute of repose challenge, and the December 2012 Bond Offering in which St. Lucie purchased Cobalt securities, were both conducted pursuant to the same January 2011 Registration Statement and Prospectus. *See* Complaint, ¶¶ 223, 233. "The point of Article III standing . . . is to ensure that the named plaintiff has a personal stake in the outcome of the litigation and that the plaintiff purchases 'securities' as that term is defined in the Act issued pursuant to a particular registration statement." *In re Fleming Cos. Inc. Sec. & Derivative Litig.*, 2004 WL 5278716, *49 (E.D. Tex. June 16, 2004). Although reserving and not deciding the issue, the First Circuit in *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, a case cited by the Underwriter Defendants, stated in *dicta* that a plaintiff could have standing "where the claims of the named plaintiffs necessarily give them – not just their lawyers – essentially the same incentive to litigate the counterpart claims of the class members because the establishment of the named plaintiffs' claims necessarily establishes those of other

class members." *Plumbers' Union*, 632 F.3d 762, 770 (2d Cir. 2011).   In the November 2014 complaint, St. Lucie, as a purchaser in the December 2012 Bond Offering, challenged statements in the January 2011 Registration Statement on which both the December 2012 Bond Offering and the February 2012 Stock Offering were based.   Therefore, St. Lucie had the same incentive to litigate its challenge to the subject Registration Statement as those purchasers of Cobalt stock in the February 2012 Stock Offering.

Here, St. Lucie purchased Cobalt securities in an offering pursuant to the same registration statement as any purchasers of Cobalt securities in the February 2012 Offering.[7]   Because St. Lucie had standing to sue based on the January 2011 Registration Statement, it has standing to assert class-based claims for all purchasers of securities pursuant to that Registration Statement.   St. Lucie's original complaint was filed on November 30, 2014, less than three years after the February 2012 Offering and within the statute of repose under the Securities Act.   The policy concerns and the language of the applicable cases convince the Court that St. Lucie

---

[7]   Universal Investment Gesellschaft m.b.h., a named Plaintiff in the Complaint filed May 1, 2015, alleges that it purchased shares of Cobalt stock in the February 2012 Offering.

had standing on November 30, 2014.[8]  The Underwriter Defendants' Motion to

Dismiss claims based on the February 2012 Offering is, therefore, denied.

### B.  Statute of Limitations

The Underwriter Defendants argue that the claims relating to statements about

the Nazaki's ownership are barred by the applicable statute of limitations.  Claims

under the Securities Act must be filed "within one year after the discovery of the

untrue statement or the omission, or after such discovery should have been made by

the exercise of reasonable diligence."  15 U.S.C. § 77m; *Police & Fire Ret. Sys. of*

*City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 107 (2d Cir. 2013); *In re Magnum*

*Hunter Resources Corp. Sec. Litig.*, 616 F. App'x 442, 446-47 (2d Cir. June 23,

2015).  "The one-year limitations period applicable to discovery of the violation

begins to run after the plaintiff obtains actual knowledge of the facts giving rise to the

action or notice of the facts, which in the exercise of reasonable diligence, would have

led to actual knowledge."  *In re Petrobras Sec. Litig.*, __ F. Supp. 3d __, 2015 WL

4557364, *14 (S.D.N.Y. July 30, 2015) (quoting *LC Capital Partners, LP v. Frontier*

*Ins. Grp., Inc.*, 318 F.3d 148, 154 (2d Cir. 2003)).  Determining when a plaintiff has

sufficient information for the limitations period to begin is often fact specific and

---

[8]     As noted above, the GAMCO Plaintiffs, not St. Lucie, have been appointed Lead
        Plaintiffs in this case.

inappropriate for a motion to dismiss pursuant to Rule 12(b)(6).  *LC Capital*, 318 F.3d at 156.

In this case, Plaintiffs allege that it was reported in an article in the *Financial Times* in April 2012 that senior Angolan officials admitted their ownership of Nazaki. Plaintiffs allege also, however, that Cobalt representatives immediately denied any alleged wrongdoing and stated that they had conducted rigorous due diligence regarding Nazaki's ownership.  Plaintiffs allege that, days later, Morgan Stanley issued a report advising that it was reassured by Cobalt's statements in response to the *Financial Times* article.  Therefore, the Court cannot conclude as a matter of law that the statute of limitations began to run in April 2012.  It may have been, as Plaintiffs argue, that they did not have adequate information for the statute of limitations to begin until August 2014, when Cobalt announced that Angola had terminated Nazaki's participation in the partnership with Cobalt.  Because it is plausible that the allegations in the Complaint could support a finding that the statute of limitations did not begin to run until August 2014, the Court cannot conclude at this pleading stage that the claims relating to Nazaki's ownership are time-barred.

### C.    Section 11 Claim - Reliance

A plaintiff asserting a § 11 claim must allege (and eventually prove) reliance on the misrepresentation in the registration statement if, and only if, the plaintiff

"acquired the security after the issuer has made generally available to its security holders an earning statement covering a period of at least 12 months beginning after the effective date of the registration statement."  15 U.S.C. § 77k(a).  In this case, Cobalt issued earnings statements between February 2012 and April 2013.[9]  The Underwriter Defendants argue that, as a result, Plaintiffs who purchased Cobalt securities after April 30, 2013, must allege reliance in support of their § 11 claim.

Plaintiffs argue first that Cobalt's earning statements were not "earning statements" for purposes of § 77k(a) because they continued to include the allegedly false statements.  The Court find this argument unpersuasive.  The clear language of the statute and the legislative history reflect that the term "earning statement" is unqualified and should be given its general meaning.  *See Petrobras*, 2015 WL 4557364 at *15; H.R. CONF. REP. NO. 73-1838, 1934 WL 1291, *41 (1934) (explaining that the "basis of this provision is that in all likelihood the purchase and price of the security purchased after publication of such an earning statement will be predicated on that statement rather than upon the information disclosed upon registration.").

---

[9]     Specifically, Cobalt issued a Q2 2012 Form 10-Q on July 31, 2012, a Q3 2012 Form 10-Q on October 30, 2012, a 2012 Form 10-K on February 26, 2013, and a Q1 2013 Form 10-Q on April 30, 2013.  This "combination of reports" may be considered an "earning statement" for purposes of § 77k(a).  *See* 17 C.F.R. § 230.158(a)(2)(i).

Plaintiffs argue also that they are entitled to rely on the "fraud-on-the-market" theory of reliance to support their § 11 claim.  Plaintiffs in the Complaint, however, specifically allege that their reliance allegations, including those pertaining to the "fraud-on-the-market" theory, "pertain only to Plaintiffs' claim under the Exchange Act."  *See* Complaint, ¶ 214.

Based on the current Complaint, Plaintiffs who purchased Cobalt securities after April 30, 2013, must plead reliance on the alleged misrepresentations in issue, in support of their § 11 claim.  Having failed to do so, the § 11 claims of those Plaintiffs are dismissed.  The Court will, however, permit Plaintiffs to file a Second Amended Consolidated Class Action Complaint by the deadline set forth below.

### D.      Section 12 Claim - Underwriter Defendants as "Statutory Sellers"

The Underwriter Defendants argue that Plaintiffs lack standing to assert their § 12 claim.  Section 12(a)(2) imposes liability on anyone who "offers or sells a security . . . by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact."   15 U.S.C. § 77l.  Only persons who "directly purchase securities from the defendant in a public offering, rather than on the secondary market," have standing to assert a claim under § 12(a)(2).  *See Gustafson v. Alloyd Co., Inc*., 513 U.S. 561, 578 (1995).

In this case, Plaintiffs adequately allege that they purchased their shares from the Underwriter Defendants in the public offerings, rather than on a secondary market. *See* Complaint, ¶¶ 312-316. As a result, dismissal of Plaintiffs' § 12 claim against the Underwriter Defendants is not appropriate and is denied.

### E.      Conclusion as to Underwriter Defendants' Motion to Dismiss

Plaintiffs' Securities Act claims against the Underwriter Defendants are not subject to dismissal at this stage of the proceedings as barred by either the three-year statute of repose or the one-year statute of limitations. As to those Plaintiffs who purchased shares of Cobalt stock after April 30, 2013, they will be granted leave to amend to allege reliance, if such allegations comply with the requirements of Rule 11 of the Federal Rules of Civil Procedure. Plaintiffs have adequately alleged that they purchased their shares from the Underwriter Defendants in the public offerings and, therefore, dismissal based on the allegations in the Complaint would be inappropriate. Consequently, the Underwriter Defendants' Motion to Dismiss is granted with leave to replead as to the § 11 claim by Plaintiffs who purchased their Cobalt securities after April 30, 2013, and is denied in all other respects.

### V.      CONTROL DEFENDANTS' MOTION TO DISMISS

Plaintiffs allege that Goldman Sachs, Riverstone, Carlyle, First Reserve, and Kern are liable as control persons under § 15 of the Securities Act for the violations

of § 11 as alleged in the Complaint.  Under § 15, any "person who, by or through stock ownership, agency, or otherwise, . . . controls any person liable under [§ 11 of the Securities Act], shall also be liable jointly and severally with and to the same extent as such controlled person[.]" 15 U.S.C. § 77o.  To state a § 15 claim for control person liability, Plaintiffs must allege: (1) a primary violation of § 11 and/or § 12 of the Securities Act; and (2) that the defendant exercised "control" over the primary violator.  *See In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 828 (S.D. Tex. 2004); *see also In re Lehman Bros. Mortgage-Backed Sec. Litig.*, 650 F.3d 167, 185 (2d Cir. 2011); *Howard v. Everex Sys.*, 228 F.3d 1057, 1065 (9th Cir. 2000).

By regulation, the SEC has defined "control" as the "possession, direct or indirect, of the power to direct or cause the direction of management and policies of a person, whether through ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405.  Control can also be established by "business relationships, interlocking directors, family relations, or the power to influence and control the activities of another." *In re Dynegy*, 339 F. Supp. 2d at 828.  A "plaintiff needs to allege some facts beyond the defendant's position or title that show the defendant had actual power or control over the controlled person." *Id.* (citing *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 509-10 (5th Cir. 1990)).

There are no United States Supreme Court or Fifth Circuit decisions establishing the pleading requirements for § 15. However, the Court finds persuasive the reasoning of district courts in the Fifth Circuit that "apply a 'relaxed' and 'lenient' pleading standard for evaluating whether a plaintiff has sufficiently alleged a claim for control person liability." *One Longhorn Land I, L.P. v. FF Arabian, LLC*, 2015 WL 7432360, *2 (E.D. Tex. November 23, 2015) (citing *Trendsetter Insurers, LLC v. Hyperdynamics Corp.*, 2007 WL 172627, *15 (S.D. Tex. Jan. 18, 2007)). At the pleading stage, "a plaintiff need only allege that [the defendant] possessed the power to control the primary violator, not that control was exercised." *Id.* at *3 (citing *G.A. Thompson & Co. v. Partridge*, 737 F.2d 945, 957-58 (5th Cir. 1981)).

Whether a defendant is a control person is an intensely factual question, and Plaintiffs here allege that Goldman Sachs, Riverstone, Carlyle, First Reserve, and Kern together controlled Cobalt based, *inter alia*, on their significant stock ownership and ability to elect a majority of Cobalt's Board of Directors. Plaintiffs allege also that the Control Defendants possessed the ability to control or influence Cobalt's day-to-day operation because a Stockholder Agreement gave them the right to select a majority of the members of every Board Committee except the Audit Committee. Plaintiffs allege that the Control Defendants, except Carlyle, had one or two Managing Directors serving simultaneously as a member of Cobalt's Board. This gave the

Control Defendants the power to influence those interlocking directors and, thereby, control or influence the Cobalt Board.

Plaintiffs also cite to statements by Cobalt in filings with the SEC. For example, in the Form 10-K for the fiscal year ending December 31, 2010, Cobalt stated that its "four largest stockholders collectively own approximately 72% of [Cobalt's] outstanding stock" and "have significant influence over all matters that require approval by [the] shareholders, including election of directors and approval of significant corporate transactions." In the same SEC filing, Cobalt identified itself as a "controlled company" in which "more than 50% of the voting power is held by another person or group of persons acting together." The Form 10-K identified First Reserve, Goldman Sachs, Riverstone, Carlyle, and Kern as the entities controlling a majority of voting power. The next Form 10-K, for fiscal year ending December 31, 2011, included similar statements.

As noted above, the determination of whether a defendant is a control person is highly fact intensive. Plaintiffs and Control Defendants have cited a variety of district court cases that hold the plaintiffs there have or have not adequately alleged § 15 liability. Each one is similar to this case in certain respects and dissimilar in others. The issue is currently before this Court on Motions to Dismiss at the pleading stage. The Court is reviewing only Plaintiffs' allegations and expresses no opinion

regarding what the evidence may ultimately show.  The Court finds that although the allegations in the Complaint regarding control liability are limited, particularly as to Defendant Carlyle, the allegations are sufficient to satisfy the notice pleading requirements of Rule 8 and the PSLRA.

## VI.    CONCLUSION AND ORDER

Based on the foregoing, it is hereby

**ORDERED** that the Underwriter Defendants' Motion to Dismiss [Doc. # 81] is **GRANTED with leave to replead** as to claims by Plaintiffs who purchased Cobalt securities after April 30, 2013, and **DENIED** in all other respect.  It is further

**ORDERED** that Plaintiffs shall file their Second Amended Class Action Complaint by **February 5, 2016**.  It is further

**ORDERED** that the Control Defendants' Motion to Dismiss [Doc. # 82] is **DENIED**.  It is further

**ORDERED** that the Cobalt Defendants' Motion to Dismiss [Doc. # 83] is **DENIED**.  It is further

**ORDERED** that Carlyle's Motion to Dismiss [Doc. # 84] is **DENIED**.

SIGNED at Houston, Texas, this **19th** day of **January, 2016**.

P:\ORDERS\11-2014\3428MD.wpd   160119.0758

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE