IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE COBALT INTERNATIONAL ENERGY, INC. SECURITIES LITIGATION | § § § | CIVIL ACTION NO. H-14-3428 |

# **MEMORANDUM AND ORDER**

This securities case is before the Court on the Motion to Dismiss Count III of Plaintiffs' Second Amended Complaint ("Motion to Dismiss") [Doc. # 216] filed by Defendants Goldman, Sachs & Co. ("Goldman Sachs"), Riverstone Holdings LLC ("Riverstone"), FRC Founders Corp. ("FRC"), and ACM Ltd. ("ACM"), and the Motion to Dismiss Count III of the Second Amended Complaint ("Carlyle Motion to Dismiss") [Doc. # 219] filed by Defendant The Carlyle Group L.P. ("Carlyle"). Plaintiffs filed a consolidated Opposition [Doc. # 23] to the Motions to Dismiss, and Defendants filed separate Replies [Docs. # 240 and # 241].

The Court has reviewed the full record, including its prior rulings in this case and Plaintiffs' Second Amended Complaint [Doc. # 200], as well as all briefing submitted by the parties. Based on this review, and the application of relevant legal authorities, the Court **grants** the Carlyle Motion to Dismiss and **denies** the Motion to Dismiss filed by the other moving Defendants.

## I. BACKGROUND

The background of this case is set forth fully in the Court's Memorandum and Order [Doc. # 108] entered January 19, 2016. Briefly, Cobalt is an exploration and production company that was formed in 2005 as a private company. Cobalt conducted an initial public offering ("IPO") of its shares in December 2009. After the IPO, the moving Defendants, except Carlyle, designated an individual of their choice to serve as a member of Cobalt's Board.

In 2007, Cobalt entered into an agreement with Sonangol E.P. ("Sonangol"), the Angolan national oil company, to acquire a 40% interest in oil exploration Blocks 9, 20, and 21 in offshore Angola. In 2009, the Angolan Parliament issued two decrees assigning an interest in the Blocks to Nazaki Oil & Gaz ("Nazaki"), Sonangol P&P, and Alper Oil, Limitada ("Alper"). In February 2010, Cobalt and these other companies signed Risk Services Agreements ("RSAs") with Sonangol.

On January 4, 2011, Cobalt filed a Registration Statement and Prospectus ("January 2011 Registration Statement") with the Securities and Exchange Commission ("SEC"). Based on this 2011 Registration Statement, Cobalt conducted, *inter alia*, a stock offering in late February 2012 ("February 2012 Stock Offering").

On March 10, 2011, Cobalt learned that the SEC was conducting an informal inquiry into allegations that there existed a connection between Nazaki and senior

government officials in Angola. The next day, Cobalt contacted the Department of Justice ("DOJ") regarding the same allegations. Both the SEC and the DOJ later began formal investigations into whether Cobalt had violated the Foreign Corrupt Practices Act of 1977 ("FCPA"). The SEC investigation and the DOJ investigation regarding FCPA violations have ended with no recommendation for enforcement action against Cobalt.[1]

Meanwhile, Cobalt drilled two exploration wells in the offshore Angola drilling region: Lontra on Block 20 and Loengo on Block 9. Cobalt had no rights to gas discoveries and, instead, had rights only to any oil that was discovered in the Blocks. Ultimately, Lontra was found to contain a substantially higher percentage of gas than originally estimated, and drilling at Loengo failed to discover oil.

On May 1, 2015, Plaintiffs filed their Consolidated Amended Class Action Complaint ("CAC") [Doc. # 72]. Plaintiffs alleged in Count I of their CAC that Cobalt and its executives violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5. In Count II, Plaintiffs alleged that Cobalt and its executives violated Section 20(a) of the Exchange Act. Plaintiffs asserted in Count III a claim under Section 11 of the Securities Act of 1933 ("Securities Act") against

---

[1] Earlier this year, the SEC initiated a new informal inquiry regarding Cobalt and the Sonangol Research and Technology Center.

Cobalt, its directors, and the underwriters of the various offerings of Cobalt securities. In Count IV, Plaintiffs asserted a claim against Goldman Sachs, Riverstone, Carlyle and others (identified as the "Control Defendants") under Section 15 of the Securities Act. In Count V, Plaintiffs asserted a claim against the underwriters under Section 12(a)(2) of the Securities Act.

In its January 2016 Memorandum and Order, the Court dismissed the Section 11 claim by individuals who purchased Cobalt stock after April 30, 2013. The Court denied the Motions to Dismiss in all other respects. Plaintiffs elected not to amend their Section 11 claim to allege reliance by the post-April 30, 2013 purchasers.

On March 15, 2017, Plaintiffs, with leave of Court, filed their Second Amended Complaint. In Count III of the Second Amended Complaint, Plaintiffs assert a claim against the Control Defendants under Section 20A of the Exchange Act. The Control Defendants have filed their Motions to Dismiss, which have been fully briefed and are now ripe for decision.

## II. STANDARD FOR MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)). The complaint must be liberally construed in favor of the

plaintiff, and all facts pleaded in the complaint must be taken as true. *Harrington*, 563 F.3d at 147. The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679. Except as explained below regarding the special pleading requirements for certain elements of a Section 10(b) claim, including the scienter element, these pleading requirements apply to Plaintiffs' claims in this case. *See Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 210 (5th Cir. 2004).

### III. CONTROL DEFENDANTS' MOTIONS TO DISMISS

Section 20A of the Exchange Act imposes liability for "insider trading," providing specifically that:

> Any person who violates any provision of this chapter or the rules and regulations thereunder by purchasing or selling a security while in possession of material, nonpublic information shall be liable . . . to any person who, contemporaneously with the purchase or sale of securities that is the subject of such violation, has purchased (where such violation is based on a sale of securities) or sold (where such violation is based on a purchase of securities) securities of the same class.

15 U.S.C. § 78t-1(a). Plaintiffs allege that the Control Defendants engaged in insider trading by violating Section 10(b) and Rule 10b-5 when they sold shares of Cobalt stock while in possession of material, non-public information. Plaintiffs allege also that named Plaintiffs and members of the prospective class purchased Cobalt shares contemporaneously with the Control Defendants' sales. The Control Defendants argue that Plaintiffs failed to allege scienter adequately to support the Section 10(b) claim, that Plaintiffs improperly engaged in group pleading, and that Plaintiffs failed to identify a contemporaneous purchaser of Cobalt stock in connection with Goldman Sachs's 2014 sales.

A. **Allegations of Scienter**

Plaintiffs base their Section 20A claim on an alleged violation of Section 10(b) of the Exchange Act. Scienter is an element of a Section 10(b) claim. The PSLRA requires a plaintiff to allege facts "giving rise to a strong inference that the defendant acted with the required state of mind." *See* 15 U.S.C. § 78u–4(b)(2). To satisfy the pleading standard for the required "strong inference" of scienter, the allegations must create an inference of scienter that is "at least as compelling as any opposing inference one could draw from the facts alleged." *Owens v. Jastrow*, 789 F.3d 529, 536 (5th Cir. 2015) (quoting *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 324 2007)). "[A] tie favors the plaintiff." *Id.* (quoting *Lormand v. US Unwired, Inc.*, 565

F.3d 228, 254 (5th Cir. 2009)). "When analyzing a complaint for scienter, a court must 'assess all the allegations holistically,' not in isolation." *Id.* (quoting *Tellabs,* 551 U.S. at 326).

A plaintiff makes a *prima facie* case that a defendant is liable for insider trading under Section 20A by showing that the defendant was 'aware of the material nonpublic information' when he made the purchase or sale of the securities." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 592 (S.D. Tex. 2003) (quoting 17 C.F.R. § 240.10b5-1(b)). Actual knowledge that public statements are false, based on actual knowledge of material, non-public information, will establish scienter for purposes of an insider trading claim. *See S.E.C. v. Pardue*, 2005 WL 736884, \*6 (E.D. Pa. Apr. 1, 2005); *see also In re Am. Italian Pasta Co. Sec. Litig.*, 2006 WL 1715168, \*3 (W.D. Mo. June 19, 2006); *S.E.C. v. Bunrock*, 2004 WL 1179423, \*13 (N.D. Ill. May 25, 2004).

Plaintiffs have alleged that prior to the February 2012 Common Stock Offering, the Control Defendants – through the individuals they designated to be members of the Cobalt Board of Directors – had actual knowledge of material, undisclosed information indicating that Nazaki was owned by Angolan officials. Specifically, in November 2010, the Control Defendants through their designees on the Cobalt Board of Directors received information that Navigant Consulting ("Navigant") in an

October 2010 due diligence report advised that three Angolan officials each owned one-third of Grupo Aquattro, which owned 99.96% of Nazaki. Plaintiffs allege that the Navigant report was not disclosed prior to the February 2012 Common Stock Offering, in which the Control Defendants sold 40,709,730 shares of Cobalt stock for $1,139,872,440.00.

Plaintiffs have similarly alleged that prior to the Common Stock Offerings in January 2013 and May 2013, the Control Defendants possessed material, undisclosed information that there was little chance that Loengo would be successful and that, as a result, Cobalt was looking for an exit strategy from Loengo in order to recover "sunk costs." With actual knowledge of the undisclosed information regarding Loengo, the Control Defendants sold 40 million shares of Cobalt stock in January 2013 and another 50 million in May 2013.

The Control Defendants argue that the circumstances and timing of their stock sales do not support a strong inference of scienter. They note correctly that their first sale of Cobalt stock occurred in February 2012, more than one year after their designees were given material non-public information. Plaintiffs note correctly, however, that the Control Defendants were restricted from selling shares for a two-year period beginning on the date of the December 16, 2009 IPO. Therefore, the Control Defendants could not legally sell their shares until December 2011. This was

approximately two months prior to these Defendants' February 2012 sale of 40,709,730 shares of Cobalt stock. The timing of the sales does not justify dismissal of Count III.

Similarly unpersuasive is the Control Defendants' argument that scienter is not alleged adequately because they did not "rush to cash out" by selling all of their shares as soon as possible after December 2011. The Control Defendants owned 71% of all outstanding shares of Cobalt stock, more than 255 million shares. They could not, without serious negative impact on the company, dump these shares into the market at one time.

Viewing all the factual allegations in the Second Amended Complaint holistically and not in isolation, the Court concludes that Plaintiffs have alleged with adequate particularity that the Control Defendants acted with the requisite scienter when they sold Cobalt stock while in possession of material, undisclosed information regarding the ownership of Nazaki and the likelihood that drilling for oil in Loengo would be unsuccessful.

The factual allegations supporting the Section 20A claim in Count III are based on information that was not disclosed to the public, but was provided to each Control Defendant through its designated member of the Cobalt Board of Directors. There is no allegation, however, that Carlyle had a designee on the Cobalt Board. Although

Plaintiffs allege that Carlyle and Riverstone were acting together, it is undisputed that Riverstone designated two board members and Carlyle had no designee on the Board of Directors. As a result, there are no allegations that permit a strong inference that Carlyle possessed the material, undisclosed information provided to the Cobalt Board of Directors. Unlike the other Control Defendants, Carlyle is entitled to dismissal of the Section 20A claim against it.

### B. <u>Individualized Allegations</u>

Plaintiffs in a securities fraud complaint are required "to distinguish among those they sue and enlighten each defendant as to his or her particular part in the alleged fraud." *Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir. 2015) (quoting *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2014)). Therefore, the Court does not impute to any particular Defendant those allegations asserted against Defendants as a group "unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded." *Id*.

In this case, Plaintiffs' insider trading allegations against the Control Defendants are adequately individualized. Although there are allegations against the Control Defendants as a group, those group allegations are based on each Control Defendant's knowledge acquired through its designee on the Cobalt Board of

Directors. Plaintiffs identify the specific Board of Directors designee for each Control Defendant, specify the dates the designee was a member of the Cobalt Board, and identify the specific information received by the designees and when they received that information. Additionally, Plaintiffs allege the dates each Control Defendant sold shares of Cobalt stock, the number of shares sold on each date, and the amount received by each Control Defendant in connection with each sale. These allegations are adequately individualized to avoid a group pleading challenge, and the Motion to Dismiss on this basis is denied.

C. **Allegations of Contemporaneous Trading**

Liability under Section 20A requires that a plaintiff have purchased shares of stock "contemporaneously" with the defendant's sale of shares. *See* 15 U.S.C. § 78t-1(a). Defendants argue that, with respect to Goldman Sachs's sale of Cobalt stock in 2014, there is no allegation of a contemporaneous purchaser. Defendants note that the only identified purchaser, Plaintiff Universal Investment Gesellschaft m.b.h. ("Universal"), purchased shares six days after Goldman Sacks's sale of shares on July 25, 2014.

Section 20A does not define the word "contemporaneously." Various courts to address the issue have identified no clear agreement about how much time between the trade by the defendant and the purchase by the plaintiff is allowed for purposes of

the "contemporaneous" requirement. "Different courts have found that 'contemporaneity' requires the insider and the investor/plaintiff to have traded anywhere from on the same day, to less than a week, to within a month, to 'the entire period while relevant and nonpublic information remained undisclosed.'" *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 599 (S.D. Tex. 2003), and cases cited therein. As a result, the Court cannot conclude that an allegation of a six-day gap between Goldman Sachs's sale and Universal's purchase is too long as a matter of law to constitute "contemporaneous" trades for purposes of Section 20A liability. Control Defendants' Motion to Dismiss on this basis is denied.

## IV. CONCLUSION AND ORDER

Based on the foregoing, it is hereby

**ORDERED** that the Carlyle's Motion to Dismiss [Doc. # 219] is **GRANTED** and Plaintiffs' Section 20A claim against Carlyle is **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** that the Motion to Dismiss [Doc. # 216] filed by the remaining Control Defendants is **DENIED**.

SIGNED at Houston, Texas, this **15th** day of **June, 2017**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE