IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE COBALT INTERNATIONAL ENERGY, INC. SECURITIES LITIGATION | § § § | CIVIL ACTION NO. H-14-3428 |

# MEMORANDUM AND ORDER

This securities case is before the Court on Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel ("Motion") [Doc. # 163], to which Defendants filed an Opposition [Doc. # 205], and Plaintiffs filed a Reply [Doc. # 239]. Having reviewed the full record and the applicable legal authorities, the Court **grants** the Motion.

## I. BACKGROUND

Cobalt is an exploration and production company that was formed in 2005 as a private company. Cobalt conducted an initial public offering ("IPO") of its shares in December 2009.

In 2007, Cobalt entered into an agreement with Sonangol E.P. ("Sonangol"), the Angolan national oil company, to acquire a 40% interest in oil exploration Blocks 9, 20, and 21 in offshore Angola. In 2009, the Angolan Parliament issued two decrees assigning an interest in the Blocks to Nazaki Oil & Gaz ("Nazaki"), Sonangol

P&P, and Alper Oil, Limitada ("Alper").  In February 2010, Cobalt and these other companies signed Risk Services Agreements ("RSAs") with Sonangol.

On January 4, 2011, Cobalt filed a Registration Statement and Prospectus ("January 2011 Registration Statement") with the Securities and Exchange Commission ("SEC").  Based on this 2011 Registration Statement, Cobalt conducted, *inter alia*, a stock offering in late February 2012 ("February 2012 Stock Offering"). Additionally, Cobalt conducted registered public offerings of Cobalt convertible senior notes ("Cobalt Notes") in December 2012 and May 2014.

On March 10, 2011, Cobalt learned that the SEC was conducting an informal inquiry into allegations that there existed a connection between Nazaki and senior government officials in Angola.  The next day, Cobalt contacted the Department of Justice ("DOJ") regarding the same allegations.  Both the SEC and the DOJ later began formal investigations into whether Cobalt had violated the Foreign Corrupt Practices Act of 1977 ("FCPA").  The SEC investigation and the DOJ investigation regarding FCPA violations have ended with no recommendation for enforcement action against Cobalt.

Meanwhile, Cobalt drilled two exploration wells in the offshore Angola drilling region: Lontra on Block 20 and Loengo on Block 9.  Cobalt had no rights to gas discoveries and, instead, had rights only to any oil that was discovered in the Blocks.

Ultimately, Lontra was found to contain a substantially higher percentage of gas than originally estimated, and drilling at Loengo failed to discover oil.

On April 15, 2012, the *Financial Times* published two reports that Nazaki was owned by Angolan officials, who had admitted their ownership interest to the *Financial Times*. On December 1, 2013, Cobalt issued a press release disclosing that the Lontra well contained primarily gas to which Cobalt had no rights. On August 5, 2014, Bloomberg reported that the SEC had issued a "Wells Notice" recommending the institution of an enforcement action, and that "social payments" that Cobalt was required to make to the Angolan government to fund a research center were for a center that did not exist. On November 4, 2014, Cobalt issued a press release disclosing that the Loengo well was a "dry hole" with no oil. The price of Cobalt shares declined after each of these reports.

On March 15, 2017, Plaintiffs filed their Second Amended Complaint. Plaintiffs assert a claim under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5; Section 20(a) of the Exchange Act; Section 20A of the Exchange Act; Section 11 of the Securities Act of 1933 ("Securities Act"); Section 15 of the Securities Act; and Section 12(a)(2) of the Securities Act. Plaintiffs have filed a Motion seeking class certification, appointment of class representatives,

and appointment of class counsel. The Motion has been fully briefed and is now ripe for decision.

## II. STANDARD FOR CLASS CERTIFICATION

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, __ U.S. __, 133 S. Ct. 1426, 1432 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979)). To pursue a class action, Plaintiffs must demonstrate compliance with the requirements of Rule 23. *See id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Plaintiffs must prove that "there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation." *See id.*; FED. R. CIV. P. 23(a); *Torres v. S.G.E. Mgmt., LLC*, 838 F.3d 629, 635 (5th Cir. 2016) (*en banc*).

Plaintiffs, such as those here, seeking class certification pursuant to Rule 23(b)(3) must also prove that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3); *Torres*, 838 F.3d at 635-36. "The Plaintiffs have the burden of showing that these requirements are met." *Id.* at 636 (citing *Wal-Mart*, 564 U.S. at 350-51).

## III. ANALYSIS OF RULE 23(a) FACTORS

Rule 23(a) requires Plaintiffs seeking class certification to prove that "there are in fact sufficiently numerous parties [numerosity], common questions of law or fact [commonality], typicality of claims or defenses [typicality], and adequacy of representation [adequacy]." *Comcast Corp.*, 133 S. Ct. at 1432.

### A. Numerosity

The number of class members must be such that "joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Plaintiffs have presented evidence that during the class period, Cobalt had over 350 million shares outstanding held by record holders ranging in number between 107 and 192. Additionally, there were 599 institutional investors holding Cobalt shares during the class period. Defendants do not challenge Plaintiffs' satisfaction of the numerosity requirement.

### B. Commonality

To demonstrate commonality, Plaintiffs must show that all of the class members' claims "depend on a common issue of law or fact whose resolution 'will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke.'" *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012) (quoting *Wal-Mart*, 564 U.S. at 350). Plaintiffs in this case have identified several common questions of law and fact, including whether Defendants made false

and misleading statements concerning Cobalt's business partners in Angola and the viability of the Lontra and Loengo wells. Defendants do not challenge Plaintiffs' satisfaction of the commonality requirement.

### C. **Typicality**

Plaintiffs can satisfy the typicality requirement by showing that class representatives' claims arise from a similar course of conduct and share the same legal theory. *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). In this case, Defendants challenge Plaintiffs' ability to satisfy the typicality requirement only as to the purchasers of Cobalt Notes and the purchasers of Cobalt stock in the 2014 Goldman Sachs secondary offerings.

Defendants argue that Plaintiff Universal is not typical because they assert Universal suffered no damages in connection with its ownership of Cobalt Notes. Defendants do not, however, argue that Plaintiff St. Lucie County Fire District Firefighters' Pension Trust Fund ("St. Lucie") is asserting claims in this lawsuit that are atypical of those asserted by other purchasers of Cobalt Notes. Therefore, Plaintiffs have demonstrated that a class representative is asserting claims in connection with the Cobalt Notes that are typical of members of the proposed class.

Defendants argue also that there is no typical class representative for purposes of claims relating to the 2014 Goldman Sachs secondary offering because Universal

did not purchase its shares contemporaneously with Goldman Sachs's sales. Liability under Section 20A requires that a plaintiff have purchased shares of stock "contemporaneously" with the defendant's sale of shares. *See* 15 U.S.C. § 78t-1(a). Defendants argue that, with respect to Goldman Sachs's sale of Cobalt stock in 2014, Universal purchased shares six days after Goldman Sacks's sale of shares on July 25, 2014. "Different courts have found that 'contemporaneity' requires the insider and the investor/plaintiff to have traded anywhere from on the same day, to less than a week, to within a month, to 'the entire period while relevant and nonpublic information remained undisclosed.'" *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 599 (S.D. Tex. 2003), and cases cited therein. An allegation of a six-day gap between Goldman Sachs's sale and Universal's purchase does not render Universal an atypical class representative for the 2014 Goldman Sachs sales.

   **D.     Adequacy**

The adequacy factor requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *In re Deepwater Horizon*, 785 F.3d 1003, 1015 (5th Cir. 2015) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). Defendants

challenge Plaintiffs' ability to satisfy the adequacy requirement only as to the purchasers of Cobalt Notes. Defendants argue that Universal and St. Lucie are inadequate class representatives for Cobalt Notes purchasers.

Courts, including a court in this district, "have concluded that stock purchasers can represent purchasers of debt instruments and vice versa in the same action." *See In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 445 (S.D. Tex. 2002), and cases cited therein; *see also In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 360 (S.D.N.Y. 2016). In this case, Defendants do not challenge the adequacy of Plaintiffs GAMCO Global Gold, Natural Resources & Income Trust, GAMCO Natural Resources, Gold & Income Trust ('collectively GAMCO Funds"), Fire and Police Retiree Health Care Fund, San Antonio ("San Antonio") and Sjunde AP-Fonden ("AP"). Although these Plaintiffs purchased Cobalt stock and not Cobalt Notes, they have the same interest in proving that Defendants committed the same wrongful acts in the same manner against all members of the class – by making false and misleading statements that impacted all members of the proposed class similarly. As a result, even if Universal and St. Lucie were for some reason inadequate class representatives, these remaining Plaintiffs are adequate class representatives for all class members, including those who purchased only Cobalt Notes. *See id.*; *see also In re Petrobras*, 312 F.R.D. at 360.

## IV. ANALYSIS OF RULE 23(b)(3) FACTORS

Plaintiffs seek class certification pursuant to Rule 23(b)(3). As a result, they must prove that "the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." FED. R. CIV. P. 23(b)(3); *Torres*, 838 F.3d at 635-36.

### A. Superiority

Defendants in this case do not contest that a class action would normally be a superior means to adjudicate a securities fraud lawsuit. Indeed, the Court finds that class certification of this securities fraud case "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *See In re Deepwater Horizon*, 739 F.3d 790, 819 (5th Cir. 2014) (quoting *Amchem*, 521 U.S. at 615).

### B. Predominance

Defendants strenuously argue that common issues of law or fact do not predominate over individualized issues. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Torres*, 838 F.3d at 636 (quoting *Amchem*, 421 U.S. at 623). The

Rule 23(b)(3) predominance requirement is a demanding one, "even more demanding that Rule 23(a)'s." *Comcast*, 133 S. Ct. at 1432. It is the duty of the Court "to take a close look at whether common questions predominate over individual ones." *Id.* (internal quotations and citation omitted). "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, ___, 133 S. Ct. 1184, 1191 (2013).

Defendants admit that there are common issues of law and fact, such as whether the Defendants made misrepresentations, whether those misrepresentations were material, and whether those Defendants identified as "Control Defendants" in fact controlled Cobalt. Defendants argue, however, that certain individualized issues predominate over these common issues. Specifically, Defendants argue that issues relating to Plaintiffs' actual knowledge that the information on which they base their claims was materially false or misleading, whether each Plaintiff can trace his purchase of Cobalt securities to the registration statements, and whether each Plaintiff can prove reliance on the allegedly false statements. Defendants argue also that individualized issues regarding whether each individual Plaintiff purchases his shares in a domestic transaction preclude class certification.

***Actual Knowledge.*** – Defendants argue that class certification should be denied because any Plaintiff with actual knowledge that the information on which he bases his claims was materially false or misleading cannot recover under the securities laws. Defendants are correct that they cannot be liable under Section 11 to any person who "at the time [he acquired the security] knew" of the alleged untruth or omission in the Registration Statement. *See* 15 U.S.C. § 77k(a). In this case, Defendants argue that allegations regarding Nazaki's ownership by Angolan officials were public knowledge. Plaintiffs respond that those ***allegations*** were repeatedly and adamantly denied by Cobalt. There is no evidence in this record that any putative class member believed the Nazaki-related allegations notwithstanding Cobalt's denials, or that any putative class member otherwise had actual knowledge of Nazaki's true ownership. Defendants' speculation that such class members may exist does not support a finding that the "actual knowledge" issue predominates over the common issues in this case.

***Tracing.*** – Defendants argue that class certification is improper because each individual Plaintiff must trace his purchase of Cobalt securities to a relevant registration statement. "To be sure, only those who can trace their shares to the allegedly misleading registration statement" can recover on a Section 11 claim. *See Wallace v. IntraLinks*, 302 F.R.D. 310, 319 (S.D.N.Y. 2014) (citing *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 207 (S.D.N.Y. 2003)). "But tracing

is a merits issue that the court need not consider at the class certification stage." *Id*. (citing *In re Smart Technologies, Inc. Shareholder Litig.*, 295 F.R.D. 50, 61-62 (S.D.N.Y. 2013)). As a result, the requirement that each Plaintiff must ultimately show that he purchased his shares of Cobalt stock in connection with a public offering does not preclude class certification.

***Reliance*.**– Reliance is an element of Plaintiffs' Section 10(b) claim. *See Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, ___, 133 S. Ct. 1184, 1192 (2013). Defendants argue that each individual class member must prove that he relied on the allegedly false representations, and that the reliance issue predominates over the common issues in the case. In *Basic Inc. v. Levinson*, the Supreme Court recognized that requiring individualized proof of reliance "would place an unnecessarily unrealistic evidentiary burden" on securities fraud plaintiffs who traded on "an impersonal market." *Basic*, 485 U.S. 224, 245 (1988); *see also Amgen*, 133 S. Ct. at 1192. As a result, the Supreme Court in *Basic* "endorsed the 'fraud-on-the-market' theory, which permits certain Rule 10b-5 plaintiffs to invoke a rebuttable presumption of reliance on material misrepresentations aired to the general public." *Id.* (citing *Basic*, 485 U.S. at 241-249). "The fraud-on-the market theory rests on the premise that certain well developed markets are efficient possessors of public information. In such markets, the market price of shares will reflect all publicly

available information." *Id.* (internal quotations and brackets omitted) (citing *Basic*, 485 U.S. at 246).

A plaintiff asserting a Section 10(b) claim is entitled to the presumption of reliance if he shows the following: "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed." *Halliburton Co. v. Erica P. John Fund, Inc.*, __ U.S. __, 134 S. Ct. 2398, 2408 (2014). Defendants do not contest that Plaintiffs can satisfy these requirements for purposes of Cobalt stock, but argue that the Cobalt Notes were not traded in an efficient market. In *Halliburton*, the Supreme Court reaffirmed the *Basic* presumption, while acknowledging that the "markets for some securities are more efficient than the markets for others, and even a single market can process different kinds of information more of less efficiently, depending on how widely the information is disseminated and how easily it is understood." *Id.* at 2409. The presumption of reliance is based on the premise that "market professionals generally consider most publicly announced material statements about companies, thereby affecting stock market prices." *Id.* at 2410 (citing *Basic*, 485 U.S. at 247 n. 24). The Supreme Court in *Basic* recognized that market efficiency is a matter of degree. *Id.*

Many, indeed most, courts have held that bond markets are sufficiently efficient to support the fraud-on-the-market presumption of reliance. *See, e.g., In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401 (E.D. Va. 2015); *Bennett v. Sprint Nextel Corp.*, 298 F.R.D. 498 (D. Kan. 2014); *In re Winstar Comm. Sec. Litig.*, 290 F.R.D. 427 (S.D.N.Y. 2013); *In re Enron Corp. Sec. Derivative & ERISA Litig.*, 529 F. Supp. 2d 644 (S.D. Tex. 2006). In this case, Plaintiffs' expert provided a report discussing the various factors set forth in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989),[1] and provided his opinion that the market for Cobalt Notes was efficient. Defendants raise objections to Plaintiffs' expert's report, but Defendants' own expert was unwilling or unable to state that the market for Cobalt Notes was not efficient. *See* Deposition of Lucy Allen, Exh. 10 to Plaintiffs' Reply, p. 282. The Court finds that Plaintiffs have provided expert testimony demonstrating, at this class certification stage, that the market for Cobalt Notes was adequately efficient to allow them to rely on the fraud-on-the market presumption of reliance.

---

[1] The *Cammer* factors include (1) the stock's average trading volume; (2) the number of analysts that follow and report on the stock; (3) the number of market makers; (4) eligibility to file an S-3 Registration Statement; and (5) the reaction of the stock price to unexpected news events. *See Cammer*, 711 F. Supp. at 1286-87; *see also McNamara v. Bre-X Minerals, Ltd.*, 2002 WL 32076175, *4 (E.D. Tex. Sept. 30, 2002). "Because the *Cammer* factors were created in the context of the stock markets, courts adjust them for the realities of the over the counter bond market." *Winstar*, 290 F.R.D. at 446.

Defendants argue that, even if Plaintiffs are entitled to the rebuttable presumption of reliance based on the fraud-on-the-market theory, they have presented evidence that rebuts that presumption. The Court agrees that the presumption can be rebutted by evidence presented by the defendant that "severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price." *See Halliburton*, 134 S. Ct. at 2408. "In the absence of price impact, *Basic*'s fraud-on-the-market theory and presumption of reliance collapse." *Id.* at 2414. Defendants argue that the presumption of reliance has been rebutted by evidence that the alleged fraud had no price impact.

Defendants argue that there was no statistically significant price impact from the disclosures on April 15, 2012, regarding Nazaki's ownership. Yet, the first morning following that disclosure, the stock price fell 11%. Defendants argue there was no price impact from the December 1, 2013 press release regarding the Lontra well or the November 4, 2014 press release regarding the Loengo well, yet the stock prices fell 21% and 11%, respectively, following those disclosures. Defendants argue also that there was no price impact from the August 5, 2014 Bloomberg article regarding "social payments" to an Angolan research center that did not exist and regarding the SEC's issuance of a "Wells Notice" recommending the institution of an enforcement action against Cobalt in connection with the FCPA investigation. The

undisputed evidence, however, is that the price of Cobalt stock fell 11% following publication of the Bloomberg article. Defendants do not provide an alternate explanation for these significant declines in the Cobalt stock price. As a result, Defendants have not demonstrated that there was no price impact from the challenged disclosures and have failed to rebut the fraud-on-the-market presumption.[2] Because the fraud-on-the-market presumption remains in effect, reliance issues do not predominate over the common issues of law or fact.

***Foreign Purchases***.– Federal securities laws apply only to conduct "in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States." *Morrison v. Nat'l Austl. Bank. Ltd.*, 561 U.S. 247, 273 (2010). Defendants argue that foreign transactions of Cobalt Notes can impose no liability. It is unclear, however, whether any member of the proposed class engaged in foreign transactions – as opposed to foreign purchasers who engaged in domestic transactions. To the extent there were foreign purchases, there should be purchase documentation available to

---

[2] In connection with their argument regarding the absence of price impact, Defendants argue also that several of Cobalt's statements at issue are incorrectly characterized as corrective disclosures. Defendants' arguments about whether the disclosures were actually corrective has no bearing on the predominance inquiry for class certification. *See Marcus v. J.C. Penney Co., Inc.*, 2016 WL 8604331, *8 (E.D. Tex. Aug. 29, 2016) (citing *Amgen*, 133 S. Ct. at 1203). Resolution of the dispute regarding whether the statements were corrective "is an issue that is common to all members of the class and thus does not defeat predominance." *Id.*

determine objectively and easily whether any class member's purchase satisfies *Morrison.* Moreover, the Cobalt Notes are convertible upon maturity into shares of Cobalt's common stock, which are listed and traded on a domestic exchange. As a result, it is likely the Cobalt Notes would qualify as a transaction involving securities listed on a domestic exchange for purposes of *Morrison. See Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 323 (S.D.N.Y. 2011). Therefore, this issue does not predominate over the common issues of law and fact.

V. **MISCELLANEOUS ISSUES**

　A. **2019 Note Purchases after April 30, 2013**

Defendants argue that any class member who purchased the 2019 Cobalt Notes (Notes maturing in 2019) after April 30, 2013, cannot pursue a Section 11 claim because those claims have been dismissed. Defendant is correct that no Plaintiff who purchased such notes after April 30, 2013, can recover under Section 11 based on those purchases. The Court's prior dismissal of that claim, however, has no bearing on whether this case should be certified as a class action under Rule 23.

　B. **Three-Year Statute of Repose**

Section 11 claims are subject to a three-year statute of repose which provides that "[i]n no event" shall an action be brought "more than three years after the security was bona fide offered to the public." 15 U.S.C. § 77m. Defendants argue that this

three-year statute of repose may have expired for absent class members. Whether the statute of repose applies to bar absent class members' Section 11 claims is a common question of law applicable to all class members. Application of that legal issue would involve a simple review of purchase documents demonstrating when the purchase occurred. As a result, this issue does not preclude class certification.

### C. Exclusion of Foreign Purchasers

Defendants argue that foreign purchasers should be excluded from the class because their home jurisdiction may not enforce the resulting judgment. The *res judicata* effect of any judgment from this case in another country is not before this Court. That issue will be addressed by the appropriate court when and if a judgment against a Defendant is entered. Potential *res judicata* issues do not preclude class certification or require that all foreign purchasers be excluded from the class particularly where, as here, Defendants engaged in significant business operations in the United States, Cobalt's common stock is traded on the New York Stock Exchange, the stock purchases in this case were executed on that exchange, and Defendants are alleged to have made the misrepresentations in the United States.

### VI. CONCLUSION AND ORDER

Based on the foregoing, it is hereby

**ORDERED** that Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel [Doc. # 163] is **GRANTED**. It is further

**ORDERED** that, Defendants not having objected to the specific phrasing of the class definition requested by Plaintiffs, the Court certifies the following class as Plaintiffs request:

> All persons and entities who purchased or otherwise acquired Cobalt securities between March 1, 2011 and November 3, 2014, inclusive, and were damaged thereby. Included within the Class are all persons and entities who purchased shares of Cobalt common stock on the open market and/or pursuant or traceable to the registered public offerings on or about (i) February 23, 2012; (ii) January 16, 2013; and (iii) May 8, 2013. Also included within the Class are all persons and entities who purchased Cobalt convertible senior notes on the open market and/or pursuant or traceable to registered public offerings on or about (i) December 12, 2012; and (ii) May 8, 2014.
>
> Excluded from the Class are Defendants, the officers and directors of the Defendants during the Class Period (the "Excluded Officers and Directors"); members of the immediate families of the individual Defendants and of the Excluded Officers and Directors; any entity in which any Defendant, any Excluded Officer or Director, or any of their respective immediate family members has, and/or had during the Class Period, a controlling interest; Defendants' liability insurance carriers; any affiliates, parents, or subsidiaries of the corporate Defendants; all corporate Defendants' plans that are covered by ERISA; and the legal representatives, heirs, agents, affiliates, successors-in-interest or assigns of any excluded person or entity, in their respective capacity as such.

It is further **ORDERED** that Plaintiffs GAMCO Global Gold, Natural Resources & Income Trust; GAMCO Natural Resources, Gold & Income Trust; St. Lucie County Fire District Firefighters' Pension Trust Fund; Fire and Police Retiree Health Care Fund, San Antonio; Sjunde AP-Fonden; and Universal Investment Gesellschaft m.b.H. are appointed as **Class Representatives**. It is further

**ORDERED** that Entwistle & Cappucci LLP and Bernstein Litowitz Berger & Grossmann LLP are appointed as **Class Counsel**. It is further

**ORDERED** that counsel shall appear before the Court on **July 12, 2017**, at **10:00 a.m.** for a status and scheduling conference. On or before July 7, 2017, counsel shall file a proposed Docket Control Order to govern the remaining deadlines in this case.

SIGNED at Houston, Texas, this **15th** day of **June, 2017**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE