**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE COBALT INTERNATIONAL ENERGY, INC. SECURITIES LITIGATION | LEAD CASE NO. 4:14-cv-03428 |

## DEFENDANTS' MOTION TO RECONSIDER THE COURT'S MEMORANDUM AND ORDER GRANTING CLASS CERTIFICATION

SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Noelle M. Reed
1000 Louisiana Street, Suite 6800
Houston, Texas 77002
Tel: (713) 655-5122
Fax: (713) 483-9122

SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Jay B. Kasner
Scott D. Musoff
Four Times Square
New York, New York 10036-6518
Tel: (212) 735-3000
Fax: (212) 735-2000

BAKER BOTTS LLP
David D. Sterling
Danny David
Russell Lewis
Amy Pharr Hefley
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002
Tel: (713) 229-1946
Fax: (713) 229-7946

QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
Karl Stern
David Gerger
Emily Smith
Pennzoil Place
711 Louisiana Street, Suite 500
Houston, Texas 77002
Tel: (713) 221-7000
Fax: (713) 221-7100

WACHTELL, LIPTON, ROSEN & KATZ
George T. Conway
Carrie M. Reilly
Corey J. Banks
51 West 52nd Street
New York, New York  10019
Tel:  (212) 403-1000
Fax: (212) 403-2000

WILLIAMS & CONNOLLY LLP
Robert A. Van Kirk
George A. Borden
John S. Williams
725 Twelfth Street, N.W.
Washington, D.C.  20005
Tel:  (202) 434-5000
Fax: (202) 434-5029

GARDERE WYNNE SEWELL LLP
Ronald L. Oran
1000 Louisiana Street, Suite 2000
Houston, Texas  77002
Tel:  (713) 276-5983
Fax: (713) 276-6983

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................iii

TABLE OF AUTHORITIES....................................................................................iv

I.   LEGAL STANDARD ................................................................................ 2

II.  THIS COURT'S ORDER............................................................................ 4

III. ARGUMENT .............................................................................................. 6

    A.   No Securities Act class may be certified for the February 2012
         Offering because no Plaintiff with standing to do so brought a claim
         challenging that offering within the statute of repose. ................................. 6

    B.   No Securities Act class may be certified, and any Exchange Act
         class must be limited to purchasers after June 15, 2012, because the
         applicable statutes of repose expired before absent, nonnamed class
         members became parties to the case. ........................................................... 8

    C.   The Second Circuit's recent decision in *Petrobras* demonstrates that
         Cobalt noteholders must be excluded from any class because
         Plaintiffs have not presented sufficient evidence to show that
         *Morrison* inquiries do not predominate over common issues. .................... 10

    D.   Any Securities Act class must exclude 2019 Note purchases that
         occurred after April 30, 2013. .................................................................... 12

IV.  CONCLUSION ........................................................................................ 13

# TABLE OF AUTHORITIES

## Cases

*American Pipe & Constr. Co. v. Utah*,
  414 U.S. 538 (1974) ...................................................................................... 1

*Banik v. Tamez*,
  No. 7:16-CV-462, 2017 WL 1228498 (S.D. Tex. Apr. 4, 2017) ............................... 2, 3

*California Public Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
  137 S. Ct. 2042 (2017).................................................................................*passim*

*Crevier-Gerukos v. Eisai, Inc.*,
  No. H-11-0434, 2013 WL 12137089 (S.D. Tex. June 24, 2013) ................................... 2

*Dusek v. JPMorgan Chase & Co.*,
  832 F.3d 1243 (11th Cir. 2016), *cert. denied*,
  No. 16-389, 2017 WL 2742914 (U.S. June 27, 2017) ................................................ 10

*Galveston Open Gov't Project v. U.S. Dep't of Hous. & Urban Dev.*,
  17 F. Supp. 3d 599 (S.D. Tex. 2014).................................................................. 6

*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (9th Cir. 2013) ........................................................................ 7

*In re: Petrobras Sec. Litig.*,
  312 F.R.D. 354 (S.D.N.Y. 2016), *aff'd in part, vacated in part sub nom. In re
  Petrobras Sec.*, No. 16-1914-CV, 2017 WL 2883874 (2d Cir. July 7, 2017).......3, 4, 11

*In re Petrobras Sec.*,
  No. 16-1914-CV, 2017 WL 2883874 (2d Cir. July 7, 2017) ................................*passim*

*Melancon v. Texaco, Inc.*,
  659 F.2d 551 (5th Cir. Unit A Oct. 1981) ........................................................ 2

*Morlan v. Universal Guar. Life Ins. Co.*,
  298 F.3d 609 (7th Cir. 2002) ........................................................................ 9

*Morrison v. Nat'l Australia Bank Ltd.*,
  561 U.S. 247 (2010) ......................................................................4, 6, 10, 11, 12

*Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & ERISA Litig.)*,
   No. MDL-1446, H-01-3624, 2004 WL 405886 (S.D. Tex. Feb. 25, 2004) .................. 6

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ........................................................................... 6

*Smith v. Bayer Corp.*,
   564 U.S. 299 (2011) ........................................................................... 9

*SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*,
   829 F.3d 173 (2d Cir. 2016), *cert. denied sub nom.*
   *SRM Glob. Master Fund Ltd. P'ship v. Bear Sterns Cos. LLC*,
   No. 16-372, 2017 WL 2742913 (U.S. June 27, 2017) ...............................9-10

*Standard Fire Ins. Co. v. Knowles*,
   133 S. Ct. 1345 (2013) ........................................................................ 9

## Statutes

15 U.S.C. § 77a ................................................................................... 1

15 U.S.C. § 78a ................................................................................... 1

28 U.S.C. § 1658(b)(2) ......................................................................... 9

## Rules

Fed. R. Civ. P. 15(c) ............................................................................ 7

Fed. R. Civ. P. 23 ..................................................................... 10, 11, 12

Fed. R. Civ. P. 54(b) ........................................................................... 2

Fed. R. Civ. P. 59(e) ........................................................................... 2

Fed. R. Civ. P. 60(b) ....................................................................... 2, 3

Defendants respectfully submit this motion to reconsider the Court's June 15, 2017 Memorandum and Order ("Order") granting Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel in light of the Supreme Court's June 26, 2017 decision in *California Public Employees' Retirement System v. ANZ Securities, Inc.*, 137 S. Ct. 2042 (2017) ("*CalPERS*").

In *CalPERS*, the Supreme Court held that the doctrine of equitable tolling enunciated in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), "does not apply to the 3-year [statute of repose] mandated in § 13" of the Securities Act of 1933, 15 U.S.C. § 77a et seq. ("Securities Act").  137 S. Ct. at 2052.  This recent decision gives rise to the instant motion.  Applying the analysis through which the Court reached this conclusion, (1) no Securities Act class may be certified as to the February 23, 2012 offering of Cobalt stock (the "February 2012 Offering") because no Plaintiff with standing brought a claim within the three-year statute of repose, and (2) no Securities Act class may be certified as to any of the five offerings at issue because the three-year statute of repose expired before nonnamed class members became parties to the case.  In addition, the implications of the *CalPERS* decision require that any remaining class for claims arising under the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq. ("Exchange Act"), not include any absent, nonnamed class members who purchased Cobalt stock more than five years before this Court's Order.

Reconsideration is also warranted to exclude the claims of Cobalt noteholders because, as made clear in the Second Circuit's recent decision in *In re Petrobras Securities*, No. 16-1914-CV, 2017 WL 2883874 (2d Cir. July 7, 2017) ("*Petrobras*"),

individualized inquiries into the locations of noteholders' transactions will predominate over common questions.  Finally, this Court should revise its Order to make clear that class members whose claims this Court already dismissed are not included in the class definition.

## I.     LEGAL STANDARD

A motion to reconsider an interlocutory order invokes a district court's authority under Rule 54(b) to "revise[] [such an order] at any time before the entry of a judgment." Fed. R. Civ. P. 54(b); *Crevier-Gerukos v. Eisai, Inc.*, No. H-11-0434, 2013 WL 12137089, at *4 (S.D. Tex. June 24, 2013).  Rule 54(b) provides a district court with broad discretion, allowing it to "reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. Unit A Oct. 1981).  Given the breadth of this authority, courts interpreting Rule 54(b) often look to Federal Rules of Civil Procedure 59(e) and 60(b) for guidance on an appropriate standard.  *See Crevier-Gerukos*, 2013 WL 12137089, at *4; *Banik v. Tamez*, No. 7:16-CV-462, 2017 WL 1228498, at *1 (S.D. Tex. Apr. 4, 2017).  The standard for Rule 54(b) is "less exacting than would be a motion under Rule 59(e), which is in turn less exacting than the standards enunciated in Rule 60(b)." *Crevier-Gerukos*, 2013 WL 12137089, at *4 (citation omitted).  Rule 59(e) permits a court to alter or amend a judgment if a party moves for reconsideration within 28 days of the entry of judgment, Fed. R. Civ. P. 59(e), and there is (1) an intervening change in controlling law, (2) new

evidence not previously available, or (3) a clear error of law that would create manifest injustice. *Banik*, 2017 WL 1228498, at *1 (citation omitted).[1]

Reconsideration is warranted here because there have been intervening changes in controlling law.  The Supreme Court's recent decision in *CalPERS* has definitively established that Section 13's three-year limitation period is a statute of repose that cannot be equitably tolled.  137 S. Ct. at 2052.  As the Court noted, "the object of a statute of repose, to grant complete peace to defendants, supersedes the application of a tolling rule based in equity." *Id.*  The Court reached this decision based on its analysis of "the text, purpose, structure, and history of the statute," all of which "disclose the congressional purpose to offer defendants full and final security after three years." *Id.*  Applying the logic of the Supreme Court's reasoning precludes certification of a Securities Act class here, where the three-year statute of repose ran before the class was certified.

In addition, in Plaintiffs' Reply in Further Support of Motion for Class Certification, Plaintiffs relied expressly on the district court's opinion in *Petrobras* for

---

[1]   Rule 60(b), in turn, permits a court to alter or amend a judgment or order at any time for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

the proposition that this Court could address whether noteholders' transactions were domestic or foreign at a later stage.  (Pls.' Reply in Further Support of Mot. for Class Certification (Dkt. 239), at 4, 43); *see In re: Petrobras Sec. Litig.*, 312 F.R.D. 354, 364 (S.D.N.Y. 2016) (holding that extraterritoriality concerns did not preclude certification because "a court, a putative class member, or a claims administrator can use [financial documentation] to determine whether a claim satisfies *Morrison* [*v. National Australia Bank Ltd.*, 561 U.S. 247 (2010)]").  On July 7, 2017, the Second Circuit reversed that part of the district court's decision, holding that domesticity inquiries are part of a predominance analysis that must be undertaken at the certification stage.  *Petrobras*, 2017 WL 2883874, at *15-16.

## II.    THIS COURT'S ORDER

In their brief opposing Plaintiffs' motion for class certification, Defendants argued that no Securities Act class could be certified because the statute of repose barred the claims of nonnamed class members as a matter of law.  Defendants noted that the *CalPERS* case then-pending in the Supreme Court would address a key predicate to that argument.  (Defs.' Opp'n to Pls.' Mot. for Class Certification (Dkt. No. 205), at 16-19.)  In the Order, this Court held that the repose issue did not stand in the way of class certification, concluding that "[w]hether the statute of repose applies to bar absent class members' Section 11 claims is a common question of law applicable to all class members," and that applying this "legal issue [in a class context] would involve a simple

review of purchase documents demonstrating when the purchase occurred." (Order, at 18.)

After this Court issued its Order, the Supreme Court decided *CalPERS*, which gives this Court significant grounds for reconsidering the Order. To start, the Supreme Court has now eliminated any doubt that the Defendants' interpretation of Section 13 is correct: equitable tolling does not apply to a statute of repose, and the claims of nonnamed class members are therefore legally barred regardless of any facts that Plaintiffs might establish in discovery. The holding in *CalPERS* is likewise dispositive on the question of class certification. As the Court made clear, applying the principle enunciated in *CalPERS* would not implicate a review of each proposed class member's purchase documents as this Court contemplated in its Order. Under *CalPERS*, such evidence is not probative of whether nonnamed class members' Securities Act claims are timely. As discussed below, because nonnamed class members did not assert claims within the repose period, they never became parties to the suit. And because they did not (and can no longer) become parties, any other facts surrounding their alleged investments (as reflected in purchase documents or otherwise) are legally irrelevant.

Defendants also argued that the question of whether each bond purchase was foreign or domestic would predominate over common questions, thus precluding the certification of classes containing purchasers of Cobalt notes. (Defs.' Opp'n to Pls.' Mot. for Class Certification (Dkt. No. 205), at 54-57.) This Court rejected that argument, noting that "[t]o the extent there were foreign purchases, there should be purchase documentation available to determine objectively and easily whether any class member's

purchase satisfies *Morrison*."  (Order, at 16-17.)  The Second Circuit has now reached a contrary conclusion in the *Petrobras* decision.  2017 WL 2883874, at *15-16.

## III.    ARGUMENT

**A.    No Securities Act class may be certified for the February 2012 Offering because no Plaintiff with standing to do so brought a claim challenging that offering within the statute of repose.**

The three-year statute of repose contained in Section 13 of the Securities Act applies here to bar Plaintiffs' Securities Act claims challenging the February 2012 Offering.

"[I]n order for a claim to be asserted on behalf of a putative class, [a] named plaintiff[] . . . must have standing."  *Newby v. Enron Corp.* (*In re Enron Corp. Sec., Derivative & ERISA Litig.*), No. MDL-1446, H-01-3624, 2004 WL 405886, at *3 (S.D. Tex. Feb. 25, 2004) (first alteration in original); *see also Galveston Open Gov't Project v. U.S. Dep't of Hous. & Urban Dev.*, 17 F. Supp. 3d 599, 603 (S.D. Tex. 2014) (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." (alteration in original))).

In the Original Complaint filed on November 30, 2014 (Dkt. No. 1), however, the two named Plaintiffs—St. Lucie County Fire District Firefighters' Pension Trust Fund ("St. Lucie") and Fire and Police Retiree Health Care Fund, San Antonio ("San Antonio")—did not allege facts suggesting that they purchased shares in or traceable to

the February 2012 Offering.  Consequently, neither Plaintiff had the requisite standing to assert, in an individual capacity, Securities Act claims directed at that offering.[2] Although an additional named Plaintiff, Universal Investment Gesellschaft m.b.H. ("Universal"), later brought claims related to the February 2012 Offering, it did so only in the Amended Complaint filed on May 1, 2015 (Pls.' 1st Am. CAC (Dkt. No. 72)), after the three-year statute of repose had expired.  Because this repose period is not subject to equitable tolling under *CalPERS*, 137 S. Ct. at 2052, Universal's claims are time-barred.[3]

---

[2]  St. Lucie claimed to be a purchaser only of Cobalt debt in subsequent offerings, and thus did not have Article III or statutory standing to bring an individual claim directed at the February 2012 Offering.  San Antonio allegedly bought shares of Cobalt common stock on March 26, 2013 and December 9, 2013.  (*See* Dkt. No. 1-2, at 3.) But these aftermarket transactions, by definition, could not have been made *in* the February 2012 Offering.  Further, at the time of San Antonio's alleged purchases, Cobalt stock already had been issued through three unrelated public offerings (the Company's 2009 initial public offering, an April 2011 stock offering, and a January 2013 stock offering).  (*See* Pls.' 1st Am. CAC (Dkt. No. 72) ¶¶ 62, 136, 160.)  These intervening offerings are dispositive here:  Because San Antonio alleged no facts from which to infer that its aftermarket purchases were "traceable" to the February 2012 Offering (as opposed to the other three stock offerings), this alternative theory of standing under Section 11 is unavailable.  *See, e.g.*, *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107-08 (9th Cir. 2013) (affirming dismissal of Section 11 claims for lack of standing based on aftermarket stock purchases where company had "issued shares in multiple offerings under more than one registration statement," and where plaintiff's allegations of traceability were "conclusory").

[3]  Universal also cannot argue that its purported claims are timely because they "relate back" to the filing of the Original Complaint under Federal Rule of Civil Procedure 15(c).  Like tolling, this procedural vehicle, if allowed here, would enable Plaintiffs to enlarge the time limitation imposed by the three-year statute of repose—a result that would subvert the principles articulated by the Supreme Court in *CalPERS*.  *See* 137 S. Ct. at 2050 (reaffirming that "[t]he purpose of a statute of repose is to create 'an absolute bar on a defendant's temporal liability'" (citation omitted)).

This conclusion is compelled by the Supreme Court's reasoning in *CalPERS*—that the Securities Act's three-year statute of repose is absolute and "admits of no exception." *Id.* at 2049.  Allowing Universal's untimely claims to proceed would create the very kind of exception that the Court foreclosed in *CalPERS*, thereby "expand[ing] a defendant's accountability" beyond the three-year time period mandated by statute and, in so doing, "contradicting the substance of a statute of repose."  *Id.* at 2053.  On this basis, claims arising from the February 2012 Offering must be dismissed with prejudice.

**B.**    **No Securities Act class may be certified, and any Exchange Act class must be limited to purchasers after June 15, 2012, because the applicable statutes of repose expired before absent, nonnamed class members became parties to the case.**

The Supreme Court's rejection of equitable tolling for statutes of repose also provides ample grounds for this Court to reconsider its Order in two other respects. Specifically, under *CalPERS*, this Court (1) cannot certify a Securities Act class at all because the Order issued after the statute of repose had expired for each of the relevant offerings, and (2) cannot include in any remaining Exchange Act class persons and entities who purchased Cobalt stock prior to June 15, 2012—more than five years before the Order—because the Exchange Act's five-year repose period lapsed as to those purchasers.

Absent class members may become members of a class only if (1) the applicable statute of limitations has not expired (or has been tolled), and (2) any governing statute of repose has not expired.  Indeed, it is "novel and surely erroneous" to suggest "that a nonnamed class member is a party to the class-action litigation *before the class is*

8

*certified*." *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (emphasis in original) (citation omitted); *accord Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349 (2013). Thus, "until certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiffs." *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002).

This controlling precedent, when applied together with *CalPERS*, cannot support the certification of a Securities Act class for any of the five offerings, which took place on February 23, 2012; December 12, 2012; January 16, 2013; May 8, 2013; and May 8, 2014—all more than three years before this Court's June 15, 2017 Order certifying a class. (*See* Pls.' Mem. in Supp. of Mot. for Class Certification (Dkt. No. 164), at 2 (identifying the offerings).) Because nonnamed class members did not assert claims within this three-year repose period, they never became—and cannot now become— parties to this litigation absent equitable tolling. And because *CalPERS* has conclusively barred equitable tolling, certifying these now-untimely claims would be legally erroneous.

Under this same logic, absent, nonnamed class members who purchased Cobalt stock more than five years before the Court's June 15, 2017 Order likewise cannot be included in an Exchange Act class based on the governing five-year statute of repose contained in 28 U.S.C. § 1658(b)(2). *See SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*, 829 F.3d 173, 176-77 (2d Cir. 2016) (holding that § 1658(b)(2) is a statute of repose as to which equitable tolling cannot apply), *cert. denied sub nom. SRM Glob. Master Fund Ltd. P'ship v. Bear Sterns Cos. LLC*, No. 16-372, 2017 WL 2742913

(U.S. June 27, 2017); *see also Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1249 (11th Cir. 2016) (same), *cert. denied*, No. 16-389, 2017 WL 2742914 (U.S. June 27, 2017).  Accordingly, any remaining Exchange Act class should exclude all persons and entities who purchased Cobalt stock prior to June 15, 2012.[4]

**C.      The Second Circuit's recent decision in *Petrobras* demonstrates that Cobalt noteholders must be excluded from any class because Plaintiffs have not presented sufficient evidence to show that *Morrison* inquiries do not predominate over common issues.**

In their brief opposing class certification, Defendants argued that this Court should analyze at the class certification stage whether Plaintiffs would be able to show that Cobalt noteholders purchased in domestic transactions, as required by the Supreme Court in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010).  (Defs.' Opp'n To Pls.' Mot. for Class Certification (Dkt. No. 205), at 54-57.)  This Court held that questions of foreign transactions did not predominate over the common issues of law and fact, noting that "[t]o the extent there were foreign purchases, there should be purchase documentation available to determine objectively and easily whether any class member's purchase satisfies *Morrison*."  (Order, at 16-17.)

In *Petrobras*, the Second Circuit recently reversed a similar approach to *Morrison* taken by a district court in a class certification order.  2017 WL 2883874.  Specifically, the Second Circuit held that the *Morrison* analysis "generate[s] a set of individualized

---

[4]     If nothing else, there surely is a critical typicality problem under Federal Rule of Civil Procedure 23(a) if nonnamed class members' claims are subject to dismissal on grounds that do not apply to the named class members.

inquiries that must be considered within the framework of Rule 23(b)(3)'s predominance requirement." *Id.* at *15. The Second Circuit explained that because the Petrobras notes did not trade on a domestic exchange, "to assert claims under federal securities laws, Noteholders must show in some other manner that the Notes they hold were acquired in a 'domestic transaction'" such as by "producing evidence 'including, but not limited to, facts concerning the formation of the contracts, the placement of purchase orders, . . . or the exchange of money.'" *Id.* at *6. (citation omitted). The court noted that "[t]hese transaction-specific facts are not obviously 'susceptible to [] class-wide proof.'" *Id.* at *14 (second alteration in original) (citation omitted).

Like this Court, the district court in *Petrobras* had "suggested that the pertinent locational details for each transaction are likely to be found in the 'record[s] routinely produced by the modern financial system,' and 'are highly likely to be documented in a form susceptible to the bureaucratic processes of determining who belongs to a Class.'" *Id.* at *15 (alteration in original) (citation omitted).[5] The Second Circuit held that "[e]ven if that fact is true, however, it does not obviate the need to consider the plaintiff-specific nature of the *Morrison* inquiry." *Id.* Because the class members' *Morrison* inquiries would not "prevail or fail in unison," the fact-finder would have to examine each class member's transaction documents to determine who had a claim. *Id.* at *16. Therefore,

---

[5] The district court in *Petrobras* further noted that such documentation could be used to determine whether a claim satisfies *Morrison* at the merits or claims administration stage. *In re: Petrobras Sec. Litig.*, 312 F.R.D. 354, 364 (S.D.N.Y. 2016), *aff'd in part, vacated in part sub nom. In re Petrobras Sec.*, No. 16-1914-CV, 2017 WL 2883874 (2d Cir. July 7, 2017).

the Second Circuit remanded for further analysis under *Morrison* of the "robust predominance inquiry that Rule 23 demands." *Id.*

For these same reasons, Defendants respectfully request that the Court reconsider the Order on this issue, because Plaintiffs (1) offered no evidence that would satisfy *Morrison*'s domestic transaction requirement and (2) failed to establish predominance with respect to a class of purchasers of Cobalt notes.

**D.     Any Securities Act class must exclude 2019 Note purchases that occurred after April 30, 2013.**

The Court should amend its definition of the Securities Act class to conform with its Order of January 19, 2016, dismissing Section 11 claims brought by any purchasers of the 2019 Notes[6] after April 30, 2013, for failure to plead reliance.  Although this Court reaffirmed that ruling in its June 15, 2017 Order, it nevertheless adopted in full the original class definition proposed by Plaintiffs:

> All persons and entities who purchased or otherwise acquired Cobalt securities between March 1, 2011 and November 3, 2014, inclusive, and were damaged thereby. Included within the Class are all persons and entities who purchased shares of Cobalt common stock on the open market and/or pursuant or traceable to the registered public offerings on or about (i) February 23, 2012; (ii) January 16, 2013; and (iii) May 8, 2013. Also included within the Class are all persons and entities who purchased Cobalt convertible senior notes on the open market and/or pursuant or traceable to registered public offerings on or about (i) December 12, 2012; and (ii) May 8, 2014.
>
> . . .

(Order, at 19.)

---

[6]     On December 12, 2012, Cobalt offered $1.38 billion of 2.625% convertible senior notes due in 2019 ("2019 Notes").

This class definition <u>includes</u> claims that the Court has already dismissed.  This definition does not exclude from the Securities Act class Section 11 claims by any purchasers of 2019 Notes after April 30, 2013.  Defendants therefore request that the Court reconsider its ruling and, consistent with its January 2016 and June 2017 Orders, exclude Section 11 claims by any purchasers of 2019 Notes after April 30, 2013 from the class definition.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully ask the Court to (1) reconsider its Order and deny class certification as to all Securities Act claims, (2) exclude from any remaining Exchange Act class all persons and entities who purchased Cobalt stock prior to June 15, 2012, (3) exclude all Cobalt noteholders from any class, and (4) exclude from the class definition Section 11 claims by any purchasers of 2019 Notes after April 30, 2013.

Dated:  July 13, 2017

Respectfully submitted,

*/s/ Noelle M. Reed*
Noelle M. Reed
*Attorney-in-Charge*
Texas Bar No. 24044211
Fed. Bar No. 27139
Email: noelle.reed@skadden.com
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
1000 Louisiana Street, Suite 6800
Houston, Texas  77002
Tel:  (713) 655-5122
Fax: (713) 483-9122

*Of Counsel*
Jay B. Kasner
*(Admitted Pro Hac Vice)*
Email: jay.kasner@skadden.com
Scott D. Musoff
*(Admitted Pro Hac Vice)*
Email: scott.musoff@skadden.com
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036-6518
Tel:  (212) 735-3000
Fax: (212) 735-2000

*Counsel for the Underwriter Defendants
Goldman, Sachs & Co.; Morgan Stanley &
Co. LLC; Credit Suisse Securities (USA)
LLC; Citigroup Global Markets Inc.; J.P.
Morgan Securities LLC; Tudor, Pickering,
Holt & Co. Securities, Inc.; Deutsche Bank
Securities Inc.; RBC Capital Markets, LLC;
UBS Securities LLC; Howard Weil
Incorporated; Stifel, Nicolaus & Company,
Incorporated; Capital One Southcoast,
Inc.; and Lazard Capital Markets LLC.*

14

*Of Counsel*
Danny David
Texas Bar No. 24028267
Email:danny.david@bakerbotts.com
Russell Lewis
Texas Bar No. 24036968
Fed. Bar No. 569523
Email: russell.lewis@bakerbotts.com
Amy Pharr Hefley
Texas Bar No. 24046046
Email: amy.hefley@bakerbotts.com
BAKER BOTTS LLP
One Shell Plaza
910 Louisiana Street
Houston, Texas  77002
Tel:  (713) 229-1234
Fax: (713) 229-1522

*/s/ David D. Sterling* (by permission)
David D. Sterling
*Attorney-in-Charge*
Texas Bar No. 19170000
Fed. Bar No. 07079
Email: david.sterling@bakerbotts.com
BAKER BOTTS LLP
One Shell Plaza
910 Louisiana Street
Houston, Texas  77002
Tel:  (713) 229-1946
Fax: (713) 229-7946

*Counsel for Defendants James W. Farnsworth; John P. Wilkirson; Peter R. Coneway; Henry Cornell; Jack E. Golden; N. John Lancaster; Jon A. Marshall; Kenneth W. Moore; J. Hardy Murchison; Michael G. France; Kenneth A. Pontarelli; Scott L. Lebovitz; Myles W. Scoggins; D. Jeff van Steenbergen; Martin H. Young, Jr.; William P. Utt; and Cobalt International Energy, Inc.*

*Of Counsel*
David Gerger
Texas Bar No. 07816360
Fed. Bar No. 10078
Email: davidgerger@quinnemanuel.com
Emily Smith
Texas Bar No. 24083876
Email: emilysmith@quinnemanuel.com
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
Pennzoil Place
711 Louisiana Street, Suite 500
Houston, Texas  77002
Tel:  (713) 221-7000
Fax: (713) 221-7100

*/s/ Karl Stern* (by permission)
Karl Stern
*Attorney-in-Charge*
Texas Bar No. 19175665
Fed. Bar No. 04870
Email: karlstern@quinnemanuel.com
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
Pennzoil Place
711 Louisiana Street, Suite 500
Houston, Texas  77002
Tel:  (713) 221-7000
Fax: (713) 221-7100

*Counsel for Defendant Joseph H. Bryant*

15

*Of Counsel*
Carrie M. Reilly
*(Admitted Pro Hac Vice)*
Email: cmreilly@wlrk.com
Corey J. Banks
*(Admitted Pro Hac Vice)*
Email: cjbanks@wlrk.com
WACHTELL, LIPTON,
    ROSEN & KATZ
51 West 52nd Street
New York, New York  10019
Tel:  (212) 403-1000
Fax: (212) 403-2000

Ronald L. Oran
Texas Bar No. 24072268
Fed. Bar No. 1065184
Email: roran@gardere.com
Gardere Wynne Sewell LLP
1000 Louisiana Street, Suite 2000
Houston, Texas  77002
Tel:  (713) 276-5983
Fax: (713) 276-6983

*/s/ George T. Conway (by permission)*
George T. Conway
*Attorney-in-Charge*
*(Admitted Pro Hac Vice)*
New York Bar No. 2266880
Email: gtconway@wlrk.com
WACHTELL, LIPTON,
    ROSEN & KATZ
51 West 52nd Street
New York, New York  10019
Tel:  (212) 403-1000
Fax: (212) 403-2000

*Counsel for Defendants The Goldman Sachs
Group, Inc.; Riverstone Holdings LLC; FRC
Founders Corporation; and ACM Ltd.*

*Of Counsel*
George A. Borden
Fed. Bar No. 354026
Email: gborden@wc.com
John S. Williams
Fed. Bar No. 2543133
Email: jwilliams@wc.com
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Tel:  (202) 434-5000
Fax: (202) 434-5029

*/s/ Robert A. Van Kirk (by permission)*
Robert A. Van Kirk
*Attorney-in-Charge*
Fed. Bar No. 386734
Email: rvankirk@wc.com
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Tel:  (202) 434-5000
Fax: (202) 434-5029

*Counsel for Defendant The Carlyle
Group, L.P.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 13, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those who have registered with this Court.


*/s/ Noelle M. Reed*
Noelle M. Reed