IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE COBALT INTERNATIONAL ENERGY, INC. SECURITIES LITIGATION | § § § | CIVIL ACTION NO. H-14-3428 |

# MEMORANDUM AND ORDER

This securities case is before the Court on Defendants' Motion to Reconsider the Court's Memorandum and Order Granting Class Certification ("Motion to Reconsider") [Doc. # 251], to which Plaintiffs filed an Opposition [Doc. # 256], and Defendants filed a Reply [Doc. # 263]. Also pending is Defendants' Motion to Stay Discovery Pending Appeal of Class Certification Order ("Motion to Stay") [Doc. # 252], to which Plaintiffs filed an Opposition [Doc. # 257], and Defendants filed a Reply [Doc. # 264]. Having reviewed the record and the relevant legal authorities, the Court **denies** both Motions.

## I. BACKGROUND

The background of this case has been set forth fully in the Court's prior rulings, including the Memorandum and Order granting class certification. *See* Memorandum and Order [Doc. # 244], entered June 15, 2017. Briefly, Cobalt International Energy, Inc. ("Cobalt"), is an exploration and production company that was formed in 2005

as a private company. Cobalt conducted an initial public offering ("IPO") of its shares in December 2009.

In 2007, Cobalt entered into an agreement with Sonangol E.P. ("Sonangol"), the Angolan national oil company, to acquire a 40% interest in oil exploration Blocks 9, 20, and 21 in offshore Angola. In 2009, the Angolan Parliament issued two decrees assigning an interest in the Blocks to Nazaki Oil & Gaz ("Nazaki"), Sonangol P&P, and Alper Oil, Limitada ("Alper"). In February 2010, Cobalt and these other companies signed Risk Services Agreements ("RSAs") with Sonangol.

On January 4, 2011, Cobalt filed a Registration Statement and Prospectus ("January 2011 Registration Statement") with the Securities and Exchange Commission ("SEC"). Based on this 2011 Registration Statement, Cobalt conducted, *inter alia*, a stock offering in late February 2012 ("February 2012 Stock Offering"). Additionally, Cobalt conducted registered public offerings of Cobalt convertible senior notes ("Cobalt Notes") in December 2012 and May 2014.

On March 10, 2011, Cobalt learned that the SEC was conducting an informal inquiry into allegations that there existed a connection between Nazaki and senior government officials in Angola. The next day, Cobalt contacted the Department of Justice ("DOJ") regarding the same allegations. Both the SEC and the DOJ later began formal investigations into whether Cobalt had violated the Foreign Corrupt

Practices Act of 1977 ("FCPA"). These SEC and DOJ investigations regarding FCPA violations ended with no recommendation for enforcement action against Cobalt.

Meanwhile, Cobalt drilled two exploration wells in the offshore Angola drilling region: Lontra on Block 20 and Loengo on Block 9. Cobalt had no rights to gas discoveries and, instead, had rights only to any oil that was discovered in the Blocks. Ultimately, Lontra was found to contain a substantially higher percentage of gas than originally estimated, and drilling at Loengo failed to discover oil.

On April 15, 2012, the *Financial Times* published two reports that Nazaki was owned by Angolan officials, who had admitted their ownership interest to the *Financial Times*. On December 1, 2013, Cobalt issued a press release disclosing that the Lontra well contained primarily gas to which Cobalt had no rights. On August 5, 2014, Bloomberg reported that the SEC had issued a "Wells Notice" recommending the institution of an enforcement action, and that "social payments" that Cobalt was required to make to the Angolan government to fund a research center were for a center that did not exist. On November 4, 2014, Cobalt issued a press release disclosing that the Loengo well was a "dry hole" with no oil. The price of Cobalt shares declined after each of these reports.

On November 30, 2014, Plaintiffs St. Lucie County Fire District Firefighters' Pension Trust Fund and Fire and Police Retiree Health Care Fund of San Antonio

filed this Class Action lawsuit. By Orders [Docs. # 67 and # 68] entered March 3, 2015, the Court consolidated all pending securities lawsuits against Cobalt into the *St. Lucie* case and appointed lead plaintiffs, lead counsel, and liaison counsel. On May 1, 2015, Plaintiffs filed their Consolidated Amended Class Action Complaint [Doc. # 72].

On March 15, 2017, Plaintiffs filed their Second Amended Complaint. Plaintiffs assert a claim under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5; Section 20(a) of the Exchange Act; Section 20A of the Exchange Act; Section 11 of the Securities Act of 1933 ("Securities Act"); Section 15 of the Securities Act; and Section 12(a)(2) of the Securities Act. Plaintiffs moved for class certification, appointment of class representatives, and appointment of class counsel. The Court granted the requests by Memorandum and Order [Doc. # 244] entered June 15, 2017.[1]

---

[1] The Court certified the following class with exclusions not relevant to the Motion to Reconsider:

> All persons and entities who purchased or otherwise acquired Cobalt securities between March 1, 2011 and November 3, 2014, inclusive, and were damaged thereby. Included within the Class are all persons and entities who purchased shares of Cobalt common stock on the open market and/or pursuant or traceable to the registered public offerings on or about (i) February 23, 2012; (ii) January 16, 2013; and (iii) May 8, 2013. Also included within the Class are all persons and entities

(continued...)

Defendants filed a petition pursuant to Rule 23(f) of the Federal Rules of Civil Procedure with the United States Court of Appeals for the Fifth Circuit, seeking to appeal this Court's class certification ruling. The Fifth Circuit granted the petition on August 4, 2017.

Defendants also moved in this Court for reconsideration of specific issues, and for a stay of all discovery pending their appeal of the Court's class certification order. The pending Motions have been fully briefed and are now ripe for decision.

## II.   MOTION TO RECONSIDER CLASS CERTIFICATION

### A.   Applicable Legal Standard

Rule 54(b) of the Federal Rules of Civil Procedure allows a district court to revise an interlocutory order at any time before entry of final judgment. *See* FED. R. CIV. P. 54(b). Some courts, including district courts in the Southern District of Texas, apply the legal standards of Rule 59(e) to Rule 54(b) motions for reconsideration of interlocutory orders. *See, e.g., Banik v. Tamez*, 2017 WL 1228498, *1 (S.D. Tex. Apr. 4, 2017). Under Rule 59(e), a motion for reconsideration may be granted if there has been an intervening change in controlling law, there exists new evidence not

---

[1]   (...continued)
who purchased Cobalt convertible senior notes on the open market and/or pursuant or traceable to registered public offerings on or about (i) December 12, 2012; and (ii) May 8, 2014.

previously available, or there exists a clear error of law. *See id.* (citing *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002)).

    **B.**    ***CalPERS* Decision**

Relying on the recent Supreme Court decision in *Cal. Pub. Emp. Ret. Sys. v. ANZ Sec., Inc.*, __ U.S. __, 137 S. Ct. 2042 (June 26, 2017) ("*CalPERS*"), Defendants seek reconsideration of the class certification ruling in connection with the February 2012 Offerings. Defendants argue that the Securities Act claims of unnamed class members were not filed individually within the three-year statute of repose.[2] Again relying on *CalPERS*, Defendants also seek reconsideration of the class certification ruling, based on an argument that class members' Exchange Act claims based on purchases before June 15, 2012, are likewise barred by the statute of repose.

Defendants' reliance on the Supreme Court's decision in *CalPERS* as an intervening change in controlling law is misplaced. In *CalPERS*, a class action complaint was filed prior to the expiration of the statute of repose. Later, after the statute of repose expired, a member of the putative class filed a separate, individual action in a different court. When the case settled and an agreed class was certified as part of the settlement, the same class member opted out in order to pursue its

---

[2]     The Securities Act provides that "[i]n no event shall any such action be brought to enforce a liability created under [§ 11] more than three years after the security was bona fide offered to the public. . .." 15 U.S.C. § 77m.

individual lawsuit. The Supreme Court, noting that equitable tolling does not apply to a statute of repose, held that the pending class action did not toll the statute of repose for putative class members who opted out and filed individual actions. *See id.* at 2054-55. The Supreme Court noted that the statute of repose in the Securities Act requires that an "action" must be brought within three years after the relevant securities offering. *See id.* at 2054. The Supreme Court held that the opt-out plaintiff's individual lawsuit was a separate "action" from the putative class action, and that the separate "action" was not filed within three years. *See id.* There is nothing in the Supreme Court's decision in *CalPERS* that suggests that the putative class action, filed within the three-year statute of repose, does not protect putative class members who remain in the class and do not opt out to pursue individual lawsuits. Indeed, the majority and dissenting opinions both rely on a presumption that the plaintiff was a proper class member and could have pursued his claims as a member of the class even though the class was not certified within the statute of repose. As a result, there is nothing in the *CalPERS* decision that suggests a timely-filed class "action" does not satisfy the statute of repose for class members who do not opt out. Moreover, there is nothing in the *CalPERS* decision that suggests class certification in a timely-filed putative class action is precluded once the statute of

repose expires. Defendants' Motion to Reconsider based on the *CalPERS* decision is **denied**.[3]

### C. Class Certification of Certain Cobalt Noteholders

Defendants seek reconsideration of the class certification ruling regarding Cobalt noteholders based on a recent decision from the Second Circuit in *In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017). Initially, it is noted that the Second Circuit's recent decision is not an intervening change in controlling law in the *Fifth Circuit* that would support reconsideration.

Moreover, the Court does not find reconsideration appropriate under the Second Circuit's decision in *Petrobras*. In that case, investors in a Brazilian company filed securities fraud claims in connection with purchases of shares that traded on the Brazilian stock exchange, and purchases of Petrobras Notes that are not traded on any exchange in the United States. The Second Circuit noted in *Petrobras*, 862 F.3d at 262, as did this Court in its Memorandum and Order granting class certification, that federal securities laws apply only to conduct "in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States." *Morrison v. Nat'l Austl. Bank. Ltd.*, 561 U.S.

---

[3] Clearly, the *CalPERS* decision would operate to bar any class member who now opts out of this class action and files a separate lawsuit. This, however, is not the situation currently presented in this case.

247, 273 (2010). The Second Circuit in *Petrobras* remanded the case to the district court for consideration regarding whether the *Morrison* issue predominated over common issues.

This Court, in considering the predominance factor for class certification, recognized that there could conceivably be a member of the proposed class who engaged in foreign transactions, as opposed to foreign purchasers who engaged in domestic transactions. The Court further noted the ease of determining whether that was the case, and noted that the Cobalt Notes were convertible upon maturity into shares of Cobalt's common stock, which are listed and traded on a domestic exchange.[4] Based on these considerations, as well as the significant issues of law and fact that were common to putative class members, the Court held that the multiple, significant common issues of law and fact were more substantial than the *Morrison* issue and that the predominance factor was therefore satisfied. Nothing in the Second Circuit's decision in *Petrobras* leads the Court to reconsider its prior ruling. The Motion to Reconsider based on the Second Circuit's *Petrobras* ruling is **denied**.

---

[4] *See* Memorandum and Order [Doc. # 244], pp. 16-17 (citing *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 323 (S.D.N.Y. 2011)).

### D. Dismissed Claims

Defendants note correctly that this Court previously dismissed certain claims in this case. Defendants ask the Court to revise the class definition to "make clear that class members whose claims this Court already dismissed are not included in the class definition." *See* Motion to Reconsider, p. 2. The class definition includes purchasers of certain Cobalt securities during the Class Period who "were damaged" by those purchases. A class member may have purchased a variety of Cobalt securities. Such a class member may, therefore, have both live claims and dismissed claims. The class member may not recover based on dismissed claims, but the existence of the dismissed claims does not preclude the purchaser from being a class member as to the live claims. As a result, the Motion to Reconsider the class definition is **denied**.

## III. MOTION TO STAY

Rule 23(f) of the Federal Rules of Civil Procedure provides that a court of appeals "may permit an appeal from an order granting or denying class-action certification . . .." *See* FED. R. CIV. P. 23(f). The Fifth Circuit has granted leave for Defendants to pursue an interlocutory appeal of this Court's class certification ruling. Rule 23(f) provides further that an appeal "does not stay proceedings in the district court unless the district judge or the court of appeals so orders." *See id.* Defendants have filed a Motion to Stay Discovery pending their Rule 23(f) appeal.

Stays issued pursuant to Rule 23(f) are discretionary and rare. *See M.D. v. Perry*, 2011 WL 7047039, *1 (S.D. Tex. July 21, 2011); *In re Mounce*, 2008 WL 2714423, *6 (Bankr. W.D. Tex. July 10, 2008). When deciding a motion to stay, the district court considers the following factors: "(1) whether the movant has made a showing of likelihood of success on the merits; (2) whether the movant has made a showing of irreparable injury if the stay is not granted; (3) whether the granting of the stay would substantially harm the other parties; and (4) whether the granting of the stay would serve the public interest." *Id.* (citing *In re First South Sav. Ass'n*, 820 F.2d 700, 704 (5th Cir. 1987)).

In this case, for the reasons stated in the Court's Memorandum and Order on class certification and in this Memorandum and Order, Defendants have failed to demonstrate a likelihood of success on the merits. Although Defendants may possibly succeed on certain issues, it is unlikely that they will succeed in their attempt to have the class certification order fully reversed or otherwise vacated.

Defendants have failed to demonstrate irreparable injury if the stay is not granted. Defendants have shown that Cobalt is suffering financial difficulties, but no such showing has been made for any of the other Defendants. Defendants argue that they will be required to participate in discovery, but the prospect of having to engage in discovery is not irreparable harm for purposes of a stay pending appeal. *See, e.g.,*

*In re BP P.L.C. Sec. Litig.*, 2016 WL 164109, *2 (S.D. Tex. Jan. 14, 2016); *Perry*, 2011 WL 7047039 at *2. This is particularly true where, as here, the Rule 23(f) appeal will, at best, eliminate the class certification. It will not eliminate the claims of the individual named Plaintiffs. As a result, the discovery will be necessary whether or not the appeal is successful.

Plaintiffs, on the other hand, will be prejudiced by a stay of discovery. The case was originally filed in November 2014. Further delay will jeopardize Plaintiffs' ability to obtain discovery from individuals whose memories may be fading as time passes, as well as their ability to obtain and collect a judgment against Cobalt who, by Defendants' own arguments, is currently in a negative financial condition.

Defendants argue that a stay will serve the public interest because it will promote judicial economy. The public interest, however, also favors speedy resolution of disputes. Moreover, the Court finds that a stay will not further judicial economy because, as noted above, most of the discovery will need to be conducted even if the Rule 23(f) appeal is successful.

The Court has carefully considered each of the factors that are relevant to a stay pending appeal. The Court finds that none of the factors favors a stay of discovery in this case.[5] As a result, the Motion to Stay is **denied**.

## IV. CONCLUSION AND ORDER

Based on the foregoing, it is hereby

**ORDERED** that Defendants' Motion to Reconsider [Doc. # 251] and Motion to Stay [Doc. # 252] are **DENIED**.

SIGNED at Houston, Texas, this **23rd** day of **August, 2017**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

---

[5] Defendants rely on a Northern District of Texas court's decision to stay consideration of a motion to certify a class until the Rule 23(f) appeal in this case is completed. *See* Motion to Stay, p. 2 (citing *Deka Inv. GMBH v. Santander Consumer USA Holdings Inc.*, No. 3:15-cv-2129 (N.D. Tex. July 11, 2017)). The Northern District court's decision to await guidance before ruling on the class certification issue does not convince this Court to stay discovery during the Rule 23(f) appeal of a class certification ruling that has already been made.