# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

IN RE COBALT INTERNATIONAL
ENERGY, INC. SECURITIES LITIGATION

Lead Case No. 4:14-cv-3428 (NFA)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH THE SPONSOR DEFENDANTS, SPONSOR DESIGNEE DEFENDANTS, AND GOLDMAN SACHS & CO. LLC AND FOR APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

## **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 3

II.    PROCEDURAL HISTORY ................................................................................. 4

ARGUMENT ....................................................................................................... 7

I.     THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY
       APPROVAL UNDER RULE 23(e) ..................................................................... 7

       A.    There Is No Fraud Or Collusion Behind The Sponsor Settlement.............. 10

       B.    The Complexity, Expense, And Likely Duration Of The Litigation
             Warrants Preliminary Settlement Approval ................................................ 11

       C.    The Stage Of The Proceedings Warrants Preliminary Settlement Approval
             ................................................................................................................... 12

       D.    The Probability Of Success On The Merits Supports Preliminary Settlement
             Approval .................................................................................................... 14

       E.    The Settlement Is Well Within The Range Of Reasonableness................... 16

       F.    Lead Counsel Believe The Settlement Is Fair And Reasonable ................. 17

       G.    The Settlement Treats All Settlement Class Members Fairly And Grants No
             Preferential Treatment ................................................................................ 18

       H.    The Requested Attorneys' Fees And Expenses Are Fair And Reasonable. 19

II.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
       SETTLEMENT PURPOSES ............................................................................. 20

III.   THE PROPOSED FORM AND METHOD OF NOTICE SATISFIES
       RULE 23 ........................................................................................................... 23

IV.    PROPOSED SCHEDULE................................................................................. 25

CONCLUSION ................................................................................................... 27

## TABLE OF AUTHORITIES

**Cases**

*Billiteri v. Secs. Am., Inc.*,
   2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) ............................................................ 11

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ........................................................ 16

*In re Anadarko Petroleum Corp. Class Action Litig.*,
   2014 WL 12599393 (S.D. Tex. Sep. 11, 2014) ........................................................ 19

*In re Chicken Antitrust Litig. Am. Poultry*,
   669 F.2d 228 (5th Cir. 1982) ................................................................................ 16

*In re Deepwater Horizon*,
   739 F.3d 790 (5th Cir. 2014) .................................................................................. 9

*In re Enron Corp. Sec. & ERISA Litig.*,
   2003 WL 22494413 (S.D. Tex. July 24, 2003).......................................................... 25

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*,
   228 F.R.D. 541 (S.D. Tex. 2005)........................................................................... 17

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ................................................................. 10

*In re Lease Oil Antitrust Litig. (No. II)*,
   186 F.R.D. 403 (S.D. Tex. 1999)........................................................................... 20

*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir. 1977) ............................................................................... 24

*In re OCA, Inc. Secs. & Derivative Litig.*,
   2008 WL 4681369 (E.D. La. Oct. 17, 2008) ............................................................ 8

*Jenkins v. Trustmark Nat'l. Bank*,
   300 F.R.D. 291 (S.D. Miss. 2014) ......................................................................... 20

*McNamara v. Bre-X Minerals Ltd.*,
   214 F.R.D. 424 (E.D. Tex. 2002)............................................................................ 8

*Nathenson v. Zonagen Inc.*,
   267 F.3d 400 (5th Cir. 2001) ................................................................................ 16

*Newby v. Enron Corp.*,
   394 F.3d 296 (5th Cir. 2004) ................................................................. 7, 8

*Parker v. Anderson*,
   667 F.2d 1204 (5th Cir. 1982) ................................................................. 16

*Quintanilla v. A&R Demolition Inc.*,
   2008 WL 9410399 (S.D. Tex. May 7, 2008) ........................................... 11

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ................................................................... 9

*Schwartz v. TXU Corp.*,
   2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ................................. 9, 17, 19

*Turner v. Murphy Oil USA, Inc.*,
   472 F. Supp. 2d 830 (E.D. La. 2007) ...................................................... 17

*Vaughn v. Am. Honda Motor Co.*,
   627 F. Supp. 2d 738 (E.D. Tex. 2007) ..................................................... 23

**Regulations**

11 U.S.C. §§ 101-1532 ..................................................................................... 6

11 U.S.C. § 362(a) ........................................................................................... 6

15 U.S.C. § 78t-1(a) ......................................................................................... 6

15 U.S.C. § 78u-4(a)(7) ................................................................................... 23

15 U.S.C. §78u-4(a)(7)(A)-(F) ....................................................................... 25

**Rules**

Fed. R. Civ. P. 23 ..................................................................................... 20, 25

Fed. R. Civ. P. 23(a) ................................................................................ passim

Fed. R. Civ. P. 23(b) ....................................................................................... 23

Fed. R. Civ. P. 23(b)(3) ...................................................................... 3, 5, 22, 23

Fed. R. Civ. P. 23(c)(2) .............................................................................. 3, 23

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................ 23, 24

Fed. R. Civ. P. 23(e) ................................................................................. 3, 7, 23

Fed. R. Civ. P. 23(f) ........................................................................................ 6

**Other Authorities**

Manual for Complex Litigation § 21.632-33 (4th ed. 2004) .............................. 8

Alba Conte & Herbert B. Newberg,
    *Newberg on Class Actions* § 11.41 (4th ed. 2002) ......................................... 9

Lead Plaintiffs[1] and Class Representatives GAMCO Global Gold, Natural Resources & Income Trust, GAMCO Natural Resources, Gold & Income Trust (the "GAMCO Funds"), and additional plaintiffs and Class Representatives St. Lucie County Fire District Firefighters' Pension Trust Fund, Fire and Police Retiree Health Care Fund, San Antonio, Sjunde AP-Fonden, and Universal Investment Gesellschaft m.b.H. (collectively, the "Plaintiffs") on behalf of themselves and the Settlement Class, have reached a proposed settlement (the "Sponsor Settlement") of the claims asserted in the above-captioned action against defendants (i) The Goldman Sachs Group, Inc., Riverstone Holdings LLC, FRC Founders Corporation (f/k/a First Reserve Corporation), ACM Ltd (f/k/a KERN Partners Ltd.), and The Carlyle Group, L.P. (collectively, the "Sponsor Defendants"); (ii) Peter R. Coneway, Henry Cornell, Michael G. France, N. John Lancaster, Scott L. Lebovitz, Kenneth W. Moore, J. Hardy Murchison, Kenneth A. Pontarelli, and D. Jeff van Steenbergen (collectively, the "Sponsor Designee Defendants"); and (iii) Underwriter Defendant Goldman Sachs & Co. LLC (f/k/a Goldman, Sachs & Co.) ("GS&Co.," and, together with the Sponsor Defendants and the Sponsor Designee Defendants, the "Sponsor Settling Defendants" and together with Plaintiffs, the "Settling Parties").

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings set forth in the Stipulation and Agreement of Settlement with the Sponsor Defendants, the Sponsor Designee Defendants and Goldman Sachs & Co., dated October 9, 2018 (the "Stipulation"). The Stipulation is annexed as Exhibit 1 to the Declaration of Andrew J. Entwistle, dated October 12, 2018 ("Entwistle Decl.").

**Nature And Stage Of The Proceeding**

Plaintiffs respectfully submit this memorandum of law in support of their unopposed motion for entry of the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order") that would: (i) grant preliminary approval of the proposed Sponsor Settlement set forth in the Stipulation; (ii) certify the proposed Settlement Class; and (iii) approve the form and manner of giving notice of the proposed Sponsor Settlement to the Settlement Class of the hearing date at which the Court will consider (a) final approval of the Sponsor Settlement and entry of the proposed Judgment, (b) the Plan of Allocation of Settlement proceeds, and (c) Class Counsel's application for an award of attorneys' fees and expenses (the "Final Approval Hearing"). The proposed Sponsor Settlement is a partial settlement that does not resolve the claims asserted against the Non-Settling Underwriter Defendants.[2]  Plaintiffs have reached a separate agreement in principle to settle their claims against Cobalt and the Cobalt Individual Defendants for which Plaintiffs will seek preliminary approval in a separate filing with the Court.[3]

**Issues To Be Ruled Upon**

This unopposed motion raises the following issues to be ruled upon by the Court:

---

[2] The Non-Settling Underwriter Defendants are Morgan Stanley & Co. LLC; Credit Suisse Securities (USA) LLC; Citigroup Global Markets Inc.; J.P. Morgan Securities LLC; Tudor, Pickering, Holt & Co. Securities, Inc.; Deutsche Bank Securities Inc.; RBC Capital Markets, LLC; UBS Securities LLC; Howard Weil Incorporated; Stifel, Nicolaus & Company, Incorporated; Capital One Southcoast, Inc.; and Lazard Capital Markets LLC.

[3] The Cobalt Individual Defendants are Joseph Bryant, James W. Farnsworth, Jack E. Golden, Jon A. Marshall, Myles W. Scoggins, William P. Utt, John P. Wilkirson, and Martin H. Young, Jr.

1. Whether the proposed Sponsor Settlement satisfies the requirements for preliminary approval under Federal Rule of Civil Procedure 23(e).

2. Whether the proposed Settlement Class meets the requirements for certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3).

3. Whether the proposed form of notice to the Settlement Class is satisfactory under Federal Rules of Civil Procedure 23(c)(2) and 23(e), the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and principles of due process.

## I.    INTRODUCTION

The proposed Sponsor Settlement is the culmination of over three years of litigation, which included, among other things, (i) Plaintiffs' extensive investigation into the claims against the Sponsor Settling Defendants; (ii) the filing of two detailed consolidated class action complaints; (iii) two rounds of motions to dismiss by the Sponsor Settling Defendants and additional Non-Settling Defendants; (iv) a motion for class certification and related appeals; (v) extensive fact and expert discovery; and (vi) arm's-length negotiations under the supervision of the former United States District Judge Layn R. Phillips, a highly-experienced mediator.   Plaintiffs and Class Counsel submit that the Sponsor Settlement of $146.85 million in cash from the Sponsor Settling Defendants represents an outstanding recovery that is in the best interests of the Settlement Class.   This is particularly true given the risk that continued litigation, including pending appeals, summary judgment motions and trial may result in a smaller recovery, or no recovery at all from the Sponsor Settling Defendants.   As demonstrated below, the Sponsor Settlement is fair, reasonable, and adequate under the governing standards in this Circuit, and warrants this Court's preliminary approval.

## II.    PROCEDURAL HISTORY

On November 30, 2014, certain of the Plaintiffs timely filed the initial class action complaint in this action (the "Action").  On March 3, 2015, the Court consolidated all similar putative class actions into the above-captioned Action, appointed the GAMCO Funds as Lead Plaintiffs, and appointed the law firms of Entwistle & Cappucci LLP and Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel for the putative class. Plaintiffs filed their Consolidated Amended Class Action Complaint (the "Amended Complaint") on May 1, 2015.

The Amended Complaint asserted claims under (i) Section 11 of the Securities Act of 1933 (the "Securities Act") against Cobalt, the Underwriter Defendants, the Sponsor Designee Defendants, and certain of the Cobalt Individual Defendants; (ii) Section 12(a)(2) of the Securities Act against the Underwriter Defendants; (iii) Section 15 of the Securities Act against the Sponsor Defendants, GS&Co., the Sponsor Designee Defendants, and the Cobalt Individual Defendants; (iv) Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") against Cobalt and certain of the Cobalt Individual Defendants; and (v) Section 20(a) of the Exchange Act against certain of the Cobalt Individual Defendants.

The Amended Complaint sought damages on behalf of a putative class of investors in Cobalt Securities during the period from March 1, 2011 through November 3, 2014, inclusive (the "Class Period").  The Amended Complaint alleged that Cobalt and certain Cobalt Individual Defendants made material misstatements and omissions in Cobalt's SEC filings and securities offering materials during the Class Period concerning, among other things, (i) the ownership of Cobalt's business partners in Angola – *i.e.*, Nazaki Oil & Gáz,

S.A. and Alper Oil Ltd. – by Angolan government officials; and (ii) the oil content of Cobalt's Lontra and Loengo wells in Angolan Blocks 9 and 21, respectively.   The Amended Complaint further alleged that the Sponsor Defendants were control persons of Cobalt through the Sponsor Designee Defendants, who exercised control over Cobalt's material misrepresentations concerning the Angolan partners and oil wells.  The Amended Complaint also asserted Securities Act claims against GS&Co. and the Non-Settling Underwriter Defendants in connection with their underwriting of three Cobalt common stock offerings, and two Cobalt convertible senior note offerings during the Class Period.

On January 19, 2016, the Court largely denied Defendants' multiple motions to dismiss the Amended Complaint, including all claims against the Sponsor Settling Defendants.  The Court further denied Defendants' interlocutory appeal motion on March 14, 2016, and Defendants answered the Amended Complaint on March 25, 2016, denying liability and the essential factual allegations therein.  The parties then engaged in extensive fact discovery under the schedule set by the Court.

On November 2, 2016, Plaintiffs moved to certify this case as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.  The Court granted Plaintiffs' class certification motion on June 15, 2017 (the "Class Certification Order"). The Court found the standards under Rules 23(a) and 23(b)(3) were satisfied and certified a class of Cobalt investors (the "Class"), appointed Plaintiffs as Class Representatives, and appointed Lead Counsel as Class Counsel.

On January 30, 2017, Plaintiffs sought leave to file an amended complaint adding a new claim against the Sponsor Defendants based on factual discovery obtained in the

Action to that date.  The Court granted this request, and on March 15, 2017, Plaintiffs filed the Second Consolidated Amended Class Action Complaint ("Second Amended Complaint"), adding an insider trading claim under Section 20A of the Exchange Act (15 U.S.C. § 78t-1(a)) against the Sponsor Defendants.  The Sponsor Defendants moved to dismiss this new claim, which the Court denied on June 15, 2017, except as to The Carlyle Group, L.P.

On June 30, 2017, Defendants filed a petition in the United States Court of Appeals for the Fifth Circuit pursuant to Federal Rule of Civil Procedure 23(f), seeking an interlocutory appeal of the Court's Class Certification Order.  The Court of Appeals granted Defendants' petition on August 4, 2017, and the appeal was fully briefed on December 1, 2017.

On December 14, 2017, Cobalt filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").  *See In re Cobalt International Energy, Inc.*, Case No. 4:17-bk-36709 (Bankr. S.D. Tex.).  Cobalt also filed an adversary complaint in the Bankruptcy Court on December 14, 2017, seeking to extend the automatic stay of proceedings under 11 U.S.C. § 362(a) to Plaintiffs' claims against the Cobalt Individual Defendants, Sponsor Defendants, Sponsor Designee Defendants, and Underwriter Defendants.

Pursuant to the bankruptcy, the Court stayed all claims against Cobalt and all case deadlines in the Action on December 15, 2017.  On December 18, 2017, the Fifth Circuit Court of Appeals also stayed Defendants' appeal of the Class Certification Order pending

disposition of Cobalt's bankruptcy proceedings. On January 4, 2018, Plaintiffs and Defendants agreed to stay all proceedings in this Action until April 21, 2018 due to Cobalt's bankruptcy, and an order to that effect was entered in the Bankruptcy Court.

On October 3, 2017, counsel for Plaintiffs and Defendants participated in an in-person mediation session before former United States District Judge Layn Phillips to explore a negotiated settlement of the claims against Defendants. The parties exchanged detailed confidential mediation statements in advance of the mediation. Although no settlement was reached at the mediation session, Lead Counsel and counsel for the Sponsor Settling Defendants continued to negotiate a resolution of the claims asserted against them with the assistance of Judge Phillips.

In June and July 2018, Plaintiffs and the Sponsor Settling Defendants reached agreements in principle to settle the claims against the Sponsor Settling Defendants for a total of $146,850,000. Those agreements were memorialized in the Stipulation submitted herewith for preliminary approval.

## ARGUMENT

## I.   THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class action claims. *See* Fed. R. Civ. P. 23(e). The decision to grant preliminary approval to a proposed settlement is a matter within the sound discretion of the district court. *See Newby v. Enron Corp.*, 394 F.3d 296, 300 (5th Cir. 2004) ("[a] district court's approval of a class action settlement may be set aside only for abuse of discretion").

In assessing the preliminary approval of a class action settlement, a court must first evaluate the fairness of the proposed settlement terms. If the court determines that the settlement is fair, it then directs notice to class members of a fairness hearing to adjudicate final approval and dismissal. *See McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002) (noting preliminary approval involves this "two-step process"); *see also* Manual for Complex Litigation § 21.632-33 at 320-21 (4th ed. 2004) (review of a proposed class action settlement generally involves two court hearings to assess the fairness of the settlement).

The standards for preliminary approval of a class action settlement are "not as stringent as those applied to a motion for final approval." *In re OCA, Inc. Secs. & Derivative Litig.*, 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008). When a class action settlement "discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *See id.*; *see also McNamara*, 214 F.R.D. at 430 (same).

The key factor in deciding whether to approve a proposed settlement is a finding that it is fair, adequate and reasonable. *See Newby*, 394 F.3d at 301 (the gravamen of the inquiry is whether the proposed settlement is "fair, adequate, and reasonable and is not the product of collusion between the parties"). The Fifth Circuit has established a six-part test to determine the fairness of a proposed settlement: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of

plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

In weighing these factors, the court should also consider the strong public policy favoring the settlement of class action lawsuits. *See, e.g.*, *In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) (noting an "overriding public interest in favor of settlement that we have recognized [p]articularly in class action suits");[4] *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *17 (N.D. Tex. Nov. 8, 2005) (recognizing the "public interest in favor of settlement of class action lawsuits"). This policy preference is particularly relevant to the settlement of securities class actions. *See* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 22.92 (4th ed. 2002) (noting that "Securities suits readily lend themselves to compromise, because of the notable unpredictability of result and the potential for litigation spanning" many years).

The proposed Sponsor Settlement of the claims against the Sponsor Settling Defendants easily satisfies the standards for preliminary approval in this Circuit and meets the favored public policy goal of resolving securities class action claims. Indeed, while factors A through F below are typically applied at final settlement approval, their satisfaction here demonstrates that the Sponsor Settlement is fair and should be preliminarily approved.

---

[4] Unless otherwise noted, all internal citations and quotations are omitted and all emphasis is added.

### A. There Is No Fraud Or Collusion Behind The Sponsor Settlement

There is a strong presumption of fairness when a proposed class action settlement is reached through arm's-length negotiations between experienced counsel following "meaningful discovery." *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1063-65 (S.D. Tex. 2012) (approving settlement where parties negotiated resolution for over three months and conducted confirmatory discovery to gauge the strengths and weaknesses of the case). The extensive process by which this Sponsor Settlement was reached demonstrates that it is fair and devoid of any deficiencies.

The Sponsor Settlement was agreed upon only after extensive arm's-length negotiations by experienced counsel who had been litigating this Action since its inception. Lead Counsel have many years of experience litigating securities class actions, and courts throughout the country have approved dozens of class action settlements that Lead Counsel negotiated. The Sponsor Settling Defendants were similarly represented by law firms with well-deserved reputations for their tenacious defense of securities class actions. Thus, the Settling Parties and their counsel were well informed about the strengths and weaknesses of Plaintiffs' claims and the potential defenses thereto. The Sponsor Settlement was also reached after multiple rounds of negotiation before Judge Phillips, an experienced and highly regarded neutral mediator, over the course of several months. There is no doubt that the Settling Parties were fairly and adequately represented throughout the course of the Sponsor Settlement negotiations.

Accordingly, there was no fraud or collusion among the Settling Parties, or any other

deficiencies in the process through which the Sponsor Settlement was obtained.  *See*, *e.g.*, *Billitteri v. Sec. Am., Inc.*, 2011 WL 3586217, at \*10 (N.D. Tex. Aug. 4, 2011) (finding no fraud or collusion in settlement reached through counsel's diligent arm's-length negotiations before a neutral mediator); *Quintanilla v. A&R Demolition Inc.*, 2008 WL 9410399, at \*4 (S.D. Tex. May 7, 2008) (same).

### B.    The Complexity, Expense, And Likely Duration Of The Litigation Warrants Preliminary Settlement Approval

Preliminary approval is also appropriate given the complexity, duration, and risks of further litigation.  Continued litigation of the claims against the Sponsor Settling Defendants would undoubtedly require significant additional expenditures of time and resources, weighed against the risk that the Class could recover far less than provided for in the Sponsor Settlement.  As noted above, each of the Sponsor Settling Defendants is represented by experienced and competent counsel who have vigorously denied liability on the part of these Defendants.  They have dedicated substantial resources to fully defend their clients, and would no doubt continue to do so if the claims against the Sponsor Settling Defendants proceeded to trial.  This would of course increase the litigation costs for Plaintiffs and the Class, and introduce additional uncertainty to Class recovery.

Indeed, if these claims went forward, the Settling Parties would necessarily incur substantial additional expenses conducting the remaining fact and expert discovery relevant to the Sponsor Settling Defendants.  Absent the Sponsor Settlement, Plaintiffs intended to take at least nine (9) additional depositions of the Sponsor Defendants, Sponsor Designee Defendants and relevant non-parties in both the United States and Canada.  The

Settling Parties would also need to engage in costly expert discovery, including the preparation of expert reports and the depositions of respective experts.

Following the close of expert discovery, the Settling Parties planned to brief summary judgment motions on various elements of the asserted claims. Under the Amended Scheduling Order, these motions would not be fully briefed for the Court's consideration until next summer. *See* ECF No. 322. The summary judgment motions would pose additional risks for Plaintiffs and the Class regarding the scope of claims that could proceed to trial against the Sponsor Settling Defendants. At trial, the Settling Parties would likely face motions *in limine* to exclude certain expert testimony and documentary evidence, the outcome of which could have significant impact on the jury's consideration of liability and damages as to the Sponsor Settling Defendants. Moreover, the likelihood of appeals by the Settling Parties on key pre-trial and trial rulings could further delay any meaningful recovery for the Class.

In sum, if the claims against the Sponsor Settling Defendants were tried to conclusion rather than settled, there is a tangible risk of not obtaining a larger recovery against these parties. The complexity, expense, and duration of continued litigation and trial against the Sponsor Settling Defendants supports the preliminary approval of the Sponsor Settlement.

### C.   The Stage Of The Proceedings Warrants Preliminary Settlement Approval

The advanced stage of the litigation against the Sponsor Settling Defendants also heavily favors a presumption that the Sponsor Settlement is fair. As noted above, the

claims against these Defendants were vigorously contested by counsel over the course of more than three years.  The parties engaged in extensive pre-trial motion practice, including (i) briefing on the Sponsor Defendants' two separate motions to dismiss Plaintiffs' complaints, as well as the separate motions to dismiss filed by the Underwriter Defendants (including GS&Co.) and the Sponsor Designee Defendants; (ii) briefing on Plaintiffs' motion for class certification; (iii) briefing on Defendants' class certification appeals; and (iv) the litigation of three significant discovery motions before this Court concerning issues of privilege and the scope of Defendants' document productions.  The Court's findings on these various motions helped to inform the Settling Parties about the strengths and weaknesses of their respective positions.

Plaintiffs, through Lead Counsel, also conducted a thorough investigation and analysis of facts concerning the claims, defenses, and underlying events that are at issue in the Action.  This discovery included, among other things: (i) the review and analysis of more than 1.3 million pages of documents produced by Plaintiffs, Defendants and third parties; and (ii) the depositions of ten (10) Plaintiff representatives in connection with class certification, and nineteen (19) fact depositions of key witnesses (including certain of the Cobalt Individual Defendants, Sponsor Designee Defendants and Underwriter Defendants).  In addition, Plaintiffs deposed Defendants' expert on class certification, and consulted with experts retained by Class Counsel concerning the oil and gas industry, the FCPA, and the issues of market efficiency and class-wide damages for Cobalt Securities sold during the Class Period.  The Settling Parties also exchanged detailed expert reports on issues pertaining to class certification.

Counsel's extensive work on the case gives them a detailed understanding of the strengths and weaknesses of the claims against the Sponsor Settling Defendants.   The Settling Parties were therefore able to fully evaluate the claims and agree on a Sponsor Settlement that is fair, reasonable and adequate to the Settlement Class.

### D.   The Probability Of Success On The Merits Supports Preliminary Settlement Approval

The probability of success on the merits of Plaintiffs' claims against the Sponsor Settling Defendants further supports preliminary approval of the Sponsor Settlement. Plaintiffs faced legal and factual obstacles in proving these claims at trial.   Indeed, there is a risk that Plaintiffs might fail to convince the jury of the merits of the claims and recoverable damages against the Sponsor Settling Defendants.   Given these challenges, the Sponsor Settlement represents a significant recovery that will immediately benefit the Settlement Class.

Based on Lead Counsel's extensive work to date, Plaintiffs are confident that there is ample evidence substantiating the control person and insider trading claims against the Sponsor Defendants and Sponsor Designee Defendants.   Notwithstanding the strength of their case against these Defendants, Plaintiffs recognize there are substantial risks in establishing liability and damages at trial.   The Sponsor Defendants have contested their exercise of day-to-day control over Cobalt's operations.   Moreover, the Sponsor Defendants deny any knowing use of material nonpublic information in connection with their Class Period sales of Cobalt stock.   Defendants further assert that Plaintiffs cannot establish any violation of Section 10(b) of the Exchange Act, which they contend is a

necessary predicate to proving insider trading under Section 20A of the Exchange Act. There may be no Class recovery on such claims should Defendants persuade the Court or a jury of these arguments on summary judgment or at trial.

GS&Co. has also vigorously contested its liability under the Securities Act in connection with the Class Period Cobalt Securities offerings.  The bank would likely contend that after conducting adequate due diligence on Cobalt prior to each offering, it reasonably believed that the Company's statements concerning its Angolan partners and oil wells were accurate.  Any recovery under Sections 11 and 12 of the Securities Act would be undermined should GS&Co. prevail on this fact-based due diligence defense.

The Defendants have also appealed this Court's class certification ruling on a number of grounds which pose additional risks to Class recovery.  They have asserted that the Court erred in finding Plaintiffs are entitled to a class-wide presumption of reliance for the Section 10(b) claim.  If Defendants prevail on this issue before the Fifth Circuit, certification of the Class – and by extension the Class-wide Section 20A claim – could be jeopardized.  Moreover, Defendants have appealed on grounds that no Section 11 class can be certified for the Cobalt common stock offerings because it is impossible to trace share purchases to these offerings.  They also contend that no Securities Act class can be certified for the Cobalt note offerings because of individualized issues concerning the location of note purchases (*i.e.*, foreign vs. domestic).  In addition, Defendants assert that the statute of repose bars Securities Act claims arising out of the Class Period Cobalt Securities offerings.  While Plaintiffs are confident that the Class was properly certified, the Class's claims could be significantly curtailed or even foreclosed should Defendants prevail on

any of these issues on appeal.

When measured against the potential uncertainty of continued litigation with the Sponsor Settling Defendants, the substantial amount to be paid in the Sponsor Settlement weighs heavily in favor of approval.

### E.    The Settlement Is Well Within The Range Of Reasonableness

In assessing whether a settlement falls within the range of reasonableness, courts should compare the settlement recovery against the possible recovery if the case proceeded to trial.  *See In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 239 (5th Cir. 1982) (inquiry "should contrast settlement rewards with likely rewards if the case goes to trial"). As part of this inquiry, courts should also recognize the uncertainty of securities litigation and the potential difficulty of proving liability and damages at trial.  *See Nathenson v. Zonagen Inc.*, 267 F.3d 400, 412 (5th Cir. 2001) (recognizing the complexity of securities fraud class action claims brought under the PSLRA).  "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."  *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018) (quoting *Parker v. Anderson*, 667 F.2d 1204, 1210 n.6 (5th Cir. 1982)).

Under the proposed Sponsor Settlement, the Settlement Class will receive $146.85 million in cash in exchange for releasing the claims against the Sponsor Settling Defendants.  Plaintiffs submit this is a substantial recovery standing alone, and is especially so considering the continued litigation against the Non-Settling Underwriter Defendants and when balanced against the attendant risks of continued litigation with the Sponsor

Settling Defendants.  Indeed, there is no guarantee the Settlement Class would be able to prove liability or establish damages in excess of the Sponsor Settlement amount given these risks.  In contrast, the substantial and immediate benefit the Sponsor Settlement brings to the Settlement Class makes it well within the range of reasonableness.  *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005) ("The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand.").

### F.    Lead Counsel Believe The Settlement Is Fair And Reasonable

Given their thorough understanding of the case, courts generally "give weight to class counsel's opinion regarding the fairness of the settlement." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 852 (E.D. La. 2007); *see also Schwartz*, 2005 WL 3148350, at *21 ("where the parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in class-action litigation, courts typically 'defer to the judgment of experienced trial counsel who has evaluated the strength of [the] case'").

As noted above, Lead Counsel have considerable experience litigating complex securities class actions such as this.  They have also conducted a thorough fact-finding investigation into the claims against the Sponsor Settling Defendants and have a keen understanding of the strengths and risks attendant to these claims.   Based on this understanding, and after substantial arm's-length negotiations with counsel for the Sponsor Settling Defendants, Lead Counsel have concluded that the Sponsor Settlement is fair, reasonable and adequate to the Settlement Class.  The Sponsor Settlement warrants

17

the Court's preliminary approval for this additional reason.

### G. The Settlement Treats All Settlement Class Members Fairly And Grants No Preferential Treatment

The Sponsor Settlement does not grant preferential treatment to Plaintiffs or to any segment of the Class.  The Plan of Allocation ("Plan") submitted with this motion (*see* Entwistle Decl., Ex. 1 at Ex. A-1) sets forth the proposed method for allocating the Net Settlement Fund for the Sponsor Settlement, as well as any future settlements or recoveries from the Non-Settling Underwriter Defendants.  The Plan is consistent with the prior expert reports that Plaintiffs submitted in support of class certification, and is in line with other allocation methods approved by courts in this Circuit.  Generally, the Plan divides the funds obtained in this Sponsor Settlement or in any future settlements or recoveries into three separate pools based on the nature of claims asserted: (i) a Group 1 Fund, for purchasers of Cobalt Securities with claims under Section 10(b) of the Exchange Act; (ii) a Group 2 Fund for purchasers of Cobalt Securities with claims under Section 20A of the Exchange Act; and (iii) a Group 3 Fund, for purchasers of Cobalt Securities with claims under Sections 11, 12(a)(2) and 15 of the Securities Act.

The present Sponsor Settlement is divided as follows: $10.0 million to the Group 1 Fund, $125.0 million into the Group 2 Fund, and $11.85 million into the Group 3 Fund, as defined in the Plan.[5]  Each fund will be distributed *pro rata* to eligible Settlement Class members based on the group and their Recognized Loss amount.  Recognized Losses will

---

[5] Court-approved attorneys' fees, Litigation Expenses, Notice and Administration Costs and Taxes for the Sponsor Settlement will be allocated among the three funds proportionally.

be calculated based on (i) the type and number of Cobalt Securities purchased/acquired, (ii) when the securities were purchased/acquired, (iii) whether the securities were held or sold, and (iv) if sold, the date and price at which they were sold.

While the methodologies used in the Plan may result in different per-share recoveries for each eligible claimant, they will be uniformly applied to all Settlement Class Members. Accordingly, no member of the Sponsor Settlement Class will receive preferential treatment when the Sponsor Settlement is distributed. *See OCA*, 2008 WL 4681369, at *12 (granting preliminary approval where the "proposed allocation plan compensates class members in relation to the timing of their actual purchases and sales as well as the amount of their actual losses.").

### H. The Requested Attorneys' Fees And Expenses Are Fair And Reasonable

Lead Counsel intend to apply for an attorneys' fee award not to exceed 25% of the gross Settlement Fund, plus the costs and expenses incurred by Plaintiffs' Counsel in prosecuting the claims against the Defendants in an amount not to exceed $5 million total. These amounts are sought pursuant to retainer agreements negotiated and entered into with Lead Plaintiffs.

Courts in this Circuit routinely approve similar attorneys' fee percentages in complex securities class actions such as this. *See*, *e.g.*, *In re Anadarko Petroleum Corp. Class Action Litig.*, 2014 WL 12599393, at *1 (S.D. Tex. Sept. 11, 2014) (approving attorneys' fees of 25% of settlement fund); *Schwartz*, 2005 WL 3148350, at *27 ("courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method"); *Jenkins v. Trustmark Nat'l.*

*Bank*, 300 F.R.D. 291, 307 (S.D. Miss. 2014) ("it is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third"). The attorneys' fees to be requested by Lead Counsel are reasonable and in line with prevailing awards in this Circuit.

## II.  THE  SETTLEMENT  CLASS  SHOULD  BE  CERTIFIED  FOR SETTLEMENT PURPOSES

Plaintiffs further move the Court for certification of the Settlement Class in this Action. In order to proceed with class action settlement approval, a court must certify the class for settlement purposes. *See In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 418 (S.D. Tex. 1999) ("[A] district court must first find that a class satisfies the requirements of Rule 23, regardless of whether it is certifying the class for trial or for settlement").

As detailed in the Stipulation, the Settling Parties seek certification of the following Settlement Class, which is identical in all material respects to the class this Court has already certified:

> All persons and entities who purchased or otherwise acquired Cobalt Securities between March 1, 2011 and November 3, 2014, inclusive, and were damaged thereby. Included within the Settlement Class are all persons and entities who purchased or otherwise acquired shares of Cobalt common stock on the open market and/or pursuant or traceable to the registered public offerings on or about (i) February 23, 2012; (ii) January 16, 2013; and (iii) May 8, 2013. Also included within the Settlement Class are all persons and entities who purchased or otherwise acquired Cobalt convertible senior notes on the open market and/or pursuant or traceable to registered public offerings on or about (i) December 12, 2012; and (ii) May 8, 2014.[6]

---

[6] Excluded from the Settlement Class are Defendants; the officers and directors of Defendants during the Class Period (the "Excluded Officers and Directors"); members of the Immediate Family of the Individual Defendants and of the Excluded Officers and Directors; any entity in which any Defendant, any Excluded Officer or Director, or any of their respective Immediate Family Members has, and/or had during the Class Period, a controlling interest; Defendants' liability insurance carriers; any affiliates, parents, or subsidiaries of the corporate Defendants; all

*See* Entwistle Decl., Ex. 1 at ¶1(yy).

The Court previously found that the four requirements of Fed. R. Civ. P. 23(a) had been met in granting Plaintiffs' motion for class certification, and nothing has changed. *See* ECF No. 244 (Class Certification Order).  Specifically, with respect to Rule 23(a), the Court determined:

> *Numerosity*: "Plaintiffs have presented evidence that during the class period, Cobalt had over 350 million shares outstanding held by record holders ranging in number between 107 and 192.  Additionally, there were 599 institutional investors holding Cobalt shares during the class period. Defendants do not challenge Plaintiffs' satisfaction of the numerosity requirement."  Class Certification Order at 5.

> *Commonality*: "Plaintiffs in this case have identified several common questions of law and fact, including whether Defendants made false and misleading statements concerning Cobalt's business partners in Angola and the viability of the Lontra and Loengo wells.  Defendants do not challenge Plaintiffs' satisfaction of the commonality requirement."  *Id.* at 5-6.

> *Typicality*:  "Defendants challenge Plaintiffs' ability to satisfy the typicality requirement only as to the purchasers of Cobalt Notes and the purchasers of Cobalt stock in the 2014 Goldman Sachs secondary offerings . . . . Plaintiffs have demonstrated that a class representative is asserting claims in connection with the Cobalt Notes that are typical of members of the proposed class . . . . An allegation of a six-day gap between Goldman Sachs's sale and [Plaintiff] Universal's purchase does not render Universal an atypical class representative for the 2014 Goldman Sachs sales."  *Id.* at 6-7.

> *Adequacy*:  "Plaintiffs are adequate class representatives for all class members, including those who purchased only Cobalt Notes."  *Id.* at 7-8.

---

corporate Defendants' plans that are covered by ERISA; and the legal representatives, heirs, agents, affiliates, successors-in-interest or assigns of any excluded person or entity, in their respective capacity as such; provided, however, that any Investment Vehicle (defined in the Stipulation at ¶ 1(z)) shall not be deemed an excluded person or entity by definition.  Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.

This Court's findings on Rule 23(a) are equally applicable in the context of certification of the proposed Settlement Class for purposes of effectuating the Sponsor Settlement.

The Court also found that the class satisfied the "superiority" and "predominance" requirements of Fed. R. Civ. P. 23(b)(3):

> ***Superiority***:  "the Court finds that class certification of this securities fraud case 'would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  *Id*. at 9 (citations omitted).

> ***Predominance***:  The Court rejected Defendants' assertions that individualized issues concerning (i) reliance, (ii) the tracing of Cobalt common stock purchases to the relevant registration statements, (iii) the potential foreign purchases of Cobalt Notes, and (iv) the class's purported knowledge of Defendants' alleged misstatements and omissions did not predominate over the numerous common issues of law and fact in the case. *Id*. at 9-17.

There is no reason for the Court to depart from its prior finding of superiority and predominance in certifying the Settlement Class.  Indeed, the Sponsor Settling Defendants have expressly stipulated to certification of the Settlement Class for purposes of effectuating the Sponsor Settlement.  *See* Entwistle Decl., Ex. 1 at ¶ 2.

Moreover, certification of the Settlement Class is the superior method to facilitate resolution of the claims of Plaintiffs and other Class members.  Without the settlement class device, the Sponsor Settling Defendants could not obtain a Class-wide release, and therefore would have had little, if any, incentive to enter into the Sponsor Settlement.  Certification of the Settlement Class will also allow the Sponsor Settlement to be administered in an organized and efficient manner.

For the foregoing reasons, the Court should find that the Settlement Class meets the requirements of Fed. R. Civ. P. 23(a) and 23(b) and certify it for settlement purposes.

## III.   THE PROPOSED FORM AND METHOD OF NOTICE SATISFIES RULE 23

Notice for a class certified under Rule 23(b)(3) must meet the requirements of both Fed. R. Civ. P. 23(c)(2) and 23(e). *See Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 744 (E.D. Tex. 2007). Rule 23(c)(2) requires certified classes to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(e) requires only that notice of the proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal." The content of the notice must contain the information outlined in Rule 23(c)(2)(B), and the additional information required by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7). Plaintiffs' proposed form of notice satisfies each of these requirements.

As detailed in the proposed Preliminary Approval Order, Lead Counsel and the proposed Claims Administrator, Epiq Class Action & Mass Tort Solutions, Inc. ("Epiq"), propose to mail copies of the Notice of Proposed Settlement of Class Action ("Notice") and the Proof of Claim and Release Form ("Proof of Claim") substantially in the form attached to the Stipulation as Exhibits A-1 and A-2, respectively, by first class mail to all identifiable Settlement Class Members at their last known address. Copies of the Notice and Proof of Claim (collectively, the "Notice Packet") will also be mailed to the largest banks and brokerage houses requesting that the Notice Packet be sent to all persons and

entities for whom they act as nominee purchasers.  In addition, Lead Counsel will cause the Summary Notice, substantially in the form attached to the Stipulation as Exhibit A-3, to be published once in *The Wall Street Journal* and once over the *PR Newswire* shortly after the Notice Date set by the Court.

Consistent with the requirements of Fed. R. Civ. P. 23(c)(2)(B), the Notice describes: (i) the nature of the Action; (ii) the definition of the Settlement Class; (iii) the class claims, issues, and defenses; (iv) the process by which Settlement Class Members may enter an appearance through their own counsel; (v) how Settlement Class Members can exclude themselves from the Sponsor Settlement; (vi) the binding effect of the Sponsor Settlement approval proceedings; (vii) the proposed Plan of Allocation; and (viii) the reasons the parties are proposing the Sponsor Settlement.  The Notice also supplies the date, time, and place of the Final Approval Hearing, and the procedures for commenting on the Sponsor Settlement and appearing at the hearing.  This information will provide Settlement Class Members with the information necessary to make a decision about whether to remain in, opt-out, or object to the Sponsor Settlement.  *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977) (notice must contain "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment.").

To meet the additional requirements of the PSLRA, the Notice includes: (i) the amount of the Sponsor Settlement proposed to be distributed to the parties to the Action, determined in the aggregate and on an average per-share basis; (ii) a statement from the

Settling Parties concerning the issues on which the parties disagree; (iii) a statement indicating the maximum amount of attorneys' fees and expenses (both on an aggregate and per share basis) sought by Lead Counsel, and a brief explanation supporting the requested fees and expenses; (iv) the name, telephone number, and address of Lead Counsel who will be reasonably available to answer questions concerning any matter contained in the Notice; (v) a brief statement explaining the reasons why the Settling Parties are proposing the Sponsor Settlement; and (vi) such other information as may be required by the Court.  *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F).

This proposed notice program also fulfills the requirements of due process as it alerts and informs those Settlement Class Members who can be identified through reasonable efforts of all of the information set forth above.  Courts in this Circuit routinely find that comparable notice programs meet the requirements of due process, the PSLRA, and Rule 23.  *See, e.g.*, *In re Enron Corp. Sec. & ERISA Litig.*, 2003 WL 22494413, at *3 (S.D. Tex. July 24, 2003); *OCA*, 2008 WL 4681369, at *14-16.  Accordingly, the Court should approve Plaintiffs' proposed form of notice.

## IV.    PROPOSED SCHEDULE

If the Court grants preliminary approval to the proposed Sponsor Settlement, the Settling Parties respectfully submit the following schedule for the Court's consideration. The column at right lists the actual dates that would result if the Court enters the Preliminary Approval Order on the date of the hearing on November 1, 2018, and are based on the January 28, 2019 date scheduled for the Final Approval Hearing:

| EVENT | PROPOSED DUE DATE | PROPOSED ACTUAL DATE |
|---|---|---|
| Deadline to mail Notice and Proof of Claim (the "Notice Date") | 20 business days after entry of Preliminary Approval Order | November 29, 2018 |
| Deadline to publish Summary Notice | 10 business days after Notice Date | December 13, 2018 |
| Deadline to file Motion for Final Approval and Motion for Award of Attorneys' Fees and Expenses | 35 calendar days before Final Approval Hearing | December 24, 2018 |
| Deadline for objections to be filed with the Court | 21 calendar days before Final Approval Hearing | January 8, 2019 |
| Deadline for Settlement Class Members to submit exclusion requests to the Claims Administrator | 21 calendar days before Final Approval Hearing | January 8, 2019 |
| Deadline to file replies in support of Motions for Final Approval and for Award of Attorneys' Fees and Expenses | 7 calendar days before Final Approval Hearing | January 21, 2019 |
| Deadline for Class Members to submit Proof of Claim forms to the Claims Administrator | Postmarked within 120 calendar days after Notice Date | March 19, 2019 |
| Final Approval Hearing | 90 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience after that date | January 28, 2019 at 10:00 a.m. |

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (i) grant preliminary approval of the Sponsor Settlement, including approving the form and substance of the proposed forms of Notice and directing that notice be provided to the Settlement Class; (ii) certify the Settlement Class to effectuate the Sponsor Settlement; (iii) appoint Epiq to serve as Claims Administrator; (iv) schedule a Final Approval Hearing on the Sponsor Settlement, Plan of Allocation, and an award of attorneys' fees and expenses; and (v) grant such other relief as the Court deems just and proper.

Dated:  October 12, 2018                    Respectfully submitted,

**ENTWISTLE & CAPPUCCI LLP**


By: */s/Andrew J. Entwistle*
    Andrew J. Entwistle
    (Texas Bar No. 24038131)
    Vincent R. Cappucci (admitted *pro hac vice*)
    Jonathan H. Beemer (admitted *pro hac vice*)
    299 Park Avenue, 20th Floor
    New York, NY 10171
    Telephone: (212) 894-7200
    Facsimile: (212) 894-7272
    E-mail: aentwistle@entwistle-law.com
    E-mail: vcappucci@entwistle-law.com
    E-mail: jbeemer@entwistle-law.com

    **BERNSTEIN LITOWITZ BERGER**
    **& GROSSMANN LLP**
    David R. Stickney (admitted *pro hac vice*)
    Jonathan D. Uslaner (admitted *pro hac vice*)
    Brandon Marsh (admitted *pro hac vice*)
    12481 High Bluff Drive, Suite 300
    San Diego, CA 92130-3582
    Telephone: (858) 793-0070
    Facsimile: (858) 793-0323

E-mail: davids@blbglaw.com
E-mail: jonathanu@blbglaw.com
E-mail: brandon.marsh@blbglaw.com

*Counsel for Lead Plaintiffs and Co-Lead Counsel for the Class*

**AJAMIE LLP**
Thomas R. Ajamie
(Texas Bar No. 00952400)
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, TX 77002
Telephone: (713) 860-1600
Facsimile: (713) 860-1699
E-mail: tajamie@ajamie.com

*Liaison Counsel for the Class*

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Johnston de Forest Whitman, Jr.
(admitted *pro hac vice*)
Naumon A. Amjed
(admitted *pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056
E-Mail:  jwhitman@ktmc.com
E-Mail:  namjed@ktmc.com

*Counsel for Plaintiff Sjunde AP-Fonden*

**MOTLEY RICE LLC**
Christopher Moriarty (admitted *pro hac vice*)
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9245
Facsimile: (843) 216-9450
E-Mail:  cmoriarty@motleyrice.com

*Counsel for Plaintiff Universal Investment Gesellschaft m.b.H.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 12 2018, the foregoing memorandum of law were filed with Clerk of the Court through the Court's ECF system, which will cause the document to be served upon all counsel of record.

*/s/ Andrew J. Entwistle*
Andrew J. Entwistle