UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE COBALT INTERNATIONAL ENERGY, INC. SECURITIES LITIGATION | Lead Case No. 4:14-cv-3428 (NFA) |

## ORDER APPROVING DISTRIBUTON PLAN

Lead Plaintiffs moved this Court for an order approving a distribution plan for the Net Settlement Fund in the above-captioned class action (the "Action"). Having reviewed and considered all the materials and arguments submitted in support of the motion, including the Memorandum of Law in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan and the Declaration of Alexander Villanova in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan (the "Villanova Declaration"),

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1. This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement with the Sponsor Defendants, the Sponsor Designee Defendants and Goldman Sachs & Co. LLC dated October 9, 2018 (ECF No. 334-1); the Stipulation and Agreement of Settlement Among the Plaintiffs, Cobalt Individual Defendants, and Nader Tavakoli, Solely Acting as Plan Administrator on Behalf of the Cobalt Debtors dated October 11, 2018 (ECF No. 337-1); the Stipulation and Agreement of Settlement Between Plaintiffs and Underwriter Defendants Other Than Goldman Sachs & Co. LLC dated

November 28, 2018 (ECF No. 352-1) (collectively, the "Stipulations"), and the Villanova Declaration, and all terms used in this Order shall have the same meanings as defined in the Stipulations or in the Villanova Declaration.

2. This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Settlement Class Members.

3. Lead Plaintiffs' plan for distribution of the Net Settlement Fund to Authorized Claimants is **APPROVED**. Accordingly:

(a) The administrative recommendations of the Court-approved Claims Administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq"), to accept the Timely Eligible Claims stated in Exhibit E to the Villanova Declaration and the Late But Otherwise Eligible Claims stated in Exhibit F to the Villanova Declaration, are adopted;

(b) The Claims Administrator's administrative recommendations to reject wholly ineligible Claims, as stated in Exhibit G to the Villanova Declaration, including the Disputed Claims discussed in paragraphs 27 to 31 of the Villanova Declaration and Exhibit D to the Villanova Declaration, are adopted;

(c) Epiq is directed to conduct an Initial Distribution of the Net Settlement Fund, after deducting all payments previously allowed and the payments approved by this Order, and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, while maintaining a 10% reserve from the Net Settlement Fund to address any tax liability and claims administration-related contingencies that may arise, as stated in paragraph 42(a) of the Villanova Declaration. Specifically, as stated in paragraph 42(a) of the Villanova Declaration: (1) Epiq will calculate each Authorized

Claimant's: (a) *pro rata* share of the Group 1 Fund based on the amount of the Authorized Claimant's Group 1 Fund Recognized Losses in comparison to the total Group 1 Fund Recognized Losses of all Authorized Claimants to distribute the Sponsor/GS&Co. Settlement Amount allocated to the Group 1 Fund; (b) *pro rata* share of the Group 2 Fund based on the amount of the Authorized Claimant's Group 2 Fund Recognized Losses in comparison to the total Group 2 Fund Recognized Losses of all Authorized Claimants; and (c) *pro rata* share of the Group 3 Fund based on the amount of the Authorized Claimant's Group 3 Fund Recognized Losses in comparison to the total Group 3 Fund Recognized Losses of all Authorized Claimants, as stated in subparagraph 42(a)(1) of the Villanova Declaration; (2) Epiq will, in accordance with the terms of the Court-approved Plan of Allocation, calculate the total amount each Authorized Claimant would recover in accordance with the calculations as stated in subparagraph 42(a)(1) of the Villanova Declaration, and then it will eliminate from the Initial Distribution any Authorized Claimant whose combined *pro rata* share of the Group Funds calculates to less than $10.00. These Claimants will not receive any payment from the Net Settlement Fund and will be so notified by Epiq; (3) After eliminating Claimants who would have received less than $10.00 in the Initial Distribution, Epiq will recalculate the *pro rata* share of the Group 1 Fund, the Group 2 Fund, and the Group 3 Fund for all Authorized Claimants who would have received $10.00 or more pursuant to the calculations described in subparagraph 42(a)(1) of the Villanova Declaration. The sum of these *pro rata* shares is the Authorized Claimant's "Distribution Amount"; (4) 90% of the remaining balance of the Net Settlement Fund will be distributed *pro rata* to Authorized Claimants whose Distribution Amount

calculates to $10.00 or more under subparagraph 42(a)(3) of the Villanova Declaration. The remaining 10% of the Net Settlement Fund will be held in reserve (the "Reserve") to address any tax liability and claims administration-related contingencies that may arise. To the extent the Reserve is not depleted, the remainder will be distributed in the "Second Distribution" described in subparagraph (g) below;

(d) Epiq is directed to conduct a Supplemental Distribution of the Group 1 Fund once the future recoveries, if any, in the insurance coverage litigation have been recovered. In the Supplemental Distribution, Epiq will calculate and send an additional *pro rata* payment, subject to the same $10.00 minimum Distribution Amount requirement as in the Initial Distribution, to all eligible Class Members, which shall include any funds from the future recoveries in the insurance coverage litigation in addition to the Cobalt Settlement Existing Proceeds.

(e) In order to encourage Authorized Claimants to cash their checks promptly, all Distribution checks will bear the following notation: "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." Lead Counsel and Epiq are authorized to take appropriate action to locate and contact Authorized Claimants who have not cashed their check within said time as detailed in paragraph 42(b) footnote 11 of the Villanova Declaration;

(f) Authorized Claimants who do not cash their Initial Distribution checks within the time allotted or on the conditions stated in paragraph 42(b) footnote 11 of the Villanova Declaration will irrevocably forfeit all recovery from the Settlements, and the

4

funds allocated to all such stale-dated checks will be available to be distributed to other Authorized Claimants in the second distribution;

(g) After Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks as provided in paragraph 42(b) footnote 11 of the Villanova Declaration, but not earlier than nine (9) months after the Initial Distribution, Epiq will conduct the Second Distribution, in which any amount remaining in the Net Settlement Fund after the Initial Distribution, including from the Reserve and the funds allocated to all void stale-dated checks, after deducting Epiq's unpaid fees and expenses incurred in administering the Settlements, including Epiq's estimated costs of the Second Distribution, and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to all Authorized Claimants in the Initial Distribution who cashed their Initial Distribution check and are entitled to receive at least $10.00 from the Second Distribution based on their *pro rata* share of the remaining funds. Additional distributions, after deduction of costs and expenses as described above and subject to the same conditions, may occur thereafter in six-month intervals until Lead Counsel, in consultation with Epiq, determine that further distribution is not cost-effective;

(h) When Lead Counsel, in consultation with Epiq, determine that further distribution of the funds remaining in the Net Settlement Fund is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after November 6, 2020, those Claims will be processed and any such Claims that are otherwise valid, as well as any earlier-received Claims for which an adjustment was received after November 6,

5

2020, and resulted in an increased Recognized Claim amount, will be paid in accordance with subparagraph (i) below. If any funds remain in the Net Settlement Fund after payment of these late or late-adjusted Claims, the remaining balance of the Net Settlement Fund, after payment of any unpaid fees or expenses incurred in administering the Net Settlement Fund and after the payment of any taxes or estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be contributed to non-sectarian, not-for-profit 501(c)(3) organization(s), to be recommended by Lead Counsel and approved by the Court;

(i) No new Claims submitted after November 6, 2020, may be accepted, and no further adjustments to Claims received on or before November 6, 2020, that would result in an increased Recognized Claim amount, may be made for any reason after November 6, 2020, subject to the following exception. If Claims are received or modified after November 6, 2020, that would have been eligible for payment or additional payment under the Plan of Allocation if timely received, then, at the time that Lead Counsel, in consultation with Epiq, determine a distribution is not cost-effective as provided in subparagraph (h) above, and after payment of any unpaid fees or expenses incurred in connection with administering the Net Settlement Fund and after deducting the payment of any taxes or estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, these Claimants, at the discretion of Lead Counsel, may be paid their distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity (to the extent possible) with other Authorized Claimants who have cashed all their prior distribution checks;

(j) All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted, or who are otherwise involved in the administration or taxation of the Settlements, are hereby released and discharged from any and all claims arising out of that involvement, and all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, are hereby barred from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent, or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlements beyond the amounts allocated to Authorized Claimants;

(k) All of Epiq's fees and expenses incurred in the administration of the Settlements and estimated to be incurred in connection with the Distribution of the Net Settlement Fund as stated in the invoices attached as Exhibit H to the Villanova Declaration are approved, and Lead Counsel are directed to pay the outstanding balance of $414,755.71 out of the Settlement Fund to Epiq; and

(l) Unless otherwise ordered by the Court, Epiq may destroy the paper copies of the Claims and all supporting documentation one year after the Second Distribution, and one year after all funds have been distributed may destroy electronic copies of the same. This Court retains jurisdiction to consider any further applications concerning the administration of the Settlements, and any other and further relief that this Court deems appropriate.

SO ORDERED this 17th day of November 2020.

*(signature)*
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE